*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0084p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

WILLIAM J. SCHUMACHER, on behalf of
himself and all persons similarly situated,
    *Plaintiff-Appellee/Cross-Appellant*,

*v*.

AK STEEL CORPORATION RETIREMENT
ACCUMULATION PENSION PLAN and AK
STEEL CORPORATION BENEFIT PLANS
ADMINISTRATIVE COMMITTEE,
    *Defendants-Appellants/Cross-Appellees*.

Nos. 12-3061/3063

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:09-cv-794—Sandra S. Beckwith, District Judge.

Argued: October 10, 2012

Decided and Filed: March 28, 2013

Before: BATCHELDER, Chief Judge; KEITH and MARTIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Andrew R. Kaake, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellants/Cross-Appellees. Matthew T. Hurst, SUSMAN, HEFFNER & HURST LLP, Chicago, Illinois, for Appellee/Cross-Appellant. **ON BRIEF:** Andrew R. Kaake, George E. Yund, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellants/Cross-Appellees. Matthew T. Hurst, SUSMAN, HEFFNER & HURST LLP, Chicago, Illinois, for Appellee/Cross-Appellant.

1

## OPINION

DAMON J. KEITH, Circuit Judge.  This class action case involves AK Steel's employees' Employee Retirement Income Security Act (ERISA) claims for a "whipsaw" calculation of their benefits from an AK Steel pension plan in which they participated before terminating their employment.  This case is related to the case of *West v. AK Steel Corp. Retirement Accumulation Plan*, 484 F.3d 395 (6th Cir. 2007).  The Class was originally involved in the *West* litigation and included identical claims against the same defendants.  The Class was excluded from the *West* litigation due to the class members' execution of a severance agreement and release that each of them signed during the *West* litigation.  The district court ruled in favor of the Class, awarding partial summary judgment and an award of pre-judgment interest.

Apellants appeal three district court orders: 1) denial of a motion to dismiss; 2) grant of Schumacher's motion for class certification; and 3) grant of Schumacher's motion for partial summary judgment on liability.  The Class cross-appeals the district court's decision to award pre-judgment interest at a rate of 0.12%.

For the reasons that follow, we **REVERSE** the district court's award of pre-judgment interest and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the district court's judgment in all other respects.

### FACTUAL BACKGROUND

Plaintiff-Appellee Cross-Appellant William Schumacher brought this case on behalf of himself and all persons similarly situated (collectively referred to as the "Class").  The Class in this case is a group of ninety-two former employees of AK Steel Corporation ("AK Steel") who participated in the Retirement Accumulation Pension Plan ("Plan" or "RAPP").  They each elected to receive a lump-sum payment of their retirement benefits under the Plan which is administered by AK Steel Corporation Benefit Plans Administrative Committee ("Administrative Committee"). They allege that

the Defendants failed to properly calculate their payment. Their claims are essentially identical to the claims that were presented in *West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 484 F.3d 395 (6th Cir. 2007), where this Court affirmed the district court's decision that the Plan failed to utilize the so-called "whipsaw" formula to properly calculate lump-sum payments. Plaintiffs in this case were initially included within the definition of the class that was certified in *West*, but were ultimately excluded due to release agreements they signed after the *West* litigation began.

### *West* Litigation

After entry of the *West* class certification order, the Defendants brought to the attention of the district court that AK Steel had undertaken layoffs in the fall of 2003 after the litigation began, and had offered severance packages to some 300 employees. Ninety-two of the *West* class members accepted AK Steel's offer and executed severance agreements that generally included a release of "all claims" against AK Steel and its "related entities." The *West* Defendants moved for summary judgment against these ninety-two individuals. Alternatively, Defendants argued these individuals should be excluded from the already-certified class. Out of an abundance of caution, the district court also excluded the ninety-two individuals from the *West* class.

