Case No. 1:09-CV-794

# UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**William J. Schumacher, on behalf of himself
and all persons similarly situated,**

**Plaintiffs,**

**v.**

**AK Steel Corporation (Formerly Armco Inc.) Retirement Accumulation Pension Plan, a Part
of the AK Steel Corporation (Formerly Armco Inc.)
Noncontributory Pension Plan, and
AK Steel Corporation Benefit Plans Administrative Committee,**

**AK Steel.**

## MOTION AND MEMORANDUM IN SUPPORT
## OF AN AWARD OF ATTORNEY'S FEES

Matthew T. Hurst (admitted *pro hac*)
Susman Heffner & Hurst LLP
30 North LaSalle Street
12th Floor
Chicago, Illinois 60602
Phone: (312) 346-3466
Facsimile: (312) 346-2829
Email: mhurst@shhllp.com

(Counsel continued on signature page)

*Class counsel*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Summary of the Argument ................................................................................................1

Facts ...................................................................................................................................2

Argument............................................................................................................................8

I.  Class counsel is entitled to 30% of the benefit generated by their efforts as a reasonable attorney's fee.............................................................................................8

    A.  The percentage approach supports a 30% fee award .....................................9

    B.  The lodestar+multiplier approach supports a 30%, or $1.326 million fee award .......................................................................................................... 11

II.  AK Steel should pay $1,318,488 in attorney's fees under ERISA § 502(g) with the remaining amounts paid by the common fund created by Class counsel .................14

    A.  The Court should assess attorney's fees against AK Steel under ERISA § 502(g) because Class counsel prevailed on the merits and dramatically increased the recovery to the Class through the cross-appeal.......................14

        1.  AK Steel was culpable in drafting an inexact release and not paying benefits because of it and/or acted in bad faith by breaching its fiduciary duty to the Class to put them on equal footing with AK Steel regarding what the Plan intended to release in the Severance Agreements ......................... 15

        2.  AK Steel can satisfy any attorney's fee award........................................ 17

        3.  The Court should award fees to deter ERISA fiduciaries from drafting inexact and vague releases of ERISA claims and hiding material information from their plan participants................................................. 17

        4.  This litigation provided a common benefit to the Class and the public and clarified significant legal questions.................................................. 17

        5.  The merits of Plaintiffs' positions were better than the AK Steel's positions ................................................................................................... 18

    B.  The Court should enhance the attorney-fee award paid by AK Steel because Class counsel achieved extraordinary success.................................................18

        1.  Class counsel identified, briefed, and won novel and difficult legal questions................................................................................................... 19

        2.  A customary fee for these results would be 25% to 33% of the amount recovered for the Class............................................................................ 21

i

3. Class counsel's complete victory on the merits and reversal and increase of the prejudgment interest by $1.41 million warrants an enhancement............... 21

4. Class counsel's experience, reputation, and ability justify an enhancement.......... 21

5. The undesirability of this case supports an enhancement ...................................... 22

6. Other Factors ........................................................................................................... 24

C. The Class should contribute the remainder to bring the fee up to market rate ..........24

III. Class counsel's rates, time, and expenses are reasonable..............................................................26

A. Class counsel's time expended was reasonable in achieving a complete victory for the Class........................................................................................................26

B. Class counsel's billing rates are reasonable for ERISA class-action litigators, whether viewed nationally or in Ohio......................................................................28

C. Class counsel's expenses are reasonable ..........................................................................32

IV. Mr. Schumacher should be compensated for his time and expenses .........................................33

Conclusion .............................................................................................................................................33

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Almond v. ABB Indus. Sys., Inc.*,
    No. 01-3382, 2003 WL 173640 (6th Cir. Jan. 22, 2003) ................................. 17, 18, 19

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 18

*Bailey v. AK Steel Corp.*,
    No. 06-468, 2008 WL 553764 .............................................................................. 31

*Baker v. Greater Kansas City Laborers Welfare Fund*,
    716 F. Supp. 1229 (W.D. Mo. 1989) ..................................................................... 22

*Barnes v. City of Cincinnati*,
    401 F.3d 729 (6th Cir. 2005) ................................................................................. 23

*Benkert v. Med. Protective Co.*,
    842 F.2d 144, 149 (6th Cir. 1988) ......................................................................... 16

*Bergman Group v. OSI Development, LTD*,
    2010 WL 2723150 (Ohio App. 12 Dist. Jul. 12, 2010) ............................................ 8

*Binta v. Gordon*,
    710 F.3d 608 (6th Cir. 2013) ..........................................................11, 18, 19, 25

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................. 9

*Brotherton v. Cleveland*,
    141 F. Supp. 2d 907 (S.D. Ohio 2001) ................................................................. 23

*Brytus v. Spang & Co.*,
    203 F.3d 238 (3d Cir. 2000) ............................................................................... 8, 9

*Caudill v. Sears Transition Pay Plan*,
    No. 06-12866, 2011 WL 1595044 (E.D. Mich. Apr. 26, 2011) ..................... 19, 20, 21

*Chesher v. Neyer*,
    No. 01-566, 2007 WL 4553908 (S.D. Ohio Dec. 19, 2007) ................................ 10

*Childers v. MedStar Health, Inc.*,
    289 F. Supp. 2d 714 (D. Md. 2003) ...................................................................... 22

*Clevenger v. Dillards, Inc.*,
    No. 02-558, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007) ....................................... 11

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ........................................................................................ 18

*Dalesandro v. Int'l Paper Co.,*
    No. 1:01-cv-109, Dkt. 111 (S.D. Ohio Nov. 16, 2005) ......................... 11, 12, 13

*Drennan v. General Motors Corp.,*
    977 F.2d 246 (6th Cir. 1992) .......................................................................... 24

*Dooley v. Saxton,*
    No. 12-1207, Dkt. 94 (D. Or.) ........................................................................ 22

*Forry, Inc. v. Neundorfer, Inc.,*
    837 F.2d 259 (6th Cir. 1988) .......................................................................... 16

*Gaeth v. Hartford Life Ins. Co.,*
    538 F.3d 524 (6th Cir. 2008) ..................................................................... 15, 17

*Gaskill v. Gordon,*
    160 F.3d 361 (7th Cir. 1998) .......................................................................... 10

*Geier v. Sundquist,*
    372 F.3d 784 (6th Cir. 2004) ........................................................................ 9, 25

*Ghorbani v. Pac. Gas & Elec. Co. Group Life Ins.,*
    100 F. Supp. 2d 1165 (N.D. Cal. 2000) ......................................................... 22

*Gisbrecht v. Barnhart,*
    535 U.S. 789 (2002) ........................................................................................ 24

*Hadix v. Johnson,*
    65 F.3d 532 (6th Cir. 1995) ............................................................................ 32

*Halvorson v. Boy Scouts of Am.,*
    No. 99-5021, 2000 WL 571933 (6th Cir. May 3, 2000) ............................ 18, 19

*Hardt v. Reliance Standard Life Ins. Co.,*
    130 S. Ct. 2149 (2010) .............................................................................. 1, 14, 15

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ........................................................................................ 18

*Holler v. Hartford Life and Acc. Ins. Co.,*
    737 F. Supp. 2d 883 (S.D. Ohio 2010) ........................................................... 15

*Hunter v. Hamilton County Bd. of Elections,*
    2013 WL 5467751 (S.D. Ohio Sept. 30, 2013) ............................................... 32

*In re Broadwing, Inc. ERISA Litigation,*
    252 F.R.D. 369 (S.D. Ohio 2006) ................................................................. 31

*In re Cardinal Health, Inc. Sec. Litig.,*
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................................................ 11

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir.1992) ......................................................................... 26

*In re Corel Corp., Inc. Sec. Litig.,*
    293 F. Supp. 2d 484 (E.D. Pa. 2003) .......................................................... 10

*In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.,*
    2010 WL 1257598 (S.D. Ohio Mar. 29, 2010) ............................................. 8

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ....................................................................... 25

*In re Visteon Corp. ERISA Litig.,*
    No. 05-71205, Dkt. 58 (E.D. Mich., Mar. 9, 2007) ..................................... 11

*In re Xerox Corp. ERISA Litig.,*
    No. 02-1138 (D. Conn.) ............................................................................... 28

*James v. Frank,*
    772 F. Supp. 984 (S.D. Ohio 1991) ............................................................. 23

*Johnson v. Georgia Highway Express,*
    488 F.2d 714 (5th Cir. 1974) ....................................................................... 19

*Kiefer, et al. v. Ceridian Corp., et al.,*
    No. 3-95-818 (D. Minn. 1997) ..................................................................... 22

*Kirchoff v. Flynn,*
    786 F.2d 320 (7th Cir.1986) ........................................................................... 9

*Lee v. Javitch, Block & Rathbone, LLP,*
    568 F. Supp. 2d 870 (S.D. Ohio 2008) ........................................................ 19

*Loving v. Pirelli Cable Corp.,*
    11 F. Supp. 2d 480 (D. Del. 1998) .............................................................. 22

*Manners v. American General Life Ins. Co.,*
    No. 98-0266, 1999 WL 33581944 (M.D. Tenn. Aug.11, 1999) ................... 10