The *West* plaintiffs ultimately prevailed on the merits of their case and were awarded over $37 million in additional benefits under the whipsaw calculation, in addition to pre-judgment interest at the statutory post-judgment rate under 28 U.S.C. § 1961(a). At the time of judgment, the rate was 4.7%, which resulted in over $9 million in pre-judgment interest. We affirmed the district court's holdings.

### *Schumacher* Litigation

The complaint in the present case was filed on October 29, 2009, on behalf of a class of all participants in the Plan seeking "whipsaw" benefits who had been excluded from the *West* class. They received lump-sum payments between February 1, 1996 and August 17, 2006, and were previously excluded from other litigation due to their

execution of a severance agreement and release. Therefore, some of the following facts occurred during the pendency of the *West* litigation.

The layoffs of the ninety-two plaintiffs in the present case started in the midst of the *West* litigation. The Human Resources Managers ("HR") notified the plaintiffs that they were being terminated. The employees were not told of the ongoing *West* litigation and neither was HR. HR followed a script when requesting the signatures. During the meeting with HR, employees were told that they would "receive information concerning pension benefits in the mail approximately 60–90 days following termination."

The agreements did not mention pension benefits, the Plan, the administrative committee, or ERISA. Paragraph 9 of each agreement states:

> You waive and release and forever discharge, on behalf of yourself and your heirs, representatives and assigns, AK Steel Holding Corporation, AK Steel Corporation and its predecessors, and past, current and future, subsidiaries, related entities, their officers, directors, shareholders, agents, employees, successors, or assigns, from any and all claims, causes of action, and rights of recovery of any kind or nature, including without limitation back or front pay or benefits, damages of any sort, debts, liabilities, and contract rights, and any costs, fees, or other expenses or attorneys' fees incurred in law or in equity, whether known or unknown. This waiver, release and discharge also includes but is not limited to any claims, whether known or unknown (including those arising out of or relating to your employment with the Company and/or the separation of your employment with the Company) for discrimination, slander, libel, damage to reputation, emotional distress, attorney fees, compensatory damages, punitive damages, tort damages, breach of contract, quasi-contract, promissory estoppel, any violation of federal, state, local, statutory or common law, including but not limited to the Age Discrimination in Employment Act of 1967, the Older Workers' Benefit Protection Act, Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, and the Americans with Disabilities Act. However, you do not waive, nor shall this Agreement be construed to waive, any right which is not subject to waiver as a matter of law. . . . However, [you do not waive any rights or claims you may have under the federal Age Discrimination in Employment Act that

arise after the date you sign this Agreement.  In addition,]**¹** you do not
waive, nor shall this Agreement be construed to waive, any right which
is not subject to waiver as a matter of law.

R. 87, at 5.

Schumacher, the named Plaintiff, was one of the employees who accepted a severance agreement and release.  He worked at AK Steel and its predecessor, Armco Inc., from June 1962 until he retired in November 2003 at the age of 60.  Schumacher executed a severance agreement sometime between late 2003 and early 2004.  He, and the other Class members, claimed their pension benefits after the execution of the Severance Agreements, requesting a lump-sum payment.  Schumacher's agreement did not include a whipsaw calculation.

Pre-Judgment Interest

Both the *West* and *Schumacher* classes were awarded pre-judgment interest under 28 U.S.C. § 1961(a).  At the time of the *West* judgment, the class received pre-judgment interest at an annual rate of 4.7%.  The *Schumacher* class received a rate of 0.12%.

## PROCEDURAL BACKGROUND

Schumacher and the Class were originally included in the *West* Class on March 9, 2004.  *West*, No. 02-0001, R. 55.  The district court eventually excluded them from the *West* class "out of an abundance of caution."  Schumacher was notified of his exclusion from the *West* class.

On October 29, 2009, Schumacher filed the present suit to recover benefits on behalf of himself and the class. On March 8, 2010, the district court denied Defendants' motion to dismiss, in which they raised a statute of limitations issue.  On January 24, 2011, the court issued an order granting Plaintiff's motion for class certification.  On June 27, 2011, the court granted Plaintiffs' motion for partial summary judgment.