*McDonough v. Toys "R" Us, Inc.,*
    834 F. Supp. 2d 329 (E.D. Pa. 2011) .......................................................... 10

*Meredith v. Jefferson County Bd. of Educ.,*
    No. 02-620, 2007 WL 3342282 ........................................................................... 19

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (1970) ............................................................................................ 9

*Miller v. Dyadic Int'l Inc.,*
    No. 07-80948 (S.D. Fla.) .................................................................................... 28

*Moon v. Unum Provident Corp.,*
    461 F.3d 639 (6th Cir. 2006) ............................................................................. 15

*Nelson v. Brinson Partners, et al.,*
    No. 03-C-6446 (N.D. Ill. 2006) .......................................................................... 22

*Northcross v. Board of Ed. of Memphis City Sch.,*
    611 F.2d 624 (6th Cir. 1979) ............................................................................. 32

*Paschal v. Flagstar Bank,*
    297 F.3d 431 (6th Cir. 2002) ............................................................................. 19

*Pelchant v. Unum Life Ins. Co.,*
    2003 WL 21479170 (N.D. Ohio June 25, 2006) ............................................... 15

*Pennsylvania v. Delaware Valley Citizens Counsel,*
    483 U.S. 711 (1987) .......................................................................................... 23

*Pickett v. Sheridan Health Care Center,*
    664 F.3d 632 (7th Cir. 2011) ............................................................................. 26

*Rawlings v. Prudential-Bache Properties, Inc.,*
    9 F.3d 513 (6th Cir. 1993) ................................................................................... 9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
    N.D. Ill. 97 C 7694, 2001 WL 1568856 (Dec. 10, 2001) ................................. 10

*Rush Prudential HMO, Inc. v. Moran,*
    536 U.S. 355 (2002) .......................................................................................... 29

*Samms v. Quanex Corp.,*
    No. 95-2173, 1996 WL 599821 (6th Cir. Oct. 17, 1996) ............................. 18, 19

*Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan,*
    711 F.3d 675 (6th Cir. 2013) ............................................................................. 18

*Sogg v. Goodman,*
    No. 04-CVG-08-8028, (Ct. of Common Pleas, Franklin County, Ohio Sept. 5, 2012).......... 30

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ................................................................2

*Street v. J.C. Bradford & Co.*,
    886 F.2d 1472 (6th Cir. 1989) ............................................................16

*West v. AK Steel Corp. Ret. Accumulation Pension Plan*,
    657 F.Supp.2d 914 (S.D. Ohio 2009) ..............................................1, 8

*West v. AK Steel Corp. Ret. Accumulation Pension Plan*,
    No. 02-0001, 2005 WL 1745491 (S.D. Ohio July 25, 2005) .........................2

*Valeck v. Watson Wyatt & Co.*,
    No. 03-1854, 2004 WL 500985 (6th Cir. Mar. 11, 2004) .................... 17, 19

*Venegas v. Mitchell*,
    495 U.S. 82 (1990) ...........................................................................24

*Young v. Verizon*,
    615 F.3d 808 (7th Cir. 2010) ............................................................22

*Young v. Verizon*,
    783 F. Supp. 2d 1031 (N.D. Ill. 2011) ....................................29, 30, 32

*Young v. Verizon*,
    No. 05-7314, Dkt. No. 205 (N.D. Ill. Oct. 5, 2009) ..................................22

## Statutes, Rules, and Regulations

29 U.S.C. § 1104(a). ......................................................................................16

29 U.S.C. § 1132(e)(2). ...................................................................................29

29 U.S.C. § 1132(g) .......................................................................................14

29 U.S.C. § 1132(g)(1) ....................................................................................14

ERISA § 502(g) ........................................................................................1, 32

ERISA § 502(g)(1) .........................................................................................14

Rule 1.5(a)(8).................................................................................................8

## Secondary Materials

76 C.J.S. Release § 22 ....................................................................................16

Buckberg, T. Foster, R. Miller, & S. Planrich, *Recent Trends in Shareholder Class Action Litigation: Bear Market Cases Bring Big Settlements*
(NERA, February 2005) ...........................................................................................10

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*,
Jl. Empirical Legal Stud. 248 (June 2010) .............................................................. 11, 12

S. Logan, J. Moshman & B. Moore, Jr., *Attorney Fee Awards In Common Fund Class Actions*,
24 Class Action Reports 167, 197 (Mar.–Apr. 2003) .................................................11

T. Willging, L. Hooper, & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*
(Federal Judicial Center, 1996) .................................................................................10

## SUMMARY OF THE ARGUMENT

Class counsel moves the Court to award them $1.326 million in attorney's fees. They took this case on a wholly contingent basis, litigating the case against strong, zealous opposition for four years. During those four years, Class counsel did not receive a dime for the nearly $879,000 worth of professional time they devoted to the case. Instead, they faced the very real risk that they might receive nothing for their time and effort. Accordingly, a fee that amounts to 30% of the benefit created by Class counsel's efforts is entirely reasonable and deserved.

Class counsel also moves for Defendants (hereinafter "AK Steel") to pay the majority of the fee award under ERISA § 502(g)'s fee-shifting provisions. The Class is entitled to fees from AK Steel because all that is required under the statute is "some degree of success on the merits," and the Class achieved a complete victory. *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010); *West v. AK Steel Corp.*, 657 F. Supp. 2d 914 (S.D. Ohio 2009). And those fees are entitled to an enhancement; Class counsel achieved outstanding results, not only achieving a complete victory on the merits, but also winning an additional $1.41 million by convincing the Sixth Circuit to reverse this Court's previous discretionary prejudgment interest award. Moreover, Class counsel took this case when no other attorneys would; lead counsel in *West* flatly rejected the case and no other Ohio attorney either had the expertise or desire to challenge AK Steel. And given AK Steel's intransigence in this litigation, and its solicitation of the releases in contravention of its fiduciary duties to the Class, it also *deserves* to pay a multiple of Class counsel's lodestar.

Finally, Class counsel move for an award from the $4.42 million common fund they created to make up the difference between 30% of the common fund and the fees awarded under ERISA § 502(g).  This is appropriate because lead plaintiff, William Schumacher, agreed from

1

the outset of this litigation that this fee was reasonable. If this case had been settled, Class

counsel would be entitled to such an award. But Class counsel did not settle the case, instead

fighting it to judgment, thereby increasing the Class's recovery by 47% over the plan-promised

benefits.  Crucially, they did all this on a contingent basis, with a real risk of nonpayment after

devoting thousands of hours of their time to this case.  That risk and those results deserve

compensation.

## FACTS

During the *West* litigation,[1] AK Steel successfully convinced the Court to exclude the 92

Class members here from the *West* class because they had each executed a severance agreement.

*West v. AK Steel Corp. Ret. Accumulation Pension Plan*, No. 02-0001, 2005 WL 1745491 (S.D.

Ohio July 25, 2005). The Court reasoned that the current *Schumacher* class members might have

released their ERISA claims, which would involve an application of the "knowing and

voluntary" test, which provides:

> The factors to be examined include the employee's education and experience; the
> clarity of the agreement; whether the employee had independent legal advice;
> whether the employer encouraged the employee to seek legal advice before
> signing the release; and whether the consideration the employee received
> exceeded benefits the employee was already entitled to under benefit plans or
> under applicable law.

*Id*. at *2. Obviously, if this test were to apply in this case, class certification would have been

impossible because it would involve litigation of each plaintiff's individualized factual situation

to determine their claim. *See id*. at *4; *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 399 (6th

Cir. 1998) (class is impermissible when based on "widely divergent facts").

---

[1] This Court is obviously well aware of the *West* litigation and the underlying whipsaw claims in this case
that mirrored *West*. Therefore, Class counsel will not rehash the facts, procedural history, and legal
discussion of those decisions on the merits.

As a result of the Court's decision, the *Schumacher* class needed to file a separate law suit. To that end, William Schumacher attempted to enlist lead counsel in *West*—Gary Naegele & Theado, LLC. (Ex. A, Schumacher Affidavit, ¶ 2.) That firm is the only plaintiff's-side firm in the entire state of Ohio listed in the National Pension Lawyer Network database. (Ex. B, Hurst Affidavit, ¶¶ 20-21.) But because of the perceived risk in litigating this case, given the perceived chances of success on both the merits and class certification, that firm rejected the case. (Ex. A, Attachment 1, Oct. 7, 2005 Ltr. to Schumacher.) In doing so, they outlined a host of problems with any case that might be brought on behalf of the Schumacher class, including that the whipsaw violation in *West* might not apply to them, the release might bar their claims, and they might be required to pay back any severance pay if they file suit. (*Id.* at 4-6.)

Failing to find anyone in Ohio to represent him, Mr. Schumacher, through local counsel Carrie Barron, eventually secured the services of Class counsel. To do so, he executed a representation agreement, agreeing to pay counsel between 25% and 33% of any fee awarded, and notifying him that that amount would be sought from this Court in the event of a class settlement or judgment. (Ex. A, Schumacher Affidavit, ¶ 5.)