---

**¹**The bracketed language appears in the particular form of release that Schumacher and other class members over the age of forty signed.  It does not appear in the release form signed by class members under the age of forty.

Nos. 12-3061/3063     *Schumacher v. AK Steel, et al.*                    Page 6

The parties stipulated that the amount of unpaid benefits to this class was $3,010,060. On October 12, 2011 the district court issued an order ruling that pre-judgment interest was due at the federal statutory rate established by 28 U.S.C. § 1961(a). At the time of the judgment, that rate was 0.12%. Final Judgment for Plaintiffs was entered on December 12, 2011. Plaintiffs were awarded damages of $3,010,060 and pre-judgment interest of $29,094.

## STANDARD OF REVIEW

This Court reviews a dismissal *de novo*. *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006). We also review a district court's grant of a motion for summary motion *de novo*, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997).

Certification of a class action is reviewed for an abuse of discretion. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011). A district court's award of pre-judgment interest is also reviewed for abuse of discretion. *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000). "An abuse of discretion occurs when the district court relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Pipefitters Local 636*, 654 F.3d at 629 (internal citation and quotation marks omitted).

## DISCUSSION

This case involves the appeal of four of the district court's orders. AK Steel and the Plan (collectively "Appellants") appeal the district court's denial of their motion to dismiss based on the statute of limitations, the grant of the class certification, and the ruling in favor of the Class on liability. The Class appeals the district court's pre-judgment interest award rate. Each order is addressed below.

Nos. 12-3061/3063     *Schumacher v. AK Steel, et al.*                              Page 7

    A.    *Motion to Dismiss*

AK Steel and the Plan appeal the denial of their motion to dismiss. They contend that the Class's claims should have been dismissed as untimely. Appellants argue that the Class's "whipsaw" claims were barred by the federal catch-all statute of limitations contained in 28 U.S.C. § 1658(a). Upon *de novo* review, we hold that § 1658(a) does not apply to the Class's claims.

"Where a federal statute provides a cause of action but does not specify a limitations period, courts determine the appropriate statute of limitations in one of two ways." *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012). If a federal cause of action arises under a post-1990 amendment, the courts apply the four-year statute of limitations as provided by 28 U.S.C. § 1658. If that is not the case, the courts borrow the state's most analogous limitations period. *See id.*

In a case involving a federal cause of action that arises under an Act of Congress that was enacted after December 1, 1990, the cause of action is "governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations period." *Id.* The Supreme Court has held that § 1658 applies to claims "arising under" amendments to pre-existing statutes. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 380–81 (2004). Section § 1658 also applies where legislation "establishes a new cause of action without reference to preexisting law." *Id.* (internal quotation marks omitted).

In contrast, where an application of state law is not "at odds with the purpose or operation of federal substantive law," the court borrows the most analogous state limitations period. *McCormick*, 693 F.3d at 662 (quoting *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 35 (1995)). Generally, the statute of limitations for an ERISA claim is governed by the most analogous state statute of limitations. *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001). Ohio law provides that the statute of limitations could be as short as six years or as long as fifteen years. *See Gelesky v. AK Steel Corp.*, 828 F. Supp. 2d 935, 939, 942 (S.D. Ohio 2011) (finding that the claim was subject to a six-year statute of limitation); *see also Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 193, 195 (6th Cir. 1992) (finding that the claim

was subject to a fifteen-year statute of limitations). Even under the shorter six-year time limit, the Class's claims were timely.

Contrary to Appellants' argument that the Class's claim for the payment of benefits arises from the 1994 Retirement Protection Act ("RPA"), whipsaw actions predate both the RPA and the passage of § 1658. *Thompson*, 716 F. Supp. 2d at 762 (finding that RPA "did not 'create a new right' for the plaintiffs that did not previously exist" with respect to a claim involving their lump-sum payments). The ability to bring a claim for benefits under ERISA § 502(a)(1)(B) was in existence before the RPA.