Class counsel filed the Complaint in this case on October 29, 2009. (Dkt. 1.) AK Steel immediately moved to dismiss the case based on the statute of limitations. (Dkt. 7.) The parties fully briefed these issues and, on March 8, 2010, Class counsel defeated AK Steel's motion to dismiss when the Court denied that motion. (Dkt. 34.)

Once litigation began, Class counsel sought to streamline the costs of litigation. Recognizing that the application of the "knowing and voluntary" test could be decided through class certification, Class counsel made an agreement with AK Steel to bifurcate discovery. (Rule 26(f) Report, Dkt. 32.) Discovery was first conducted on class issues alone followed by, if class

certification was granted, merits discovery. (*Id.*) The time to conduct both written and oral discovery was short, only four months. (Scheduling Order, Dkt. 38.)

With such a short discovery period in place, Class counsel quickly issued and responded to written discovery. But Class counsel had to devote significant time and effort to procure meaningful discovery responses from AK Steel. In a pattern that would be repeated in the litigation, AK Steel refused to answer critical discovery questions. (Ex. B, Hurst Affidavit, ¶ 16.) In the class discovery phase, for example, Class counsel had to petition Magistrate Judge Hogan to order AK Steel to answer the simple, yet key, question of whether it had informed Class members of the *West* litigation prior to signing the Severance Agreements. He granted Class counsel's request. (July 16, 2010 Order, Dkt. 43.)

Oral discovery also ensued. Class counsel prepared and defended Mr. Schumacher's deposition and also deposed Ms. Sandra Evans, a human resources manager and the only person identified in AK Steel's Rule 26(a)(1) disclosures. (Ex. B, Hurst Affidavit, ¶ 8.) At her deposition, Ms. Evans identified a half-dozen other individuals – her counterparts at five other facilities involved in the layoff and the vice president who provided the script and release – with discoverable information. (*Id.*) Because of Class counsel's thorough and efficient examination of Ms. Evans, though, they did not need to conduct additional depositions.

Thereafter, Class counsel moved for class certification. (Dkt. 44.) That issue was hotly contested. The briefing totaled 54 pages and 150 pages of exhibits. (Dkt. 44, 51 & 55.) This included AK Steel's attempt to add 10 individuals, who were not within the class definition, to the proposed class. (Dkt. 51 at 8.) AK Steel then claimed that a class could not be certified because the releases were not uniform due to the different language employed in the 10 releases as opposed to the uniform 92 Severance Agreements signed by the actual Class members. (Dkt.

55 at 2-4.) This fight is also reflected in this Court's lengthy 21 page opinion, granting class certification. (Dkt. 60.)

On merits discovery, Class counsel issued two more sets of discovery, one relating to damages and one relating to the solicitation of the Severance Agreements.  While this was proceeding, Class counsel notified each Class member of the class certification, in order to allow them to opt-out. That notice program was not an easy endeavor; AK Steel refused to respond to Class counsel's attempt to secure agreement on the form of the notice. (Ex. B, Hurst Affidavit, ¶ 17.) Ultimately, Class counsel sought and won court approval without AK Steel's agreement because AK Steel simply would not respond. (Dkt. 70.)

After discovery was completed, Class counsel moved for summary judgment—less than two months after the order certifying the Class. (Dkt. 62.) Again, the issues were hotly contested, spanning 60 pages of briefing. Class counsel won summary judgment and this Court, recognizing the complexity of the legal and factual issues, authored a thorough 27-page opinion in the Class's favor. (Dkt. 87.)

Not allowing any time to go to waste, Class counsel sought to resolve the remaining issues rapidly. First, they moved for a determination of if, and how much, prejudgment interest the Class was entitled to. (Dkt. 91.) Class counsel essentially lost this motion, with the Court awarding prejudgment interest at the Section 1961(a) rate of 0.12%. (Dkt. 114.)

Second, Class counsel sought to confirm the damages calculations. Again, AK Steel refused to answer basic discovery about the damages inputs. Accordingly, Class counsel successfully moved Magistrate Judge Bowman for an order directing AK Steel to produce this information. (Dkt. 107.)

Thereafter, Class counsel proceeded efficiently on confirming the damages calculations. Rather than retaining an expert to run new calculations, Class counsel hired the experts used in *West* to take a random sample of the participants to confirm AK Steel's damages numbers. (Ex. B, Hurst Affidavit, ¶ 19.) The analysis showed that the damages were within an acceptable margin of error. This allowed Class counsel to accept the numbers proffered by AK Steel, with confidence the numbers were correct, for only $800 in expert fees. (*Id.*)

Class counsel then moved for final judgment. Despite the absence of a single issue left to be litigated at the trial level,[2] AK Steel vehemently opposed the motion for entry of the judgment. (Dkt. 115,125 & 127.) They argued that entry of the judgment must be held in abeyance because it would dissuade the parties from settling at an upcoming settlement conference. (Dkt. 125.) So, after a 30 minute settlement conference on December 12, 2011, the Court entered the final judgment. (Dkt. 130.)

AK Steel appealed. (Dkt. 131) They asserted seven separate grounds for reversal. (*Id.*) Class counsel cross-appealed on one ground (Dkt. 132), challenging the rate of prejudgment interest awarded. In the interim, though, rather than pay the judgment, post a bond, or move for a waiver, AK Steel elected to do nothing. (Motion, Dkt. 138.) Class counsel was forced, once again, to seek judicial intervention. (*Id.*) Again, the Court found that AK Steel's willful inaction unacceptable and ordered them to produce a list of assets upon which Plaintiffs could execute if they continued to flout the rules. (Order, Dkt. 138.) As a direct result, AK Steel posted a bond. (Dkt. 145.)

---

[2] Attempting to manufacture an issue, AK Steel contended there was an issue over $8. (Dkt. 127.) Not only would this incredibly nominal sum be uneconomical to argue about, there was actually no issue because documents filed with the Court resolved this issue *prior to* AK Steel raising it. (*Id.*) AK Steel's only other objection arose from their gross misreading of Federal Rule 54 and Local Rule 54.2. (*Id.*)

At the Sixth Circuit, the parties essentially briefed every significant legal issue in the case. Those briefs totaled 191 pages. On March 28, 2013, the Sixth Circuit Court of Appeals denied AK Steel's appeal in its entirety and granted Plaintiffs' cross-appeal. The Court of Appeals instructed the district court to set a new prejudgment interest rate in keeping with guidelines in the opinion.

On April 11, 2013, AK Steel asked the Court of Appeals to reconsider its decision or, in the alternative, vacate and have the matter reheard by all 15 judges of the Sixth Circuit. This was denied on May 6, 2013.

After the decision from the Sixth Circuit, but before remand, Class counsel moved to increase the amount and duration of the bond. (Dkt. 150.) This was caused by a 61% decline in AK Steel's stock price in the 15 months since the judgment had been entered. (*Id*. at 4.) Magnifying this concern was AK Steel's prior claim of financial hardship to put off settlement discussions.  (Dkt. 115.) The Court denied the motion.

When the case was remanded to the district court, Class counsel moved to set a new prejudgment interest rate. (Dkt. 161.) Again, this motion was hotly contested. On July 29, 2013, this Court set prejudgment interest at approximately 4%, compounded annually, for each of the approximately 10 years Plaintiffs were denied their benefits. (Dkt. 173.) The final judgment was entered on August 27, 2013. (Dkt. 176.)

**ARGUMENT**

I.    **Class counsel is entitled to 30% of the benefit generated by their efforts as a reasonable attorney's fee.**

The Court should first determine a reasonable fee under the common-fund doctrine for five reasons.[3] *First*, it is appropriate because Class counsel did, in fact, create a $4.42 million common fund. *Cf. Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3d Cir. 2000) (characterizing a fund in an ERISA case as a common fund, despite the fact it was created by a judgment and ERISA's fee-shifting provisions might also apply). *Second*, using the common-fund doctrine will ensure that the Court take into account the risky and contingent nature of Class counsel's fee arrangement, which will, in turn, ensure the Court's determination of "reasonableness" is consistent with its own Rules of Professional Conduct.  The common-fund doctrine (either the percentage-of-the-fund method or the lodestar+multiplier method) considers the riskiness of a case and the contingent nature of a fee, while the statutory fee-shifting method does not. And the Ohio Rules of Professional Conduct—which this Court has adopted as its own—*require* that any determination of "the reasonableness of a fee" take into account "whether the fee is fixed or contingent."  Rule 1.5(a)(8); *Bergman Group v. OSI Development, LTD*, No. CA2009-12-080, 2010 WL 2723150, at *10 (Ohio App. 12 Dist. Jul. 12, 2010) (reciting factors); *In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*, No. 03-1565, 2010 WL 1257598, at *6 (S.D. Ohio Mar. 29, 2010) ("Attorneys practicing in this court are governed by the Ohio Rules of Professional Conduct."). *Third*, if the Court does not consider and award a common-fund fee– and its consideration of the inherent risk and contingent nature of Class counsel's fee–it will be creating perverse incentives for future Class counsel to settle cheaply to reap larger fees and hurt

---

[3] Class counsel is well aware of this Court's fee decision in *West v. AK Steel Corp.*, 657 F. Supp. 2d 914, 936 (S.D. Ohio 2009). But this brief answers some of the Court's concerns in *West* and provides new arguments as to why Class counsel here are entitled to the fee they seek, whether it is calculated as a percentage of the common fund or an enhanced lodestar.

future class-action plaintiffs.  *Fourth*, even if the Court does not use the common-fund doctrine to award the fee, the analysis will inform the Court as to what a reasonable fee in this case should be. And *fifth*, common fund treatment is especially appropriate when, as discussed in Section II.B.5, the case is undesirable to other attorneys. *Brytus*, 203 F.3d at 247. Who should pay what portion of Class counsel's fee is covered in Section II.