Furthermore, the RPA did not make any substantive changes, but simply changed the definition of "applicable interest rate." The 1994 RPA requires the calculation of lump-sum payments by using an "applicable mortality table" and an "applicable interest rate" based on thirty-year treasury rates. *Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc.*, 716 F. Supp. 2d 752, 762 (E.D. Wisc. 2010).

Because passage of the RPA did not create a new right to bring a whipsaw action, it cannot be said that the Class's claim "arises under" the post-1990 amendment. The district court correctly concluded that the Class's complaint was timely filed.

### B.     Class Certification

AK Steel and the Plan argue that the district court abused its discretion in granting the Class's motion for class certification. Appellants argue that the district court abused its discretion with respect to the commonality and typicality requirements of Rule 23(a) and therefore also abused its discretion in finding that common questions predominated over questions affecting individuals pursuant to Rule 23(b)(3). We disagree.

To obtain class certification, plaintiffs must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Case: 1:09-cv-00794-SSB-SKB Doc #: 149 Filed: 03/29/13 Page: 9 of 18 PAGEID #: 963

Nos. 12-3061/3063     *Schumacher v. AK Steel, et al.*                              Page 9

Fed. R. Civ. P. 23(a); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 416 (6th Cir. 2012). "The proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool*, 678 F.3d at 416 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011)).

The district court certified the *Schumacher* class by concluding that it satisfied the four prerequisites of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation. The two common issues that the district court found appropriate for classwide treatment were:

> (1) whether the anti-alienation provisions of ERISA bar the release of the whipsaw claims at issue in this case when the general releases do not expressly refer to the Retirement Plan, to pension benefits, and/or the ERISA statute; and (2) whether the express terms of the release agreements included any and all claims against the Defendants in this case.

R. 60, at 16. The district court also found that the action could be maintained under Federal Rule of Civil Procedure 23(b)(3) because the issue of whether Plaintiffs were entitled to whipsaw benefits predominated over any individual issues involved in calculating the amount of those benefits for each class member.

The district court first determined the scope and validity of the Severance Agreements pursuant to general contract law. Releases are contracts. 29 Williston on Contracts § 73:7 (4th ed. 2011). Therefore, the waivers were properly examined under normal contract principles first. *Id.* (citing *Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1268 (6th Cir. 1997) ("[A] court should examine waivers and releases 'under normal contract principles[.]'").

Appellants raise two arguments to support the proposition that the releases required individualized review. Both fail because, as the district court determined, the issue of law as to the contracts' scope and validity precluded the need to conduct an individualized review. First, Appellants argue that the district court's decision in the present case is inconsistent with the *West* court's findings that the nature of the releases required individual review. *Id.* at 19-20. They also argue that the *West* court excluded

Schumacher and the ninety-one others in this class noting that the determination of whether the Releases were knowingly and voluntarily agreed to would require an individualized factual review. *Id.* at 21. Second, Appellants argue that the central question with respect to the enforceability of the release is whether it was made knowingly and voluntarily. *Id.* at 22 (citing *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003)).

Whether the Severance Agreements were valid–whether they were a violation of ERISA's anti-alienation provisions or were obtained by a breach of fiduciary duties–was a question that the district court properly determined first before inquiring as to the intent of the parties as Appellants suggest it should have. As the district court noted, all of the releases were obtained during the 2003 layoffs and were executed in a short time frame. The critical language of the releases was identical for each plaintiff, and the common questions identified by the district court did not depend upon the intent of each employee. The determination of the scope and validity of the agreements involved common questions of law that lend themselves well for class certification.

Appellants have not shown that the district court abused its discretion in granting class certification. The court was correct to begin by determining the scope and validity of the agreements as a common issue of law for the class certification motion. *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) (considering the interpretation of a form contract, executed by all class members as the threshold issue as to whether common issues of law and fact predominate).