The United States Supreme Court long ago recognized that "a litigant or a lawyer who recovers a common fund for the benefit of a person other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). In the Sixth Circuit, the common-fund doctrine "is employed where a lawyer recovers a common fund for the benefit of persons in addition to those he formally represents." *Geier v. Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004).  Here, Class counsel has recovered a $4.42 million fund "for the benefit of" 92 class members, so this is clearly a common fund.

In the Sixth Circuit, courts determine a reasonable attorney's fee in a common-fund case by either applying the percentage-of-the-fund approach or the lodestar-plus-multiplier approach. *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). Either method justifies Class counsel's 30% fee request.

### A.  The percentage approach supports a 30% fee award.

The percentage approach best emulates the real-world market value of attorney's services that are provided on a contingent basis. *See Kirchoff v. Flynn*, 786 F.2d 320, 328 (7th Cir. 1986). In contingent fee cases, 30% is a perfectly reasonable, typical, and acceptable attorney's fee. In fact, nationwide, contingent class-action lawyers are typically awarded 33% of a common fund. For example, a study by NERA Economic Consulting ("NERA") determined that "Plaintiffs'

counsel typically receives one-third of any settlement or sum awarded at judgment as compensation for their services." (Ex. C, E. Buckberg, T. Foster, R. Miller, & S. Planrich, *Recent Trends in Shareholder Class Action Litigation: Bear Market Cases Bring Big Settlements* (NERA, February 2005) at 8 n.12.)  Similarly, in a recent study of class actions commissioned by the Federal Judicial Center, the authors found that one-third is the "traditional" contingent fee percentage and determined that most fees were in the 20% to 40% range. The *median* percentage fee was between 27% and 30% of the gross settlement. (Ex. D, T. Willging, L. Hooper, & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* (Federal Judicial Center, 1996) at 68–69.)

Indeed, Judge Richard Posner, the well-regarded former Chief Judge of the Seventh Circuit and a frequent author on topics of attorney's fees, has stated that the market range for contingent fee cases is *33% to 40%. Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (affirming 38% fee on $20 million recovery); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, N.D. Ill. 97 C 7694, 2001 WL 1568856, at *4 (Dec. 10, 2001) ("A customary contingency fee would range from 33% to 40% of the amount recovered."); *cf. McDonough v. Toys "R" Us, Inc.*, 834 F. Supp. 2d 329, 343 (E.D. Pa. 2011) ("[This District's fee awards generally range between nineteen and forty-five percent of the common fund.") (citing *In re Corel Corp., Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003), awarding one-third fee).

Courts in the Sixth Circuit concur and recognize that attorneys typically receive a percentage between 20% and 50% of the common fund. *Chesher v. Neyer*, No. 01-566, 2007 WL 4553908, at *2 (S.D. Ohio Dec. 19, 2007); *Manners v. American General Life Ins. Co.*, No. 98-0266, 1999 WL 33581944, at *29 (M.D. Tenn. Aug.11, 1999) ("throughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%–50%"). Reasonable fees for ERISA class

10

actions that recover a common fund also fall within the same range. *See, e.g., Clevenger v. Dillards, Inc.*, No. 02-558, 2007 WL 764291 at *3 (S.D. Ohio Mar. 9, 2007) (29% fee awarded in ERISA class action); *Dalesandro v. Int'l Paper Co.*, No. 1:01-cv-109, Dkt. 111 at 10–12 (S.D. Ohio Nov. 16, 2005) (25% fee awarded in ERISA class action); *In re Visteon Corp. ERISA Litig.*, No. 05-71205, Dkt. 58 (E.D. Mich., Mar. 9, 2007) (awarding 28% of $7.6 million settlement fund).

Given this data and what Class counsel achieved here, a 30% fee award, then, is reasonable.

### B. The lodestar+multiplier approach supports a 30%, or $1.326 million fee award.

Under a lodestar analysis, the court applies a "multiplier" to counsel's reasonable dollars-times-hours, or lodestar, fee that reflects the risk, delay in payment, result achieved, quality of representation, and complexity and magnitude of the litigation. *Binta v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013). This multiplier "reward[s] a lead counsel that takes on more risk, demonstrates superior quality, or achieves a greater settlement with a larger lodestar multiplier." *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007). "The most critical factor in the adjustment calculation is the degree of success obtained." *Binta*, 710 F.3d at 628 (internal quotes and brackets omitted).

Here, Class counsel's requested multiplier of 1.51 ($1.326 million divided by their billed lodestar of $878,992) is very reasonable. For example, one large academic study reported an "average" multiplier of *3.89*. (Exhibit E, S. Logan, J. Moshman & B. Moore, Jr., *Attorney Fee Awards In Common Fund Class Actions*, 24 Class Action Reports 167, 197 (Mar.–Apr. 2003) (study covering 134 class actions for years 2001 to 2003).) And the well-respected and oft-cited Eisenberg & Miller study reports a mean multiplier of *1.97* in the Sixth Circuit. (Exhibit F,

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, Jl. Empirical Legal Stud. 248 (June 2010) ("Eisenberg & Miller" or "E&M"), Table 14.) Indeed, in *Dalesandro*, this very Court awarded a multiplier of *2.8*. *Dalesandro*, Dkt. 111 at 10–12.

Given Class counsel's risk in never being paid, the substantial amount of time devoted to the case, and the excellent results achieved—a complete victory plus an enhanced prejudgment interest award above and beyond this Court's initial award—awarding an enhancement below the Sixth Circuit and national averages is entirely reasonable.  Remember, Class counsel litigated this case for four years without a dime of costs or fees being paid and without any guarantee they might not lose, either in the district court or on appeal. This case was extremely undesirable; even lead counsel in *West* would not touch this case.  And there was substantial risk as AK Steel had specifically sought that Plaintiffs pay its attorney's fees if AK Steel won. (Answer, Dkt. 36 at 9.)

Moreover, when one compares this case to *Dalesandro*, where this Court awarded a multiplier of *2.8* and a 25% fee for less work and less success achieved, it is clear that Class counsel is entitled to a multiplier on their base lodestar. *See Dalesandro,* No. 1:01-cv-109, Dkt. 111 at 10–12. That case had a far less substantive procedural history—there was no motion to dismiss, little or no discovery, this Court disposed of the matter on a judgment on the pleadings, and the case settled shortly thereafter with no appeal (one was noticed, but never briefed). *Id.* In contrast, Class counsel here in this case fought a motion to dismiss, conducted multiple rounds of discovery, brought several (successful) motions to compel, obtained class certification, won the motion for summary judgment, briefed an appeal and cross-appeal to the Sixth Circuit, and successfully obtained over *47 times* the initial prejudgment interest award. Class counsel here did

more work, more efficiently. (*Compare* 1,719.45 hours in *Schumacher* v. 2,116.9 hours in *Dalesandro*, Dkt. 96 at 3). And Class counsel's work achieved better results ($4.42 million (147% of damages) vs. $2.75 million (65.5% of damages after deducting attorney's fees)).

Comparing this case to *Dalesandro* also perfectly highlights why the Court should either use the common-fund doctrine to compute reasonable attorney's fees here or, at the very least, allow its results to inform how it does compute reasonable attorney's fees.  The only distinguishing factor between *Dalesandro* and this case regarding the method of computing reasonable fees is that *Dalesandro* settled after judgment and this case did not. But what's the difference? In both cases, the attorneys created a common fund for the benefit of the class. Awarding *less* to attorneys who successfully defend their judgment on appeal than to those who settle for less money for their clients creates a perverse incentive system that would *encourage* litigation tactics unfavorable to class members.

For example, assume that late in the litigation the plaintiff's attorney has the choice between taking a case to judgment, where the class would be awarded $5 million, or settling the case for $3.5 million. If counsel takes the case to judgment, he is likely to be awarded only his hourly attorney's fees, say $400,000 from the defendant.[4] But if the counsel settles for $3.5 million, he could seek a percentage of the fund in the amount of 30%, or greater.

As demonstrated below, this system would set up a dynamic where everybody wins, except the class.