    *C.*    *Partial Summary Judgment*

AK Steel and the Plan appeal the district court's grant of partial summary judgment on liability in favor of the Class. The district court interpreted the scope of the Severance Agreements, holding that the agreements did not affect pension benefits or preclude pension claims that had not yet accrued at the time the agreements were executed. Upon *de novo* review, we agree.

This claim is identical to the claims raised in the *West* litigation. This Court held, in *West*, that a so-called "whipsaw calculation" claim "arises when participants opt to 'cash out' their hypothetical accounts before they reach normal retirement age." *West*, 484 F.3d at 400. In this case, the whipsaw claim could not possibly arise until the moment a class member opted to cash out her pension in lump-sum form. Because none of the Class members requested a lump-sum payment until after the execution of the Severance Agreements, their claims had not accrued. Therefore, the dispositive issue, as the district court correctly recognized, is whether the text of the general Severance Agreements released future ERISA claims.

Paragraph 9 of each agreement provides the waiver and release clause. It states, in relevant part:

> You waive and release . . . AK Steel Holding Corporation, AK Steel Corporation and its predecessors, and . . . related entities . . . from any and all claims, causes of action, and rights of recovery of any kind . . . whether known or unknown. This waiver . . . also includes but is not limited to any claims, whether known or unknown . . . .

R. 87, at 5.

While the agreement broadly mentions "any and all claims, causes of action, and rights of recovery of any kind," what is not mentioned is critical to the question before the Court. As the district court noted, the agreement does not mention RAPP or the Plan. It does not contain any words that would support a release of future "ERISA" or "pension" claims.[2]

The conclusion made by the district court and adopted by this Court is consistent with established law and the public policy concerns surrounding earned pension rights. *See, e.g.*, *Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628, 635 (W.D. Wisc. 2009) ("[T]o the extent plaintiffs' releases could be construed as releasing defendant from this ERISA suit, the agreement would be unenforceable because

---

[2] Although the releases in some of the Agreements specifically excluded future claims arising under the federal Age Discrimination in Employment Act, in light of our discussion below, we believe this is an insufficient basis for implying waiver of future pension claims arising under ERISA.

agreements that waive future violations of ERISA are unenforceable . . . ."); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1293 (10th Cir. 1991) (holding that a waiver of a right to sue was insufficient to release future ERISA claims where the parties were unaware of such claims when the release was signed); *see also* 29 Williston on Contracts § 73:10 (4th ed.) ("[A] general release will not be construed to bar the enforcement of a claim that had not accrued as of the date of the release."). Appellants rely on a series of cases where courts have held that ERISA claims could be released. As the district court reasoned, the cases cited by AK Steel and the Plan are distinguishable because each case involves ERISA claims that had already accrued.[3] *See Valeck v. Watson Wyatt & Co.*, 92 F. App'x 270, 273 (6th Cir. 2004) (finding release effective where the contract specifically released two named individuals, i.e. "all claims made by [Valeck] or that could have been made by her against [Defendant] . . . ." prior to the execution of the release was executed); *Halvorson v. Boy Scouts of Am.*, 215 F.3d 1326, 1326 (6th Cir. 2000) (table) (finding that employee had waived his medical benefits and disability claims because his medical issues were known before signing the release); *see also Howell v. Motorola, Inc.*, 633 F.3d 552, 556, 558 (7th Cir. 2011) (noting that the events leading to the cause of action occurred before the release was signed). Appellants also rely on cases where future ERISA claims were released. Those cases, however, involved an explicit reference to "ERISA" in the agreement—a critical distinction from the present case. *See Goepfert v. Trustmark Ins. Co.*, 541 F. Supp. 2d 1052, 1054 (E.D. Wisc. 2008) (quoting the language of the release which specifically includes claims arising from ERISA); *see also Sullivan v. CAP Gemini Ernst & Young U.S.*, 573 F. Supp. 2d 1009, 1021 n.16 (N.D. Ohio 2008) (quoting the language of the release which explicitly included "any and all rights or claims [. . .] arising under [. . .] [ERISA]") (alterations in original).