---

[4] Of course, when there is a fee-shift, the losing party usually hotly contests every aspect of the petition and the court thoroughly scrutinizes every time entry. The fee is subject to reduction based on rates, time expended, or any other *post hoc* determination that the benefit of hindsight makes clear.

| Amount Recovered | Percentage Recovery to Class | 502(g) Fees Awarded | Total Cost to AK Steel | Attorney's Fees Common Fund Award | Savings to AK Steel | Additional Benefit to Attorney for Settling | Actual % Recovery to Class |
|---|---|---|---|---|---|---|---|
| $5,000,000 (judgment) | 100% | $400,000 | $5,400,000 | $0 | 0% | $0 | 100% |
| $3,500,000 (settlement) | 70% | $0 | $3,500,000 | $1,050,000 (30%) | $1,900,000 | $650,000 | 49% |

Thus, this system would result in almost a 38% savings to defendants ($1,900,000) and a fee almost two-and-a-half times greater to class counsel, all at the expense of the class, who would suffer a 51% reduction in their recovery. Even with careful judicial review of the settlement, such a perverse incentive system creates too great a risk to be countenanced by any court. Awarding a multiplier where a judgment is obtained for the class, on the other hand, would eliminate this problem and reward plaintiff's counsel who successfully litigate ERISA claims to judgment.

**II.  AK Steel should pay $1,318,488 in attorney's fees under ERISA § 502(g) with the remaining amounts paid by the common fund created by Class counsel.**

Class counsel's request for a fee equal to 30% of the recovery should be paid primarily by AK Steel under ERISA's fee shift provision. 29 U.S.C. § 1132(g). Under that provision, Class counsel request an award of $1,318,488 from AK Steel.

**A.  The Court should assess attorney's fees against AK Steel under ERISA § 502(g) because Class counsel prevailed on the merits and dramatically increased the recovery to the Class through the cross-appeal.**

ERISA § 502(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010) lays out a two-step process for awarding

attorney's fees. First, a moving party must be *eligible* for attorney's fees. *Id.* To be eligible, plaintiffs need not prove that they "prevailed," only that they achieved "some degree of success on the merits." *Id.* That prong is not in dispute here because Plaintiffs prevailed on their claims.

Second, a moving party must be *entitled* to attorney's fees. *Id. Hardt* left open what test may be used to answer this question, but it suggested the Sixth Circuit's five-factor test, *see Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008), is acceptable. *Hardt*, 130 S. Ct. at 2158, n.8. That test requires the Court to consider:

(1) the degree of the opposing party's culpability or bad faith;

(2) the opposing party's ability to satisfy an award of attorney's fees;

(3) the deterrent effect of an award on other persons under similar circumstances;

(4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

(5) the relative merits of the parties' positions.

*Gaeth*, 538 F.3d at 529 (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006)). Each factor supports an award of attorney's fees to Plaintiffs.

> **1. AK Steel was culpable in drafting an inexact release and not paying benefits because of it and/or acted in bad faith by breaching its fiduciary duty to the Class to put them on equal footing with AK Steel regarding what the Plan intended to release in the Severance Agreements.**

AK Steel can be held accountable for fees under this prong if it is either culpable *or* acted in bad faith. *See Holler v. Hartford Life and Acc. Ins. Co.*, 737 F. Supp. 2d 883, 906–07 (S.D. Ohio 2010) (the use of "or" in the test is disjunctive). "Culpability is merely defined as 'blameworthiness.'" *Pelchant v. Unum Life Ins. Co.,* No. 02-CV-7282, 2003 WL 21479170, at *2 n.1 (N.D. Ohio June 25, 2006). In contrast, bad faith, is "arbitrary, reckless, indifferent, or

15

intentional disregard of the interests of the person owed a duty." *Benkert v. Med. Protective Co.,* 842 F.2d 144, 149 (6th Cir. 1988).

AK Steel is culpable for this litigation. It clearly botched the language of the Severance Agreements, perhaps intending to draft one that released all ERISA claims but failing to do so. This litigation could have been avoided if it had simply informed the Class members of the existence of the *West* litigation, what it entailed, and that by agreeing to the releases, they would be waiving that claim.[5] This would properly bring the pension benefits within the scope of the Severance Agreement, fulfill all fiduciary duties, and satisfy the requirements of ERISA's anti-alienation provision.

But AK Steel chose not to take this approach, probably because the plaintiffs either would not have agreed or would have demanded more money in severance. Instead, AK Steel solicited these agreements in the midst of the *West* litigation, never told the Class about the ongoing litigation, and subsequently asserted it as a defense. Under ERISA, AK Steel was a fiduciary of the Class members. 29 U.S.C. § 1104(a). And remember, the entire process was overseen by inside counsel of AK Steel. (Ex. G, Evans Dep. at 24–25.) As a fiduciary, AK Steel had a duty to put the Class members on an "equal footing" and make sure that they understood all of their legal rights and were informed of all relevant facts that the fiduciary knows or should know. 76 C.J.S. Release § 22 (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989)). The releasing party has no obligation to inquire; concealment vitiates the release. *See Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 263 (6th Cir. 1988). Given these facts, AK Steel is

---

[5] Alternatively, AK Steel could have taken a "belt and suspenders" approach by using the following language to include any claim for benefits:

> The undersigned will receive their pension benefit, as described in the last bi-annual statement, with interest and service credits attributable through the date of distribution. This resolves all claims for pension benefits, including those asserted in the *West* litigation.

not only culpable, but it also acted in bad faith.  Fiduciaries must be held to a higher standard than this.

### 2.  AK Steel can satisfy any attorney's fee award.

As of April 23, 2013, AK Steel, the ultimate guarantor of the Plan, has almost $1.3 billion in current assets. (Ex. H, Form 10-Q, Q2, 2013, at 6.) It is therefore able to satisfy both the judgment and the award of attorney's fees.

### 3.  The Court should award fees to deter ERISA fiduciaries from drafting inexact and vague releases of ERISA claims and hiding material information from their plan participants.

"The key question in analyzing this third factor is therefore whether the fee award would have a deterrent effect on other plan administrators." *Gaeth*, 538 F.3d at 532. As referenced above, this litigation was easily avoidable. But AK Steel attempted to slip one by the Class members by not telling them of the *West* litigation or even bothering to mention the Plan, ERISA, or pension benefits in the Severance Agreements. By awarding attorney's fees here, the Court will send a clear message that plan administrators and plan sponsors should not emulate this conduct, and instead should, at the very least, draft agreements carefully rather than simply relying on boilerplate language.

### 4.  This litigation provided a common benefit to the Class and the public and clarified significant legal questions.

This litigation obviously benefited the Class—each participant will receive almost 150% of their pension benefits. Moreover, the public received a benefit, too, because this litigation helped resolve the parameters of what constitutes a valid release of ERISA benefits in the Sixth Circuit, clarifying the scope of decisions such as *Valeck v. Watson Wyatt & Co.*, No. 03-1854, 2004 WL 500985 (6th Cir. Mar. 11, 2004); *Almond v. ABB Indus. Sys., Inc.*, No. 01-3382, 2003

WL 173640 (6th Cir. Jan. 22, 2003); *Halvorson v. Boy Scouts of Am.*, No. 99-5021, 2000 WL

571933 (6th Cir. May 3, 2000); and *Samms v. Quanex Corp.*, No. 95-2173, 1996 WL 599821

(6th Cir. Oct. 17, 1996); *cf. Schumacher v. AK Steel*, Dkt. 87 at 6-7; *Id.*, 711 F.3d 675, 685 (6th

Cir. 2013). It also helped clarify the manner in which a court should approach prejudgment

interest in ERISA cases in this circuit, which in the current abnormal economic environment,

was sorely needed. *Schumacher*, 711 F.3d at 685-88.

### 5. The merits of Plaintiffs' positions were better than AK Steel's positions.

Plaintiffs obviously had the better arguments on the merits; they won. *See Holler*, 737 F.

Supp. 2d at 907. And they did so without a trial, securing their benefits through summary

judgment. Despite their efforts, AK Steel failed to produce a "scintilla of evidence," *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), necessary to rebut the evidence put forward by

Plaintiffs. And Class counsel not only sustained this decision on appeal, they obtained an

additional $1.41 million for the Class through the cross-appeal on the prejudgment interest.

*Schumacher*, 711 F.3d at 685-88.

### B. The Court should enhance the attorney-fee award paid by AK Steel because Class counsel achieved extraordinary success.

Under a fee-shifting statute, defendants may be required to pay more than just a lodestar

fee; an enhancement may be applied when the moving party's attorneys achieved an exceptional

success. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Sixth Circuit recently reaffirmed

eleven[6] relevant factors to consider in determining whether an enhanced fee is appropriate:

---

[6] The sixth factor, whether the fee is fixed or contingent, is no longer considered. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 626 (6th Cir. 2013), citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002); *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013). In *Paschal*, for example, the Sixth Circuit applied four of these factors in affirming a 50% multiplier. *Id*. at 436. Other courts in the Sixth Circuit have awarded similar multipliers. *See Caudill v. Sears Transition Pay Plan*, No. 06-12866, 2011 WL 1595044, *11 (E.D. Mich. Apr. 26, 2011) (enhancement of 50%); *Meredith v. Jefferson County Bd. of Educ.*, No. 02-620, 2007 WL 3342282 at *4 (W.D. Ky. Nov. 09, 2007) (enhancement of 75%).

In this case, a multiplier of at least 50% (or 1.5 times Class counsel's lodestar) is appropriate because of the six most relevant factors discussed below.