The Class's future pension claims were not released as a matter of law because the whipsaw claims had not accrued at the time of the execution of the Severance

---

[3] While the district court and the parties detail numerous grounds upon which the finding on liability was correct, we decline to address the remaining arguments; the reasoning here is dispositive.

Nos. 12-3061/3063   *Schumacher v. AK Steel, et al.*   Page 13

Agreements and because the scope of the contracts did not relate to future ERISA claims.**4**

### D.   *Pre-judgment Interest*

The *Schumacher* Plaintiffs argue that the district court abused its discretion by awarding pre-judgment interest at the statutory rate under 28 U.S.C. § 1961(a), which at the time was 0.12%. We agree. The district court's failure to consider the case-specific factors and its mechanical application of the statutory rate under § 1961 constituted an abuse of discretion.

"[T]he district court may [award pre-judgment interest] at its discretion in accordance with general equitable principles." *Rybarczyk v TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) (quoting *Ford v. Uniroyal*, 154 F.3d 613, 616 (6th Cir. 1998)). A proper determination of pre-judgment interest involves a consideration of various case-specific factors and competing interests to achieve a just result. While we have upheld awards of pre-judgment interest calculated pursuant to 28 U.S.C. § 1961, a mechanical application of the rate at the time of the award amounts to an abuse of discretion. *See Rybarczyk*, 235 F.3d at 985–87.

One purpose of an award of pre-judgment interest is to compensate plaintiffs for the "lost interest value of money wrongly withheld." *Id.* at 985. Courts consider compensation for the "time value of the lost money as well as for the effects of inflation." *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998). An award that fails to make the plaintiff whole due to an inadequate compensation for her lost use of money frustrates the purpose of ERISA's remedial scheme. This is also true of an award that is excessive. *See Ford*, 154 F.3d at 618. "Our court and others have . . . upheld awards of pre-judgment interest that were tied to prevailing market rates, thus reflecting what the defendants would have had to pay in order to borrow the money at issue." *Rybarczyk*, 235 F.3d at 986.

---

**4**Consequently, Appellants argument that the district court abused its discretion by not allowing discovery as to whether each Class member knowingly and voluntarily waived the claims is moot.

An excessive pre-judgment interest award may contravene ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing. Similarly, an exceedingly low pre-judgment interest rate fails to make the plaintiff whole. *Ford*, 154 F.3d at 618. Accordingly, courts must strike a balance between making sure not to impose a punitive measure and allowing a Plan or Fund to "retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment." *Rybarczyk*, 235 F.3d at 985–86 (internal citation and quotation marks omitted).

In the *West* case, the court awarded pre-judgment interest at the rate provided by 28 U.S.C. § 1961(a). Section 1961(a) is the one-year Treasury rate for the week that precedes a court's final judgment. At the time the *West* judgment was awarded, the rate was 4.7%. At the time of the district court's judgment in the present case, the rate was at an all-time low of 0.12%.

Here, if the 0.12% rate were to stand, AK Steel and the Plan would essentially be rewarded for their wrongdoing. There are at least three examples that highlight the potential injustice that could result if the district court's award were affirmed. First, AK Steel's rate on return (6.55%) and its borrowing costs (7.75%) were much higher than the 0.12% it has been ordered to pay. Allowing such a disparity would result in an unfair economic benefit to Appellants. *See Rybarczyk*, 235 F.3d at 986 ("[A] requirement that [defendants] pay the actual rate [on return] merely deprives [defendants] of [their] profit on the wrongfully denied benefits."). Second, the *West* and *Schumacher* plaintiffs are identical plaintiffs. Both sets of plaintiffs worked for the same company, brought the same whipsaw calculation claims, during the same period, and were awarded damages under the same calculation. Nevertheless, the *West* class members received pre-judgment interest of 4.7%, while the *Schumacher* plaintiffs received only 0.12%. Such an absurd result amounts to a reversible error. *See Ford*, 154 F.3d at 618–19. Third, the Consumer Price Index measured the annual inflation rate at approximately 2.75%. In *City of Warren*, this Court held that a district court's award of pre-judgment interest that only compensated the plaintiffs for the rate of inflation

constituted an abuse of discretion where it failed to adequately compensate them for the lost use of their money. *City of Warren*, 138 F.3d at 1096.