### 1. Class counsel identified, briefed, and won novel and difficult legal questions.

As this Court has observed, "[c]ases of first impression generally require more time and effort on the attorney's part." *Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp. 2d 870, 880 (S.D. Ohio 2008) (awarding enhancement) (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 718 (5th Cir. 1974)). This case involved several novel questions of law, including whether the releases at issue were void under ERISA's anti-alienation provision and whether AK Steel's breach of its fiduciary duties vitiated the releases. It was also a difficult case because Class counsel was swimming against the tide of Sixth Circuit decisions. The Sixth Circuit's decisions in *Valeck*, *Almond*, *Halvorson*, and *Samms* appeared, at first glance, to provide support for AK Steel's position. In addition, this Court's exclusion order in *West*, appeared to preclude

the possibility of class certification. All three of Class counsel's primary arguments raised issues that were either novel or difficult, justifying the requested multiplier here. *See Caudill*, 2011 WL 1595044, at *19 (awarding 50% multiplier where case was "heavily litigated" and "involved complex questions arising under ERISA").

AK Steel wholeheartedly concurs with this assessment. In fact, *AK Steel* stated that this Court's decision and the Sixth Circuit opinion "involves important public policy concerns" (Defs.' Pet. for Reconsideration or Rehearing *En Banc* at 2.) Specifically, it argued:

- "This has not been and should not be the law in this Circuit." *Id*.

- The decision "is not supported by the language of the Severance and Release Agreement (the 'Release') or the prior decisions of this Court." *Id*.

- The decision "flies in the face of numerous prior decisions of the Court." *Id*. at 3.

- "Neither Schumacher nor the Court has cited to a single decision from this Circuit standing for the proposition that a release must specifically cite to ERISA or name a particular benefit plan to be enforceable against ERISA claims.  All of this Circuit's law stands to the contrary." *Id*. at 4.

- "When this Circuit's decisions are viewed and interpreted collectively . . . they clearly stand for the proposition that a party can waive an ERISA claim, whether unknown or un-accrued at the time of signing, through a general release, as long as the party knows or has a reasonable opportunity to know of the facts underlying that claim . . . According to the Court's prior precedent, the Release should act to bar Schumacher's and the class members' claims." *Id*. at 8.

- The decision "sets a dangerous precedent that could discourage or preclude knowing and voluntary settlement of ERISA and other claims." *Id*. at 14.

AK Steel's comments to the 15 judges of the Sixth Circuit Court of Appeals is an unqualified endorsement of Class counsel's achievements in this case.

### 2. A customary fee for these results is 25% to 33% of the amount recovered for the Class.

The customary fee in any class action is a percentage of the recovery. See Section I.A above at pages 10-11. Even the retainer letter, executed by Mr. Schumacher, reflects that 25% to 33% of the recovery is appropriate in the market. (Ex. A, Schumacher Affidavit, ¶ 5.) Out of the approximately $4.5 million recovered in this case, the traditional fee would be between $1,125,000 and $1.5 million. An enhancement is warranted to bring the fee awarded here more in line what the traditional compensation is for successful ERISA class actions.

### 3. Class counsel's complete victory on the merits and reversal and increase of the prejudgment interest by $1.41 million warrants an enhancement.

Class counsel recovered almost 150% of the $3 million in benefits sought by the Class. These results easily justify the requested 50% enhancement. Compare these numbers to those in *Caudill v. Sears Transition Pay Plan* for example. In *Caudill*, the plaintiffs' attorneys obtained a judgment for approximately $2.6 million, ensuring that "[o]ver eighty class members will finally obtain the severance benefits they were wrongly denied." *Caudill*, 2011 WL 1595044, at *19. The court concluded that a 50% multiplier was necessary to adequately compensate the plaintiffs' counsel for this "excellent job." *Id.* As a result, the court there awarded a fee of $758,000 or 29% of the actual judgment amount.  Here, Class counsel has benefited approximately the same number of people, and created a 70% larger class recovery.

### 4. Class counsel's experience, reputation, and ability justify an enhancement.

Class counsel has submitted declarations that they have excellent experience, reputations, and ability in the area of ERISA class actions.  (Ex. I, Saunders Affidavit at ¶ 7; Ex. J, Sachnoff Affidavit at ¶ 24.)  They have been complimented by the Seventh Circuit for their efforts in such

cases. *See Young v. Verizon*, No. 05-7314, Dkt. No. 205 (N.D. Ill. Oct. 5, 2009) (Judge Denlow stating our clients "should feel that they have been well served in the litigation process . . . it's been a real privilege to work on this case . . . and I appreciate the fine lawyering."); *Id.*, 615 F.3d 808, 815 (7th Cir. 2010) (The Seventh Circuit praising our "fine advocacy.") Other courts concur with this sentiment. *See Nelson v. Brinson Partners, et al.*, No. 03-C-6446 (N.D. Ill. 2006) ("This [ERISA] case was, as I said, not a law-down case and it did involve a great deal of work on the party of the attorneys…and whose papers support the proposition that a lot of work was put into this case."); *Kiefer, et al. v. Ceridian Corp., et al.*, No. 3-95-818 (D. Minn. 1997) (counsel performed "one heck of a job" for their clients in an ERISA class action while noting that "the conduct of the plaintiffs lawyers in this case…[was] exemplary."). They have been appointed by courts across the nation to represent tens-of-thousands of clients in various ERISA class actions. *Dooley v. Saxton*, No. 12-1207, Dkt. 94 (D. Or.); *Nelson*, No. 03-C-6446 (N.D. Ill.). Class counsel respectfully submits this factor, too, augers in favor of an enhancement.

### 5. The undesirability of this case supports an enhancement.

From the outset, several factors made this case undesirable from a plaintiff's lawyer's perspective. First, there was a high risk of loss and, with it, the risk that Class counsel would be assessed with AK Steel's attorney's fees. *See, e.g., Childers v. MedStar Health, Inc.*, 289 F. Supp. 2d 714, 718, (D. Md. 2003); *Ghorbani v. Pac. Gas & Elec. Co. Group Life Ins.*, 100 F. Supp. 2d 1165, 1167–68 (N.D. Cal. 2000); *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 497 (D. Del. 1998); *Baker v. Greater Kansas City Laborers Welfare Fund*, 716 F. Supp. 1229, 1231 (W.D. Mo. 1989). Here, in fact, AK Steel requested that it be awarded attorney's fees and costs if it prevailed. (Dkt. 36 at 9.)

Second, this case was undesirable because AK Steel so staunchly fought the *West* litigation that it was clear it would similarly fight this case to the end. It is difficult for any law firm to match resources with a billion dollar company, especially one that is entrenched in its position and has established a reputation of fighting cases through judgment and appeal. Even litigation counsel in *West* refused to take this case, citing numerous obstacles to a successful conclusion. (Ex. A, Attachment 1.) And this Court's prior opinion excluding the Class members from the *West* litigation, coupled with numerous adverse Sixth Circuit precedents, made both class certification and success on the merits appear unlikely.

A risk enhancement is also appropriate where "the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." *Pennsylvania v. Delaware Valley Citizens Counsel*, 483 U.S. 711, 731 (1987) (O'Connor, J., concurring). The enhancement should reflect "the difference in market treatment of contingent fee cases as a class rather than the riskiness of any particular case." *Id.* The Sixth Circuit has recognized that difficulty in retaining counsel supports granting a multiplier. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005). And district courts in the Sixth Circuit have awarded a multiplier on these grounds. For example, in *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001), the court granted a multiplier of 1.5 to the total fee award, in part, because the case was "one in which a number of attorneys declined to participate." Similarly, in *James v. Frank*, 772 F. Supp. 984, 1003 (S.D. Ohio 1991), the court granted a multiplier of 2 to the total fee award, primarily because it was shown that the plaintiff "would have encountered substantial difficulties in obtaining counsel."

### 6.  Other Factors

As mentioned above, in Section I.B, the Court should take into account that, by not awarding a multiplier, it will be discouraging lawyers from litigating to judgment and recovering as much as possible for their clients.

### C.  The Class should contribute the remainder to bring the fee up to market rate.

Plaintiffs' counsel recovered almost 150% of the benefits to which Class members were entitled. The Class should bear a portion of the fee, paid from the prejudgment interest recovered, to meet the market rate attorney's fees. If the Court awards Class counsel its lodestar and the requested multiplier of 1.5, the contribution from the Class would be approximately 1% of the recovery. In fact, even if the Court awarded Class counsel no enhancement on their lodestar, the Class would still only be paying a fee of 10% (($1.326 million less $878,992)/$4.42 million) of the judgment amount, meaning they would still be recovering $3.97 million—or *25% more than this Court's first judgment amount.*

To begin, the Court has the power to require the Class to pay more than what might it might award under a fee-shifting statute.  For example, the Supreme Court has recognized that private fee arrangements and statutory fee awards can coexist. *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990). "[N]othing prevents the attorney for the prevailing party from gaining additional fees, pursuant to contract, from his own client." *Gisbrecht v. Barnhart*, 535 U.S. 789, 806 (2002). More specifically, the Sixth Circuit has held that an award of fees under ERISA's fee shifting provision does not relieve a class of a contingent fee arrangement. *Drennan v. General Motors Corp.*, 977 F.2d 246, 254 (6th Cir. 1992) ("a statutory award of fees, alone, does not invalidate a contract for attorney's fees").  In this case, Mr. Schumacher agreed that between 25% and 33% was an appropriate contingent fee based on representing a class. (Ex. A, Schumacher Affidavit, ¶

5.) Class counsel's fee request falls in the middle of this range. Obviously, Mr. Schumacher should not be solely responsible for making sure that the fees awarded fall within this range; his actions resulted in substantial benefits to the other members of the Class who elected to stay in the litigation after it was certified. *See Geier v. Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004).