Here, the district court's award of an "exceedingly low pre-judgment interest rate fail[ed] to make the [Class members] whole by inadequately compensating [them] for the lost use of money." *See Ford*, 154 F.3d at 618. The district court was concerned with an award that would produce a "windfall" that would punish AK Steel and the Plan, although it seems that it did the opposite and created a windfall in favor of Appellants' wrongdoing. *See Rybarczyk*, 235 F.3d at 987 ("If the award . . . were lower than [defendant's] actual rate of return, it is [defendant] that would arguably receive a windfall."). Because the award of 0.12% by the district court would inadequately compensate the Class and unjustly enrich Appellants for their wrongdoing, the district courts mechanical award of pre-judgment interest rate pursuant to § 1961 constituted an abuse of discretion. *See id.* at 985 ("[W]e look with disfavor on simply adopting . . . interest rates."). While district courts may fashion an award in their sound discretion, such an award must consider the case-specific factors such as, but not limited to: the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation. Here, the district court failed to do so. We, therefore, reverse the district court's application of the § 1961 rate and remand on this issue. On remand, the district court shall fashion an award that considers and balances the interests involved in determining a just pre-judgment interest award.

## **CONCLUSION**

For the foregoing reasons, we **REVERSE** and **REMAND** the district court's award of pre-judgment interest at the rate of 0.12% and **AFFIRM** the district court's judgment in all other respects.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 12-3061/3063

WILLIAM SCHUMACHER, on behalf of himself
and all persons similarly situated,

    Plaintiff - Appellee/Cross- Appellant,

v.

AK STEEL CORPORATION RETIREMENT
ACCUMULATION PENSION PLAN and
AK STEEL CORPORATION BENEFIT PLANS
ADMINISTRATIVE COMMITTEE,

    Defendants - Appellants/Cross-Appellees.

```
                                    FILED
                                  Mar 28, 2013
                              DEBORAH S. HUNT, Clerk
```

Before: BATCHELDER, Chief Judge; KEITH and MARTIN, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's award of prejudgment interest at the rate of 0.12% is REVERSED AND REMANDED. IT IS FURTHER ORDERED that the judgment of the district court in all other respects is AFFIRMED.

        **ENTERED BY ORDER OF THE COURT**

        _____
        Deborah S. Hunt, Clerk

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: March 28, 2013

Mr. Allen C. Engerman
Law Offices of Allen C. Engerman, P.A.
Sanctuary Centre
4800 North Federal Highway
Suite 100-D
Boca Raton, FL 33431

Mr. Jeffrey C. Engerman
Law Offices
11901 Santa Monica Boulevard
Suite 700
Los Angeles, CA 90025

Mr. Matthew Todd Hurst
Susman, Heffner & Hurst
30 N. LaSalle Street
12th Floor
Chicago, IL 60602

Mr. Andrew R. Kaake
Mr. George E. Yund
Frost Brown Todd
301 E. Fourth Street
Suite 3300
Cincinnati, OH 45202

Mr. Sheryl G. Snyder
Frost Brown Todd
400 W. Market Street
32nd Floor
Louisville, KY 40202

                      Re:  Case No. 12-3061/12-3063, *William Schumacher v. AK Steel Corporation, et al*
                           Originating Case No. 1:09-CV-794

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                Yours very truly,

                Deborah S. Hunt, Clerk

                Dixie Aerni
                Deputy Clerk

Enclosures

Mandate to issue.