Furthermore, it is fair for the Class to pay a fee in addition to any statutory fee paid by AK Steel. As discussed previously, under a fee-shifting statute, losing parties are not required to pay for any enhancement due to the contingent nature of a fee agreement. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 626 (6th Cir. 2013). That makes sense because the losing party in a lawsuit has no ability to affect the contract between the opposing party and its lawyers. It also makes little sense to have a losing party pay because an opposing party could not afford to pay its own lawyers on an hourly basis.  But that does *not* mean that the winning party should not have to pay their attorneys for the risk those attorneys took in agreeing to a contingent-fee arrangement. These arrangements provide real value to clients because if they lose—and here, there was a significant chance the Class could have lost—they pay *nothing*. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.") The flip side to that equation, though, is that if clients do recover, they will pay their attorneys more, usually, than they would have under a normal hourly billing arrangement. Put another way, if the Court does not require the clients to pay for the contingent nature of the fee arrangement here, it will be providing them with a windfall— they were insured all of the benefits of a contingent-fee arrangement on the downside, but none of the costs on the upside.

And ensuring that contingent-fee lawyers are paid for taking contingent risks is good public policy. "[T]he purpose of fee-shifting is to assure competent representation for plaintiffs rather than to make the cost of litigation to the successful plaintiff zero." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992). Not paying lawyers for contingent fee arrangements "constrain[s] plaintiffs by limiting their contractual options and reducing the incentive for some attorneys to take their cases." *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 643 (7th Cir. 2011). It is not unreasonable to theorize that the universe of attorneys in this district, state, and circuit might shrink if courts consistently refuse to take into account the contingent nature of plaintiff's contracts when they succeed in winning a complete victory at judgment for a class of ERISA participants.

III.    **Class counsel's rates, time, and expenses are reasonable.**

A.  **Class counsel's time expended was reasonable in achieving a complete victory for the Class.**

The Court should not eliminate nor cut any of Class counsel's time billed to this case. From the outset, Class counsel planned to handle this litigation in the most efficient way possible. Remember, Class counsel worked on a contingency with no guarantee of payment unless they secured a judgment in the Class's favor or a settlement. So they were incentivized to minimize work, not maximize it.

To that end, Class counsel agreed to from the outset of the case to limit discovery to class issues before proceeding to the merits. (Dkt. 32.) In discovery, Plaintiffs approached the issues in phases designed to address only the immediate issues, ultimately issuing discovery in four rounds. Even then AK Steel was not cooperative. Plaintiffs *twice* had to seek intervention of the magistrate judges to obtain discovery (both efforts were successful). And rather than waste time with unneeded depositions, Class counsel focused on the ones that mattered. For example, while

they would have been well within their rights to depose all six AK Steel employees involved in soliciting the releases in this case, Class counsel opted to focus on Ms. Evans. That deposition alone provided the basis for a successful motion for summary judgment.

In fact, it was AK Steel who sought to drive up the costs of discovery, not Class counsel. For example, after the Class was certified, AK Steel sought to take the depositions of several members of the Class to determine each individual's intent at the time of the Severance Agreements were executed. (Defs.' Rule 56(d) Affidavit, Docket 79-4.) Had Class counsel consented, the fees would have easily been increased by hundreds of thousands of dollars, none of which could be contested by AK Steel since it had requested such discovery. But Class counsel did not feel that this was appropriate, even if it was in their pecuniary interest. In an effort to resolve the dispute over AK Steel's requested discovery, Class counsel offered to seek resolution before this Court prior to filing summary judgment. (Ex. B, Hurst Affidavit, ¶ 18.) AK Steel never responded to this offer. *Id*.

Furthermore, Class counsel focused their efforts on the three major motions in this case—the motion to dismiss, the motion for class certification, and the motion for summary judgment. All three of these motions, not to mention the appeal in this case on the same issues, were hotly contested. All three involved complex and novel issues of both ERISA and class-action law, and the interplay between the two areas, so substantial research was required on each of these motions. In addition, the latter two motions required creative arguments to overcome not only adverse Sixth Circuit precedents, but this Court's own decision in *West*.

Class counsel's decisions to devote the amount of time and resources they did to this case paid off.  And when the Court compares the hours they spent to other similar ERISA cases, such as *Dalesandro* (2,116.9 hours) and *West* (3,881.4 hours), Class counsel's efficiency is clear.

*Dalesandro*, Dkt. 96 at 3; *West*, Dkt. 310 at 3-4. Here, Class counsel litigated this case for four

years, with significant battles at almost every stage of the litigation from discovery to class

certification to judgment to an appeal to the prejudgment interest rate (and now, no doubt, the

amount of their fee). In doing so, to date, Class counsel expended 1,719.45 hours of professional

time. Adjusting the lodestar in *Dalesandro* at this Court's approved COLA rate of 4%, counsel

there had approximately the same lodestar ($822,510) but engaged in substantially less litigation.

*Dalesandro*, No. 1:01-cv-109, Dkt. 111 at 10–12 (S.D. Ohio Nov. 16, 2005).

And in *West*, at the time the fee petition was made (which was after the conclusion of the

appeals), there were 177 docket entries. Plaintiffs' fee petition here will likely be the 184th entry

in docket. While not all docket entries are created equal, they at least provide a rough guide to

the amount of time and effort involved in a case. Yet despite a roughly equal number of docket

entries at this identical phase, with similar litigation histories, Class counsel's current lodestar is

46% of *West* counsel's. *West*, No. 02-001, Dkt. 177 at 1 (requesting $1.89 million).

Given all these considerations and comparisons, the Court should find all of Class

counsel's time is recoverable.

### B. Class counsel's billing rates are reasonable for ERISA class-action litigators, whether viewed nationally or in Ohio.

Numerous courts, as well as the client here, have approved of the rates charged by Class

counsel. The Southern District of Florida approved as reasonable the inflation-adjusted rates

requested here in a securities-fraud class action that SHH successfully prosecuted. (See Ex. K,

Rate Table (July 20, 2010) and Order (July 28, 2010) in *Miller v. Dyadic Int'l Inc.*, No. 07-80948

(S.D. Fla.).) In 2009, the federal court in the District of Connecticut approved SHH's then-

current rates in an ERISA class-action settlement. (See Ex. L, Susman Decl. (Mar. 24, 2009) and

Order (Apr. 14, 2009) in *In re Xerox Corp. ERISA Litig.*, No. 02-1138 (D. Conn.).) Although

both of these fees resulted from a common fund, in both the federal courts analyzed and approved as reasonable the billing rates of SHH. And the Northern District of Illinois recently approved Class counsel's rates in an ERISA fee-shifting case. *Young v. Verizon*, 783 F. Supp. 2d 1031, 1037 (N.D. Ill. 2011). The court approved of the following 2010 rates for Class counsel's attorneys and paralegals:

- Arthur T. Susman: $750
- Allen C. Engerman: $750
- Matthew T. Heffner: $500
- Matthew T. Hurst: $500
- Jeffrey C. Engerman: $450
- Glenn Hara: $390
- Gina Lamancusa: $350
- Sandra Pavlat: $200

*Id*. Since that time, Class counsel's rates have risen between 0% and 3.2% annually, well below the 4% annual COLA approved by this Court. *See West*, 02-0001, Dkt. 310 at 33 (S.D. Ohio Aug. 31, 2009).

True, none of the above cases are Ohio cases. But that is irrelevant. ERISA is a federal law, guided by federal regulations, adjudicated in federal courts in keeping with federally created common law. *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 393 (2002).The prevailing rate for ERISA attorneys should not be determined by geography because its practitioners are specialists who practice nationally. (Ex. M, Affidavits – Theado at ¶ 14, Zagrans at ¶¶ 15 & 20, Signorille at ¶ 14, Schlichter at ¶¶ 11-12, Payne at ¶ 13, Kravitz at ¶ 8, Debofsky at ¶ 5, Cantarella at ¶ 7; Ex. I, Saunders Affidavit at ¶ 6.) Potential plaintiffs and their counsel have no control over where to bring ERISA cases. By law, cases are filed where the plan is administered. 29 U.S.C. § 1132(e)(2). Thus, ERISA attorneys have to travel throughout the nation to litigate these cases.

In fact, look at AK Steel in this case: it hired Covington & Burling from Washington, DC to help defend this case. As noted by the Northern District of Illinois recently, Covington & Burling's rates are significantly higher than that of Class counsel.[7] *Young*, 783 F. Supp. 2d at 1037. If AK Steel felt the need to obtain counsel from outside the jurisdiction to defend the suit, at the prevailing rates in Washington, then Plaintiff should have the same freedom to select his counsel. It is a paradox to allow the defendants to choose any counsel from around the nation, since they are using the pension fund to pay for the defense, while the plaintiff would face rejection from many excellent counsel in other jurisdictions because their rates may be at risk of being sharply cut. Moreover, if Plaintiffs had lost this case, AK Steel would almost certainly be seeking reimbursement at the actual rates that Covington & Burling charged it.

At any rate, Class counsel's rates are reasonable for Ohio, too. First, an Ohio judge has recently approved those rates. The Honorable Judge Richard Frye of the Court of Common Pleas in Franklin County, Ohio recently approved SHH's rates for work done on a class case exclusively in Ohio:

> The court is satisfied that, although the hourly rates quoted by counsel would run toward the high-end of the Columbus market, they are not unreasonable . . . Predictably complex, class action litigation – sometimes termed "bet the company" cases – demands more complicated legal work because more money is at stake and yields higher hourly rates. These are the kinds of cases which counsel [Susman Heffner & Hurst] have experience . . . In the court's experience, relatively few lawyers charge hourly rates as high as those quoted here, but that reflect the fact that few Columbus lawyers possess the high level of experience and expertise that this case demanded, and that counsel brought to bear.

(Ex. N, *Sogg v. Goodman*, No. 04-CVG-08-8028, Ct. of Common Pleas, Franklin County, Ohio Sept. 5, 2012) (awarding $5,000,000, or 33.3% of recovery).

---

[7] Covington's rates were turned over to Class counsel pursuant to N.D. Ill L.R. 54.3. Pursuant to that rule, this information is confidential. However, the court's opinion is part of the public record.

Second, courts in the Southern District of Ohio have approved similar ERISA lawyer's rates. *Bailey v. AK Steel Corp.*, No. 06-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) (approving $450 per hour in 2008, which adjusted at 4% annually would equal $570 today, and noting that it is "similar to rate awards in comparable cases.")[8] If the 3.04 multiplier that was used in that case is applied to the hourly rates, the plaintiffs' counsel would have received the equivalent of $1,732 per hour. *Id.*

Third, Class counsel has identified other Ohio lawyers who charge similar rates. For example, in 2009, two ERISA litigation partners at the Cincinnati law firm of Keating Muething & Klekamp billed $425 and $465 per hour. (Ex. O, Fee Petition Excerpt.) Using the Court's 4% COLA, those rates would now be $497 and $544.  Attorneys at Frost Brown Todd—the primary defense firm here—also charge similar rates. As of 2010, Robert Guy charged $500 (now equal to $562, using a 4% yearly increase) per hour. (Ex. P, FBT Fee Request.) Mr. Guy has a handful of years more experience than Matthew Hurst, Matthew Heffner and Jeffrey Engerman, but about four decades less than Arthur Susman or Allen Engerman. Other partners at Frost Brown Todd had rates of $420 ($472 today) and $450 ($506 today) per hour in 2010. *Id.*  Finally, in 2012, Thompson Hine, an Ohio law firm, charged $620 and $770 per hour for partners in Ohio. (Ex. Q, *Sogg* Affidavit.) They also charged $390 (now $405) for non-partners. *Id.*

Finally, even if ERISA were not a national practice and even if Class counsel rates were not on par with Ohio rates, it is still appropriate to use Class counsel home jurisdiction rates. "[T]here is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases." *In re Broadwing, Inc. ERISA Litigation*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) (awarding

---

[8] Notably, the plaintiffs' counsel in *Bailey* was being paid by the plaintiffs during the litigation at a reduced rate of $180 of hour. *Bailey*, 2008 WL 553764, at *2. None of the attorneys in this case have been paid any compensation.

23% of $11 million recovery). When attorney's fees are sought by out-of-town counsel, courts

must inquire "(1) whether hiring the out-of-town specialist was reasonable in the first instance;

and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of

his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 534 (6th

Cir. 1995).

Hiring out-of-town specialists was not only reasonable, but necessary, here. After this

Court's decision to exclude the 92 individuals in *West*, many employee-benefits attorneys

thought that this case was a lost cause. Even Mr. Theado refused to take Mr. Schumacher's case.

With no one in the jurisdiction willing to take the case, Mr. Schumacher's decision to hire out-

of-town specialists was the only choice available.[9]

And Class counsel's rates are reasonable given their attorney's degree of skill,

experience, and reputation. *See Miller*, No. 07-80948 (S.D. Fla.); *In re Xerox*, No. 02-1138 (D.

Conn.).) *Young*, 783 F. Supp. 2d at 1037; Ex. N, *Sogg*, No. 04-CVG-08-8028; *Nelson*, No. 03-C-

6446 (N.D. Ill. 2006); *Kiefer*, No. 3-95-818 (D. Minn. 1997).

**C.  Class counsel's expenses are reasonable.**

Class counsel has expenses of $24,559.87. (Ex. A, Attachment 1.) These are recoverable

as either costs or attorney's fees under ERISA § 502(g). In the Sixth Circuit, out-of-pocket

expenses are compensable as attorney's fees when "incurred by the attorney which are normally

charged to a fee-paying client in the course of providing legal services." *Northcross v. Board of*

*Ed. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979) (overruled on other grounds). This

---

[9] According to National Pension Lawyer Network, a non-profit run by the University of Massachusetts Boston, there are only four attorneys in Ohio specializing in ERISA litigation. Three of the four appear to represent only plan and businesses, not individuals. The fourth is Tom Theado, who refused this case. (Ex. B, Hurst Affidavit, ¶¶ 20-21.)

includes online legal research charges of $16,224.81. Very recently, the Chief Judge of the Southern District has held that these are recoverable under Section 1988, whose language mirrors ERISA's fee shift provision. *Hunter v. Hamilton County Bd. of Elections*, No. 10-820, 2013 WL 5467751, at *23 (S.D. Ohio Sept. 30, 2013). This Court should follow the recent decision by the Chief Judge.

## IV.    Mr. Schumacher should be compensated for his time and expenses.

This Court should award Mr. Schumacher compensation equal to the time he expended on behalf of the Class at the hourly rate he has earned as a consultant. (Ex. A, Schumacher Affidavit, ¶ 8.) Mr. Schumacher went to bat for the Class when not a single member, after four years, had stepped forward to undertake the litigation. Further, he did so with full knowledge, as he was informed by counsel in *West*, that AK Steel's attorney's fees could be assessed against him personally if he lost. Without him stepping forward, the Class would have exactly nothing.

The request of $4,200, reflecting his market rate times the 28 hours he spent on this case, should be taxed on a pro rata basis across the Class recovery. (*Id.* at ¶ 8.) In addition, his out-of-pocket expenses of $40, for travel expenses related to his deposition and the settlement conference, should be reimbursed. (*Id.* at ¶ 9.) This is an incredibly modest award, grounded in actual time expended, for someone who has endured four years of litigation.

## CONCLUSION

The interesting legal questions in this motion all ask the Court how it should incentivize lawyers to act.  Obviously, people—even lawyers—are driven by financial incentives and the right ones encourage socially beneficial behavior, while the wrong ones discourage it. Here, the Court should reward attorneys who achieve greater success and who do not harm the class's interests by settling for less in order to generate a larger attorney's fee. In doing so, the Court

should also avoid creating an arbitrary line between common funds created by settlement and those created by judgment. Class counsel respectfully submits that the outcome in this case, along with the time and effort necessary to achieve it, entitles them to a fee award of $1,326,000 and $24,559.87 in expenses.

Respectfully submitted,

*/s/ Matthew T. Hurst*

Carrie A. Barron
Randolph H. Freking
Freking & Betz, LLC
525 Vine Street, Suite 600
Cincinnati, Ohio 45202
Phone: (513) 721-1975
Facsimile: (513) 651-2570
Email: CBarron@frekingandbetz.com
Email: Randy@frekingandbetz.com

Arthur T. Susman (admitted *pro hac*)
Matthew T. Hurst (admitted *pro hac*)
Susman Heffner & Hurst LLP
Two First National Plaza, Suite 600
Chicago, Illinois 60603
Phone: (312) 346-3466
Facsimile: (312) 346-2829
Email: mhurst@shhllp.com

Allen C. Engerman (admitted *pro hac*)
Law Offices of Allen C. Engerman, P.A.
4800 North Federal Highway, Suite 100-D
Boca Raton, Florida 33431
Phone: (561) 392-2222
Facsimile: (561) 393-0646
Email: acelaw@engerman.com

Jeffrey C. Engerman (admitted *pro hac*)
Law Offices of Jeffrey C. Engerman, PC
11901 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Phone: (310) 207-7777
Facsimile: (310) 207-7779
Email: JEngerman@EngermanLaw.com

*Class counsel*

Dated:  October 14, 2013

## Request for Oral Argument

Plaintiffs request oral argument. While this may seem to be a simple matter about the amount of compensation, it has substantial policy, ethical, and efficiency implications. These issues warrant a hearing.