Case No. 1:09-CV-794

# UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**William J. Schumacher, on behalf of himself
and all persons similarly situated,**

**Plaintiffs,**

**v.**

**AK Steel Corporation (Formerly Armco Inc.) Retirement Accumulation Pension Plan, a Part
of the AK Steel Corporation (Formerly Armco Inc.)
Noncontributory Pension Plan, and
AK Steel Corporation Benefit Plans Administrative Committee,**

**AK Steel.**

## CLASS COUNSEL'S REPLY IN SUPPORT OF THEIR MOTION FOR
## AN AWARD OF ATTORNEYS' FEES

Matthew T. Hurst (admitted *pro hac*)
Susman Heffner & Hurst LLP
30 North LaSalle Street
12th Floor
Chicago, Illinois 60602
Phone: (312) 346-3466
Facsimile: (312) 346-2829
Email: mhurst@shhllp.com

(Counsel continued on signature page)

*Class counsel*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Summary of the Argument................................................................................................1

I.   The majority of the factors favor an award of fees from AK Steel ....................................2

It is uncontested that the five-factor *King* test for determining an entitlement to attorney's fees applies in this case. *Sec. of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

A.  Culpability.......................................................................................................2

AK Steel is culpable for this litigation due to its negligence, breach of fiduciary duty, and the underlying whipsaw violation. Bad faith is not required to show culpability. *Pelchant v. Unum Life Ins. Co.*, No. 02-CV-7282, 2003 WL 21479170, at *2 n.1 (N.D. Ohio June 25, 2006).

B.  Ability to pay fee award....................................................................................3

AK Steel does not contest its ability to pay an award.

C.  Deterrence .........................................................................................................3

Culpability and deterrence are closely related. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). AK Steel's negligence, breach of fiduciary duty, and the underlying whipsaw violation should be deterred.

D.  Common benefit or significant legal question ..................................................4

The standard is whether there was a common benefit to all members of the class, not all members of the Plan. *West v. AK Steel*, 657 F. Supp. 2d 914, 919 (S.D. Ohio 2009). This action has not only benefited all members of the Class, it has clarified significant legal questions on releases and prejudgment interest.

E.  Relative Merits of the Parties.............................................................................5

Under *King*, the standard is the relative merits of the parties, not whether the defendants' argument was in good faith. *Sec. of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). The relative merits of the Class's arguments were superior to AK Steel's argument on virtually every issue in this litigation.

II.   Neither Plaintiffs' requested fee from AK Steel of $1,318,488, nor their total requested fee (from AK Steel and the classwide common fund) of $1,326,000, is excessive............6

A.  The common-fund method is appropriate in this case because a common fund was created and Class counsel is not requesting the Court to calculate § 502(g) fees under the common-fund method ...................................................................................6

AK Steel's liability for attorneys' fees is different from the Class's responsibility. While the former is not responsible for the risk of contingency, the latter is. The Supreme Court and the Sixth Circuit have recognized that what constitutes a "reasonable attorneys' fee" for a defendant to pay under a fee-shift statute does not relieve the Class of its obligations. *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990); *Gisbrecht v. Barnhart*, 535 U.S. 789, 806 (2002); *Drennan v. General Motors Corp.*, 977 F.2d 246, 254 (6th Cir. 1992). This judgment created a common fund. *Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3rd Cir. 2000). In order to adequately compensate Class counsel for the contingent risk of this litigation, and avoid creating an inverted incentive system, the Court should order a portion of the common fund paid to Class counsel. *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992).

B.  The time expended by Class counsel in securing this judgment and partial reversal on appeal was reasonable and appropriate ............................................................. 14

AK Steel does not contest the hours expended by three attorneys and two paralegals. These hours should be compensated in full. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3rd Cir. 1989).

1.  Matthew Heffner ................................................................................. 14

Mr. Heffner's research helped to recover an additional $1.35 million for the Class and deserves to be compensated in full.

2.  Freking & Betz, LLC ............................................................................ 15

Local counsel acted efficiently and fulfilled its role ensuring compliance with local rules and procedures.

3.  Arthur Susman ..................................................................................... 15

Mr. Susman's vast experience advanced the case and the time he spent conferencing with Mr. Hurst was, in almost every instance, not billed by Mr. Hurst.

4.  Allen Engerman & Jeffrey Engerman ................................................... 16

The Engermans brought substantial institutional knowledge of the *West* case which was injected, by AK Steel, into almost every point in this litigation. Their time was spent efficiently and was relevant to the issues in this litigation.

5.  Plaintiffs' requested costs are recoverable .......................................... 17

Class counsel's costs are recoverable under 29 U.S.C. § 1920 or, in the alternative, as attorneys' fees. *Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1132-1133 (E.D. Mo. 1998); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 n.9 (1989).

C.  Class counsel's hourly rates are reasonable ........................................................................19

    1.  This Court should use Class counsel's home jurisdiction billing rates because Mr. Schumacher was reasonable in hiring counsel from outside this venue ...............19

The standard when retaining counsel from outside the jurisdiction is whether it was reasonable in the first instance. *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). Mr. Schumacher's decision to retain Class counsel was reasonable as he was turned away by the lead counsel in *West* and all of the evidence, at best, shows that there is only one firm practicing ERISA in Ohio that *might* have taken his case.

    2.  Class counsel's rates are reasonable for Ohio, too .................................................21

AK Steel has not challenged Class counsel's evidence that their rates are reasonable for Ohio. It instead relies on the 1983 Rubin Committee Report and the 2010 OSBA Survey. There are numerous problems with relying on either of these documents including the methodology employed and the fact that neither takes into account "skill and experience." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

D.  The Court should award a multiplier of 1.5 ....................................................................26

Class counsel has met five of the *Johnson* factors, meriting a 50% enhancement in their lodestar awarded from AK Steel. Both an enhancement and the *Johnson* factors are appropriate under Sixth Circuit law. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013); *Bell v. Prefix, Inc.*, No. 11–1508, 2013 WL 323005, at *2 (6th Cir. Jan. 29, 2013).

Conclusion ........................................................................................................................................28

# TABLE OF AUTHORITIES

**Cases:**                                                                                                          **Pages**

*Adcock-Ladd v. Sec'y of Treasury*,
    227 F.3d 343 (6th Cir. 2000) ..........................................................................23

*Albion Pacific Property Resources, LLC v. Seligman*,
    329 F. Supp. 2d 1163 (N.D. Cal. 2004) ......................................................22

*Bailey v. AK Steel Corp.*,
    No. 06-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ..............................22

*Bell v. Prefix, Inc.*,
    No. 11–1508, 2013 WL 323005 (6th Cir. Jan. 29, 2013) ...............................27

*Bell v. United Princeton Properties, Inc.*,
    884 F.2d 713 (3rd Cir. 1989) ......................................................................14

*Binta B. ex rel. S.A. v. Gordon*,
    710 F.3d 608 (6th Cir. 2013) ......................................................................27

*Brytus v. Spang & Co.*,
    203 F.3d 238 (3rd Cir. 2000) .............................................................9, 10, 13

*Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*,
    383 F.3d 110 (3rd Cir. 2004) ......................................................................25

*City of Burlington v. Dague*,
    505 U.S. 557 (1992)...................................................................................10

*Dalesandro v. Int'l Paper Co.*,
    No. 01-109 (S.D. Ohio Nov. 16, 2005)........................................................27

*Dobson v. Hartford Fin. Services Group, Inc.*,
    No. 99-2256, 2002 WL 31094894 (D. Conn. Aug. 2, 2002)............................23

*Doe v. Ohio*, No. 91-464,
    2010 WL 2854106 (S.D. Ohio July 19, 2010)...............................................24

*Drennan v. General Motors Corp.*,
    977 F.2d 246 (6th Cir. 1992) ........................................................................9

*Durand v. Hanover Ins. Group, Inc.*,
    560 F.3d 436 (6th Cir. 2009) ......................................................................25

iv

*Emmenegger v. Bull Moose Tube Co.*,
    33 F. Supp. 2d 1127 (E.D. Mo. 1998)......................................................................18

*Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*,
    692 F.3d 507 (6th Cir. 2012) .............................................................................5

*Foltice v. Guardsman Products, Inc.*,
    98 F.3d 933 (6th Cir. 1996) ...............................................................................3

*Gard v. Blankenburg*,
    33 Fed.Appx. 722 (6th Cir. 2002) ...................................................................2

*Geier v. Sundquist*,
    372 F.3d 784 (6th Cir. 2004) .............................................................................6

*Gisbrecht v. Barnhart*,
    535 U.S. 789 (2002)..................................................................................8, 10

*Hadix v. Johnson*,
    65 F.3d 532 (6th Cir. 1995) ...............................................................18, 19, 21

*Hunter v. Hamilton County Bd. of Elections*,
    No. 10-820, 2013 WL 5467751, (S.D. Ohio Sept. 30, 2013) ....................................18, 27

*In re Abrams & Abrams, P.A.*,
    605 F.3d 238 (4th Cir. 2010) ...................................................................1, 7, 8

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ......................................................................1, 8

*In re NASDAQ Market-Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................11

*Lee v. Javitch, Block & Rathbone, LLP*
    568 F. Supp. 2d 870 (S.D. Ohio 2008) .............................................................24

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274, (1989)....................................................................................18

*Mogck v. Unum Life Ins. Co. of Am.*,
    289 F.Supp.2d 1181 (S.D. Cal. 2003)................................................................24

*National Rifle Ass'n v. Village of Oak Park*,
    871 F. Supp. 2d 781 (N.D. Ill. 2012) .................................................................22

*Pelchant v. Unum Life Ins. Co.,*
    No. 02-CV-7282, 2003 WL 21479170 (N.D. Ohio June 25, 2006) ...............................2, 4

*Perdue v. Kenny A. ex rel. Winn,*
    559 U.S. 542 (2010)..................................................................................................27

*Rosenstiel v. Astrue,*
    No. 08-231, 2009 WL 3061996 E.D. Ky. Sept. 22, 2009...................................9

*Ruppert v. Alliant Energy Cash Balance Pension Fund,*
    No. 08-127 (W.D. Wis. Feb. 4, 2013)...............................................................6

*Sales v. Marshall,*
    873 F.2d 115 (6th Cir.1989) ............................................................................17

*Sec. of Dept. of Labor v. King,*
    775 F.2d 666 (6th Cir. 1985) .......................................................................2, 5

*Sogg v. Goodman,*
    No. 04-CVG-08-8028, (Ct. of Common Pleas, Franklin Co., Ohio, Sept. 5, 2012)....21, 23

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .......................................................................8, 9

*Street v. J.C. Bradford & Co.,*
    886 F.2d 1472 (6th Cir. 1989) .........................................................................3

*Tessier v. Plastic Surgery Specialists, Inc.,*
    31 F. Supp. 724 (E.D. Va. 1990) ...................................................................12

*Torgeson v. Unum Life Ins. Co. of America,*
    No. 05-3052, 2007 WL 433540 (N.D. Iowa Feb. 5, 2007)...............................23

*Tussey v. ABB, Inc.,*
    No. 06–04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012).........................23

*Venegas v. Mitchell,*
    495 U.S. 82 (1990)..........................................................................1, 7, 8, 10

*Wachtel v. Health Net, Inc.,*
    482 F.3d 225 (3rd Cir. 2007) .........................................................................24

*Wells v. Sullivan,*
    907 F.2d 367 (2d Cir.1990)..............................................................................7

*West v. AK Steel*,
  657 F. Supp. 2d 914 (S.D. Ohio 2009) ................................................................. *passim*

*Young v. Verizon's Bell Atlantic Cash Balance Plan*,
  748 F.Supp.2d 903 (N.D. Ill. 2010) ........................................................................2

**<u>Statutes, Rules, and Regulations</u>:**

29 U.S.C. § 1132(g)(1) .................................................................................................9
29 U.S.C. § 1920 .......................................................................................................17
29 U.S.C. § 1920(2) ...................................................................................................17
29 U.S.C. § 1920(4) ...................................................................................................18
29 U.S.C. § 1920(6) ...................................................................................................18

76 C.J.S. Releases § 22 ...............................................................................................3

ERISA § 502(g) ..................................................................................................4, 9, 12

## Summary of the Argument

Twenty years ago, the Supreme Court made clear that a fee-shifting statute "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990). The fee that a defendant, like AK Steel, is required to pay under a fee-shifting statute is not equivalent to what successful, contingent-fee class-action lawyers can receive. As has often been recognized, fee-shifting statutes do not require defendants to pay a premium for plaintiff's counsel taking a case on contingency, *id*. at 87, but the contingent nature of representation should, nevertheless be accounted for. *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (a court's "failure to make any provision for risk of loss may result in systematic undercompensation of plaintiffs' counsel in a class action case."). This is accomplished here by having the Class pay the difference between what would be awarded under a common-fund analysis and what is awarded against AK Steel under a fee-shifting statute.

At the outset, it is also worth noting that society benefits from contingent-fee arrangements. Without them, many individuals could not afford access to the courts. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010). In fact, that is what happened here. No Class member could, or would, have spent the hundreds of thousands of dollars necessary to litigate this case to completion. Class counsel took a risk—after the lead counsel in *West* rejected this case as too risky—of never being paid for the thousands of hours of time they devoted to the Class's cause. And had the Class lost, despite having received the benefit of being represented by competent and experienced Class counsel for four years, it would have owed nothing. Now that Class counsel have achieved a full victory for them, it is only fair that the Class be required to pay for the contingent risk Class counsel took.

1

I.    **The majority of the factors favor an award of fees from AK Steel.**

The parties agree that the five-factor *King* test for determining an entitlement to

attorney's fees applies here. *See Sec. of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.

1985). But AK Steel contends those factors weigh heavily in favor of *no* fee shift. It is wrong.

A.    **Culpability**

AK Steel argues that it is not culpable under the first *King* factor because (1) that

standard requires a "high degree" of culpability and (2) AK Steel meant to include the *West*

litigation in their release but "inartful[ly] draft[ed]" the release too vaguely. (Def. Resp. at 5.)

These arguments are strawmen, based on a false standard and immaterial facts.

First, no case AK Steel has cited supports their contention that "the first *King* factor

requires a high level of culpability or bad faith." (Defs.' Resp. at 3.) Instead, the cases AK Steel

relies on stand for the unremarkable proposition that liability does not equal culpability. *Gard v.

Blankenburg*, 33 Fed.Appx. 722, 732 (6th Cir. 2002) ("the necessary degree of culpability is not

established by the fact that a defendant has been found liable"). To satisfy the first *King* factor,

Plaintiffs need only show AK Steel is culpable, and they have done that here. (Plfs.' Mtn. at 14-

18); *Pelchant v. Unum Life Ins. Co.,* No. 02-CV-7282, 2003 WL 21479170, at *2 n.1 (N.D. Ohio

June 25, 2006) ("blameworthiness," not bad faith, is sufficient).

Second, AK Steel's admission that it intended to include the *West* litigation in the release,

but "inartful[ly]" excluded it, creates more problems than it solves. At first blush, of course,

negligence is enough; parties should be held responsible—read culpable—for their own

mistakes. *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 748 F.Supp.2d 903, 913 (N.D. Ill.

2010) (finding culpability and awarding fees based on a "drafting mistake"). Beyond that, by

tacitly admitting it intended to include the *West* litigation in the release (Defs.' Resp. at 5), AK

2

Steel is admitting that it breached its fiduciary duties by not informing Plaintiffs that they were
being asked to give up these rights.[1] Remember, AK Steel had their own in-house attorney
overseeing the solicitation of the releases who was almost certainly aware of the ongoing *West*
litigation.  (Dkt. 184-7). But that attorney and AK Steel did not, in soliciting the agreements
orally or in writing, put the participants on an "equal footing" regarding the existence of the *West*
litigation.  76 C.J.S. Release § 22 (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.
1989). If they had, this entire litigation would have been unnecessary. In that respect, then, once
again, AK Steel is culpable.

Finally, the Court should not ignore that the underlying claim here, upon which the
damages were based, involves the same whipsaw violation at issue in *West*. And in that case, the
Court found AK Steel culpable for the whipsaw violation, despite the same type of argument that
the violation was unintentional. *West v. AK Steel*, 657 F. Supp. 2d 914, 919 (S.D. Ohio 2009).
AK Steel has provided no reason why this Court should alter its previous decision in *West*
regarding its culpability for this litigation.

### B.      Ability to pay fee award

AK Steel concedes it can pay the fee award sought.

### C.      Deterrence

Culpability and deterrence are closely tied together. *Foltice v. Guardsman Products, Inc.*,
98 F.3d 933, 937 (6th Cir. 1996). AK Steel argues deterrence is unnecessary in this case because

---

[1] There can be no dispute that the solicitation was in a fiduciary capacity. In answering the
interrogatories, AK Steel defined its use of "Defendants" therein to be "AK Steel Corporation
Retirement Accumulation Pension Plan and AK Steel Corporation Benefit Plans Administrative
Committee," both of whom have a clear fiduciary duty to plan participants under ERISA. (Dkt.
44-1 at 1.) It proceeded to answer that these fiduciaries participated in the drafting and
solicitation of the releases. (*Id*. at 4 & 6-7.)

employers are already deterred from making drafting mistakes and because the *West* case already was supposed to deter such conduct and any additional fee award would be "needlessly punitive." [2] (Def. Resp. at 5-6.) But this entire litigation was spawned by AK Steel's less than candid disclosures to the members of the Class when soliciting the releases. Deterring fiduciaries from withholding information they know is necessary for participants to make informed decisions is not only worthwhile, it is good public policy.

But even assuming that this case was only about AK Steel's negligent drafting, deterring negligence is a perfectly acceptable public policy—indeed entire areas of the law have been crafted to deter precisely that. Without such deterrence, parties will only take into account their own costs in making decisions and not the costs imposed by their conduct on other parties (such as Plaintiffs here) or the public at large. And in a more general sense, crying mistake cannot be a defense to the award of attorney's fees under § 502(g), for if it were, how could a plaintiff *ever* prove deterrence was necessary? AK Steel implies the only way would be if a plaintiff could show bad faith—but that's not what the standard requires. *Pelchant*, 2003 WL 21479170, at *2 ("blameworthiness" is only required).

### D.    Common benefit or significant legal question

AK Steel contends that Plaintiffs cannot meet this prong unless every single member of the *Plan* benefits from the lawsuit. (Defs.' Resp. at 6 (arguing Plaintiffs' did not "vindicate the rights of *all* participants").)  That is absurd; the standard is whether the case has benefitted everyone in the *class*, which this case surely did.  *See, e.g., West*, 657 F. Supp. 2d at 919 (in

---

[2] The full award is not punitive. Even if this Court awarded every last dollar in attorneys' fees requested from AK Steel, AK Steel would *still* have made money by not paying Plaintiffs' benefits ten years ago due to the gap between this Court's award of prejudgment interest and the actual rate of return on Plan assets during the period Plaintiffs were denied their benefits. (Dkt. 160 at 2.)

4

finding attorney's fees justified, finding that "there is no doubt that Plaintiffs have conferred a benefit shared by all class members who previously received a lump-sum distribution from the Plan.").

Even if it was assumed that there was no common benefit, this case resolved significant legal questions. It clarified numerous Sixth Circuit precedents on releases *and* the law regarding prejudgment awards under ERISA. (Plfs.' Br. at 17-18.) Such resolutions also sufficiently satisfy this *King* factor.

### E.    Relative Merits of the Parties

Finally, AK Steel argues that because it "defended this litigation in good faith and believed in the validity of their arguments," it should not be held liable for § 502(g) attorney's fees. But again, it has misstated the standard.  The standard under *King* is the *relative* merits of the parties' positions. *King*, 775 F.2d at 669.

The record in this case shows that at every turn, the relative merits of Class counsel's arguments trumped AK Steel's position. AK Steel won *one* motion, which was Plaintiffs' request to increase the bond amount after the Sixth Circuit's decision. By comparison, Class counsel won: the motion to dismiss, the motion for class certification, three discovery motions, the motion to require a bond, AK Steel's appeal, and Plaintiffs' cross-appeal. And the relative merits of the appeal favor Plaintiffs. AK Steel raised *seven* issues on appeal. The Sixth Circuit has observed that "[w]hen a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012). In light of the Sixth Circuit's complete affirmance of all of the issues raised by AK Steel, this statement applies equally to a party raising seven grounds.

If this Court finds that an award of attorneys' fees under ERISA § 502(g) is inappropriate, it should award the requested fee from the common fund. Even though this was created pursuant to a judgment, it is still a common fund as defined by the Sixth Circuit. *Geier v. Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004). Other courts, in ERISA cases, have awarded a percentage from the judgment. *Ruppert v. Alliant Energy Cash Balance Pension Fund*, No. 08-127 (W.D. Wis. Feb. 4, 2013) (declining to award ERISA § 502(g) fees but awarding 30% from amount recovered by judgment).

II.     **Neither Plaintiffs' requested fee from AK Steel of $1,318,488, nor their total requested fee (from AK Steel and the classwide common fund) of $1,326,000, is excessive.**

AK Steel argues that Class counsel's fee request is unreasonable because "(A) it uses the wrong method, the common fund method to calculate the fee amount; (B) [Class] counsel has submitted excessive and unreasonable time entries; (C) [Class] counsel seek rates far above Ohio's prevailing hourly rates; and (D) Plaintiffs want a lodestar multiplier where such an enhancement is inappropriate and unjustified." (Defs.' Resp. at 7.) Class counsel will address each objection in turn.

       **A. The common-fund method is appropriate in this case because a common fund was created and Class counsel is not requesting the Court to calculate § 502(g) fees under the common-fund method.**

AK Steel's primary objection to Class counsel's common-fund fee request is based on a misunderstanding. It mistakenly believes that Class counsel are requesting the Court "calculate[e] statutory ERISA fees using a 'common fund' method of a percentage of the total recovery . . ." and that that amount should be "paid for by Defendants." (Defs.' Resp. at 7-8.) AK Steel is wrong.

Class counsel's initial motion asked for the Court to determine the *total* reasonable fee to which they are entitled by using the common-fund method. That total includes two parts: (1) what *the defendants* should pay under the statutory fee shift (which cannot include a consideration for whether a case was taken on contingency) and (2) what *the Class* should pay to compensate Class counsel for taking this case on contingency. The first part—what the defendants should pay—is covered in Class counsel's opening brief at pages 14-24 and is completely consistent with controlling case law regarding how to calculate fees under § 502(g).

The second part, though—what a common fund would produce less the amount determined by this Court to be assessed against AK Steel under a fee shift—needs to be accounted for and paid by the Class. This has been permitted by the Supreme Court. "What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990). Without a contingent-fee agreement, it is doubtful Mr. Schumacher or anyone in the class could have secured competent representation. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010) ("contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation"). The Court should strongly consider the benefits of the contingent arrangement to the Class. *See Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir.1990) ("Many claimants . . . cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation. Ignoring reasonable contingent fee agreements or automatically reducing them would impair claimants' ability to secure representation").

7

Lawyers who take cases on contingency are taking enormous financial risks and these risks need to be compensated. *See In re Abrams*, 605 F.3d at 246. That is why the Ohio Rules of Professional Responsibility state that the contingent nature of a fee must be taken into account when setting a reasonable fee.  If the Court does not ensure Class counsel are reimbursed for their taking this case on a contingency, it is essentially underpaying them, based both on the market and what their client actually contracted for. *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ("the failure to make any provision for risk of loss may result in systematic undercompensation of plaintiffs' counsel in a class action case").

Even if there is a fee-shift, nothing prevents the attorney for the prevailing party from gaining additional fees from their own client. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 806 (2002) ("we again emphasize, the lodestar method was designed to govern imposition of fees on the losing party. In such cases, nothing prevents the attorney for the prevailing party from gaining additional fees, pursuant to contract, from his own client." (internal citations omitted)); *Venegas*, 495 U.S. at 89–90 ("depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's general purpose of enabling such plaintiffs ... to secure competent counsel."). In applying *Venegas*, the Ninth Circuit has held that:

> unless Congress has forbidden the application of the common fund doctrine in cases in which attorneys could potentially recover fees under the type of fee-shifting statutes at issue here, the courts retain their equitable power to award common fund attorneys' fees . . . The fees available under a fee-shifting statute are part of the plaintiff's recovery and are not dependent upon any explicit fee arrangements between the plaintiffs and their counsel. For that reason, contingent fee agreements between counsel and client are valid in cases where statutory fees are available. Common fund fees are essentially an equitable substitute for private fee agreements where a class benefits from an attorney's work, so the same general principles outlined in *Venegas* should apply.

8

*Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). The Sixth Circuit agrees with the
Supreme Court and Ninth Circuit and has applied this logic to ERISA cases. *Drennan v. General
Motors Corp.*, 977 F.2d 246, 254 (6th Cir. 1992) ("a statutory award of fees, alone, does not
invalidate a contract for attorney's fees").

It is important that both ERISA and the case law note that the attorneys' fee is awarded to
the party, not the attorney. 29 U.S.C. § 1132(g)(1); *Drennan*, 977 F.2d at 254 ("ERISA's fee-
shifting section, like section 1988, provides that the party, not the attorney, is eligible for and
receives the statutory award."); *see also Rosenstiel v. Astrue*, No. 08-231, 2009 WL 3061996
E.D. Ky. Sept. 22, 2009 (noting parallel between EAJA and ERISA fee awards but, over
objections of attorney, awarding attorney's fees directly to plaintiff). This is not an idle
distinction. Any award of ERISA § 502(g) fees in a class action, being awarded to the party, is
added to the common fund recovery. Since this has been awarded to the party, nothing prohibits
the court from awarding an enhancement from the fund to make up for the contingent nature of
the case when directing a distribution to counsel.[3]

Requiring the Class to pay for the contingent nature of their representation is also good
public policy. The alternative would create inverse incentives—awarding *more*, through the
percentage of recovery, to attorneys who settle and achieve *less* success while awarding *less*,
through the lodestar method, to attorneys who persevere and vindicate *all* of their clients' rights.
Worse, it creates a financial incentive for plaintiffs' attorneys to put their own interests ahead of
the interests of the class. *See Brytus v. Spang & Co.*, 203 F.3d 238, 246 & 249 (3rd Cir. 2000)

---

[3] Thought of another way, if an attorney retained an expert that did not fall within the definition
of "costs," but was otherwise reasonable to retain, it is more than reasonable to make the expense
taxable to the class if it cannot be assessed against the defendant. There is no practical distinction
between attorneys advancing their money to the class to obtain a favorable judgment and
attorneys advancing their time (through a contingent arrangement) to the class. Both should be
compensable from the common fund.

("This creates a compelling incentive for the plaintiffs' counsel to settle, thus adding to the already significant conflict of interest between plaintiff class members and their counsel.") But in both cases—one where a case settles and one where a case is tried to judgment and the plaintiffs win—a common fund is created. *See id.*, at 243 ("because a common fund was created from which all plaintiff members of the class will benefit, the court may be able to use the common fund doctrine in awarding attorney's fees from that fund").[4] There is no reason why a settling lawyer should be entitled to a common-fund calculation while the lawyers who tried and won a case are entitled only to a lodestar calculation that does not compensate them for the contingent-fee arrangement.

In response to these arguments, AK Steel simply replies that the Court can police settlements and ensure there are no conflicts of interest or at least ensure that Class counsel will not act on them. (Defs.' Resp. at 9.) There are three problems with a court "policing" this inverted incentive structure.

First, policing is only necessary because the inverted incentive system rewards more handsomely those who, by settling, have achieved less success than their counterparts who accomplished a complete vindication of the class's rights. By turning the incentives on their head, the Third Circuit is creating a need for policing. In contrast, if attorneys who take a case to judgment are treated equally, or better, than their counterparts who settle a case, there would be

---

[4] It is true that the district court in *Brytus* did not award common-fund fees and the Third Circuit upheld that exercise of discretion, *id.*, at 244, but both sources started from a flawed premise. That is, both courts thought that the Supreme Court's decision in *Dague* prohibited accounting for the contingent nature of the case against the class. *Brytus*, 203 F.3d at 243, citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). But *Dague* only prohibits a losing *defendant* from paying more for a winning plaintiff's contingent arrangement under a fee-shifting statute. *Dague* says nothing about what a winning *plaintiff* has to pay his attorney. And post-*Dague*, the Supreme Court has reiterated that a plaintiff may be required to pay more under a contingent-fee arrangement than he recovered from the defendant under a fee-shifting statute. *Gisbrecht*, 535 U.S. at 806; *Venegas*, 495 U.S. at 90.

nothing to police. The advantages of this system are obvious; the system becomes self-policing because attorneys are incentivized to achieve the best results for their clients. The majority's decision in *Brytus* is the judicial equivalent of drilling a hole in the bottom of the boat and telling everyone not to worry because the court will keep bailing. The better policy is not to drill the hole in the first place.

Second, to police the problem caused by this inverted incentive system, a court must be aware of the issue when approving a class-action ERISA settlement. While this Court is now certainly aware of the problem, other judges are likely unaware of it. And who would tell them? At a settlement approval, a defendant would not do so because they are not only receiving a discount on damages, but also saving on a possible attorneys' fee award. A plaintiff's counsel would not do so either because they would reap a larger fee through settlement. The only other possible way for a court to find out about this problem is through an objection from a class member, which is highly unlikely as it would require the class member to be aware of the inverted incentive system. As such, it is unlikely that a court would know that it needed to police a settlement for this specific issue.

Third, there is the practical question of *how* a court would actually be able to police whether a settlement was entered into simply to increase attorneys' fees. A court's only method of policing would be to determine if the attorney had entered into the settlement in good faith. Good faith is difficult to determine. Attorneys can have wide-ranging good faith opinions on the risks of a given case and a court is required to give "great weight" to the recommendation of counsel. *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998). Attempting to get inside the head of attorneys making such recommendations is an impossible task.

For example, assume that after the Sixth Circuit's decision here, but before remand or the time to appeal to the Supreme Court had expired, AK Steel offered $4 million to settle this case.[5] Class counsel would have rejected such an offer as inadequate, especially in light of the fact that a 30% award of attorneys' fees would have reduced the Class's recovery to $2.8 million. But that is Class counsel's good faith opinion. A different counsel, still acting in good faith, could have accepted such an offer by evaluating the risks differently. That counsel could have viewed the risk of being accepted by the Supreme Court much higher than Class counsel since paid civil petitions to the Supreme Court have approximately a 5% of being accepted. (Dkt. 165-1.) It could have also recognized that the chances for being accepted are greatly increased in ERISA cases and, as in this case, where there is a perceived circuit split. (Defs.' Mot. for Reconsideration or Rehearing at 8-11.) In addition, since prejudgment interest on remand had yet to be determined, that counsel might have believed that this Court would use a rate of 3%,[6] which would have resulted in a judgment of $3.8 million, $200,000 less than the proposed settlement. Although that the hypothetical counsel's opinion differ from Class counsel, it is not wrong.

Of course, there does not have to be explicit collusion to see the damage such a rule inflicts.  People—no matter how idealistic or ethical—are influenced by financial incentives, and they impact many decisions in a case. It is impossible to quantify them all and many, no doubt, are not even conscious.  Courts should not create incentive systems that encourage conflicts with their clients. *See Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va.

---

[5] This would be an excellent deal for AK Steel. It would not only save approximately $450,000 from the actual judgment, it would also save hundreds of thousands of dollars in ERISA § 502(g) attorneys' fees.

[6] 3% would have been above the rate of inflation and in keeping with the Sixth Circuit's opinion.

1990) ("To allow a conflict to remain unaddressed until an affected party complains about the quality of justice he or she has received is to betray the public trust granted to the bar as a self-regulating organization.")

In fact, even now, those financial incentives are playing out in this briefing. AK Steel would save a lot of money if Class counsel were just awarded a fee from the common-fund and nothing from a statutory fee shift.  So it has argued that Class counsel must elect whether to receive payment from the common fund or AK Steel. (Defs.' Resp. at 8-9 (common fund recovery "might be appropriate" but "if this Court orders Defendants to pay statutory fees under ERISA § 502(g)(1), the lodestar method is the only appropriate method for calculating those fees.").) It has argued that these are mutually exclusive in hopes that Class counsel will abandon its request for a fee shift in favor of a percentage recovery. While there is nothing unethical about AK Steel's argument, it further illustrates the problem with drawing an artificial line between settlement and judgment.

Finally, as repeatedly stated by the Third Circuit, the holding in *Brytus* was not a categorical rejection of awarding common fund fees in addition to the fee-shift. *Brytus*, 203 F.3d at 244 & 247 n.3. In fact, the majority left the door open to awarding both:

> This is not to say that the common fund doctrine may never be applied in a case for which there is a statutory fee provision and which goes to judgment. One such instance could be when the defendant responsible for the statutory fee has become bankrupt or otherwise has insufficient funds. Another is when there has been a showing that competent counsel could not have been obtained for that case or that line of cases. No such showing has been attempted here. We see no reason to list all the other possible situations.

*Id*. at 247. Unlike *Brytus*, Class counsel has shown that Schumacher could not have reasonably obtained competent counsel in light of the risks of this case. Further, since the list is not exhaustive, the Court should consider the risk of the fee shift against Class counsel if they had

13

lost. AK Steel is remarkably silent about its request to this Court for its attorneys' fees to be paid if Plaintiffs lost.

### B. The time expended by Class counsel in securing this judgment and partial reversal on appeal was reasonable and appropriate.

AK Steel does not take issue with the time submitted by attorneys Matthew Hurst, Glenn Hara, or Gina Lamancusa. (Defs.' Resp. at 15.) It also does not contest the hours submitted by paralegals Sandra Pavlat or Thomas Murtagh. (*Id*.) Since these hours are uncontested by AK Steel, the Court should award them in their entirety. *See Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3rd Cir. 1989) (a court may not *sua sponte* reduce a request for attorneys' fees). Regarding the challenged time keepers and AK Steel's arguments, Class counsel will address each in turn.

### 1. Matthew Heffner

AK Steel argues that Mr. Heffner's time spent researching (45.5 hours) should be cut in half because "an associate or paralegal *may* have been able to do some or all" of it. (Defs.' Resp. at 15 (emphasis added).) The Court should disregard this idle—and unsupported—speculation. For the record, Mr. Heffner is a highly experienced researcher, writer, and litigator and can outline and answer legal issues more efficiently than any associate. Thus, even at his higher billing rate, the total lodestar spent is likely less than that of an associate. And even AK Steel admits the "necessity for legal research throughout litigation." (Defs.' Resp. at 15.)

Also, it is worth noting that the overwhelming amount of Mr. Heffner's research (and writing) time was spent on the prejudgment interest issue. (Dkt. 184-2.) That research contributed to overcoming an extremely high standard of review on appeal and finding support for novel propositions that directly led to increasing the prejudgment interest award from

14

$30,000 to $1.41 million. Class counsel submit that spending an additional $12,500 (according to Defendants, see Defs.' Resp. at 15) in research costs to achieve over $1.35 million in recovery is a very efficient, very reasonable investment of time. The nominal 45.5 hours he spent researching to help achieve this result deserves to be compensated in full.

### 2. Freking & Betz, LLC

AK Steel also objects to all of the $11,915.50 in time submitted by local counsel Freking & Betz because they did not perform much of the substantive litigation in this case. But that is not what local counsel is for. Instead, local counsel generally provide guidance on local practice and procedure, ensure that briefs are in compliance with local rules and local judicial preferences, and assist in the mechanical procedures of filing documents with the Court. Freking & Betz performed all of these tasks (and more), and did so extremely efficiently (Ex. A, Hurst Aff. at ¶ 11.) Having spent, on average, less than seven hours a year of attorney time on this case, local counsel's billing is extremely reasonable.

### 3. Arthur Susman

AK Steel objects to Mr. Susman's time because it was spent primarily conferencing. (Defs.' Resp. at 14.) But that should come to no surprise to anyone familiar with litigation that Class counsel consulted with Mr. Susman regularly regarding general strategy, ERISA law, and persuasive techniques. Mr. Susman has recovered hundreds of millions of dollars in class action and ERISA cases over 55 years of practice. In fact, he has more experience than the three Frost Brown Todd lawyers in this case *combined*.

15

Nor was this time excessive. Almost all of Mr. Susman's conferencing time was with Mr. Hurst, who did not bill for (in almost every instance) that time.[7] So AK Steel's argument that this "conferencing was billed by Matthew Hurst as well" and "this conferencing time was adequately captured in Matthew Hurst's submitted time entries" (Defs.' Resp. at 14)—that is, AK Steel's only argument for why Mr. Susman's conferencing time was excessive—is demonstrably false.

### 4. Allen Engerman & Jeffrey Engerman

Both Engermans brought strong institutional knowledge of the *West* case to this matter, which proved to be of significant benefit to the Class and provided greater efficiency than otherwise would have been the situation.  They were a constant source of knowledge of the *West* case.  This cannot be trivialized: at almost every turn in the litigation, almost every part of the *West* litigation was placed at issue, often by AK Steel.

AK Steel made the exact argument against Allen Engerman in *West* that it makes here. *West*, 657 F. Supp. 2d at 922. This Court rejected that argument and should do so here. *Id.* As it recognized in West, "Allen Engerman, who has unquestionable extensive experience in ERISA litigation in general, and cash balance 'whipsaw' cases in particular, was involved in the case from the very beginning." *Id.* at 924. As for its argument that Allen Engerman's expertise was unnecessary because this case had "no difficult or novel ERISA problems" (Defs.' Resp. at 11), that is nonsense. AK Steel has already conceded to the Sixth Circuit, in its petition for rehearing, the case for the Class was difficult ("flies in the face of numerous prior decisions of the Court.")

---

[7] Mr. Hurst only billed for conferences involving Mr. Susman on 9/10/09, 7/12/10, 8/5/10, 9/20/10, 2/23/11 and 1/6/12. Mr. Hurst did not bill for the other 65 conferences with Mr. Susman in which he utilized Mr. Susman's wealth of experience. This is certainly not "excessive" conferencing.

as well as novel ("[a]ll of this Circuit's law stands to the contrary").  (Defs.' Pet. for Reconsideration or Rehearing *En Banc* at 3 & 4.)[8]

In addition, AK Steel attacks Jeffrey Engerman's time arguing that this Court has already recognized the "superfluous nature of [his] services" and quotes the *West* fee decision. (Defs.' Resp. at 12.) Cutting off a quote from this Court in mid-sentence, AK Steel fails to note that this Court reduced Jeffrey Engerman's time in *West* because he became active in the case *after* the entry of judgment. *West*, 657 F. Supp. 2d at 924. In contrast to *West*, Jeffrey Engerman has been involved in this case since its inception. He has been involved in all aspects of this case, from the initial complaint to the appellate briefing. In addition to his institutional knowledge, Jeffrey Engerman's editorial skills, as a former law journal editor, helped make briefs to this Court and the Sixth Circuit clear and concise. (Dkt. 44-9.)

## 5.  Plaintiffs' requested costs are recoverable.

Delving into the minutia, AK Steel objects to almost every conceivable expense incurred in this litigation. The following expenses, objected to by AK Steel, are taxable as costs under the explicit terms of 29 U.S.C. § 1920:

> **Deposition Transcripts** ($263.80) – Depositions used for summary judgment are recoverable as costs under § 1920(2). "Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party. Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling." *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.1989). The transcripts were used in the class certification motion (Dkt. 81 at 10 n.6) and the summary judgment motion (Dkt. 62-1). They are recoverable as costs.

---

[8] The breach of fiduciary duty and anti-alienation arguments were entirely ERISA based. Simply because Class counsel made an extremely effective argument on the scope of the release, allowing the courts to find in Plaintiffs' favor without reaching these issues, does not mean that they were not at play in this case. The voluminous briefing in both the district and appellate courts on the fiduciary duty and anti-alienation issues proves that fact.

**The Filing Fee** ($450)[9] – This was the Sixth Circuit filing fee which, pursuant to the mandate, has already been awarded to Class counsel. AK Steel now has to pay this fee.

**Copies/Form 5500s** ($488.85) – Class counsel obtained from the Department of Labor several years' worth of Form 5500s. This was to calculate the Plan's return for the motion for prejudgment interest. (Dkt. 91 at 4; Dkt. 161 at 2; Dkt. 161-5.) This is compensable under § 1920(4) as coping expenses "necessarily obtained for use in the case." Similarly, the cost of copies were necessary for this case.

**Online Research** (SHH: $16,673.85; JE: $43.38) – AK Steel elected not to respond to Class counsel's citation to the recent decision of the Chief Judge of the Southern District, awarding Westlaw research as "costs." *Hunter v. Hamilton County Bd. of Elections*, No. 10-820, 2013 WL 5467751, at *23 (S.D. Ohio Sept. 30, 2013). Class counsel will stand on that decision.

**Oral Argument Recording** ($30) – Class counsel ordered the recording of the arguments at the Sixth Circuit in response to AK Steel filing its motion for reconsider or rehearing. This was to confirm that AK Steel had not made certain arguments before the Sixth Circuit, thereby waiving them.

**Private Investigator** ($1,080) – This Court previously approved the both the use and expenses associated with a private investigator to locate missing Class members. (Dkt. 98.) This is a taxable cost as a "court appointed expert" under § 1920(6).

With regard to the remaining expenses, this Court recently noted that "some 'costs' which were clearly not taxable under 28 U.S.C. §1920 [are] properly considered as legitimate expenses included in a reasonable attorney's fee." (Dkt. 188 at 2, citing *Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1132-1133 (E.D. Mo. 1998).) The standard set out by the Supreme Court is that expenses can be recovered under a fee-shifting statute as attorney's fees if they would be billed to clients as "the prevailing practice in the local community." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 n.9 (1989). Here, there is little doubt that experts, travel expenses, copies, and all other expenses would be billed to a client by, for example, a firm like

---

[9] Erroneously listed as $455 in the initial brief.

Frost Brown Todd. That is not only the prevailing practice in the local community, it is the practice nationally as well.[10]

Lastly, AK Steel mistakenly asserts that Class counsel has requested they compensate Mr. Schumacher directly for his time on this case. (Defs.' Resp. at 17-18.) That is not what Class counsel requested. Instead, they requested that Mr. Schumacher's compensation "should be taxed on a pro rata basis across the Class recovery." (Dkt. 184 at 33.) The Class should compensate Mr. Schumacher because he assisted the litigation and because, without him, the Class would have nothing.

### C.  Class counsel's hourly rates are reasonable.

AK Steel objects to Class counsel's billing rates because it argues that (1) the Court must use Ohio billing rates and (2) the rates requested are not reasonable for Ohio ERISA class action practitioners.  AK Steel is wrong on both counts.

### 1.  This Court should use Class counsel's home jurisdiction billing rates because Mr. Schumacher was reasonable in hiring counsel from outside this venue.

This Court should look to national rates for ERISA class action practice, not just local Ohio rates, in reviewing the appropriate billing rates. The Sixth Circuit has held that counsel may recover attorney's fees at their home jurisdiction's billing rates as long as it was "reasonable" for the plaintiff to hire counsel from outside the jurisdiction. *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). Class counsel's initial brief proved just that: it was reasonable for Mr. Schumacher to hire Class counsel from outside the Southern District of Ohio because he could not find competent counsel willing to represent him otherwise. (Plfs.' Br. at 31-32.) AK Steel's only response to this is to point out that one can search the internet and find "a multitude of Ohio

---

[10] If the Court finds that Class counsel's requested expense reimbursements should not be taxed against AK Steel, then these expenses should be taxed against the common fund.

attorneys—representing plaintiffs and defendants—specializing in ERISA litigation," while attaching an exhibit supposedly proving this. (Defs.' Resp. at 19-20; Dkt. 191-2.)

But out of the twenty law firms on AK Steel's list, only *one* has even handled a plaintiff's-side ERISA case. Twelve firms, despite being included on this list, do not practice in ERISA or employee benefits. (Ex. A, Hurst Aff. at ¶¶ 3-5.) Another five firms actually do practice in ERISA, but all are on the defense side representing businesses.[11] (*Id.*, at ¶¶ 6 & 10.) One of the remaining three firms is actually the local counsel in this case, who brought Class counsel into this matter to litigate it due to their expertise and experience. (*Id.*, at ¶ 7.) The second practices only in ERISA long-term disability cases, not pension cases. (*Id.*, at ¶ 8.) And the final firm primarily handles defense-side ERISA work, taking the lead on only one plaintiff's-side ERISA case in the past 10 years.[12] (*Id.*, at ¶ 9.) Thus, at best, there is one firm in Ohio that *might* have *considered* taking this case.

But the standard is not whether there is a *possibility* that there is one firm that might have taken the case; the question is whether it was *reasonable* to hire Class counsel. *Hadix*, 65 F.3d at 535. It is important to remember that Mr. Schumacher tried to hire an Ohio attorney—the lead counsel in *West* and the only plaintiff's-side ERISA Ohio attorney listed with the National Association of Pension Lawyers ("NAPL")—but they rejected the case because it was too risky. AK Steel's response to this very important fact is that Mr. Theado never explicitly stated the precise words "the case is undesirable or has low odds of success." (Defs.' Resp. at 19 n.7.) This

---

[11] In what one can only guess is an attempt at humor, AK Steel's counsel seems to suggest that Mr. Schumacher could have retained them as counsel in this matter. (Defs.' Resp. at 20, n.8.) Obviously, Frost Brown Todd could not have represented Mr. Schumacher because it was AK Steel's counsel in *West*.

[12] The firm, James E. Arnold & Associates, was the 17th firm on the list provided by AK Steel. (Dkt. 191-2.) Most reasonable people, not having found a firm willing to take the case among the prior 16 firms, would have likely given up before reaching that firm.

is silly. In outlining the numerous and significant problems with Mr. Schumacher's case, it is obvious to any reader that Mr. Theado believed that the case had low odds of success. A case with low odds of success is "undesirable" to any contingent fee attorney.

It is also very relevant that AK Steel, too, sought help from counsel outside this jurisdiction at higher rates than those requested by Class counsel. AK Steel argues the Court should ignore this fact because Covington & Burling purportedly exited (but never filed a notice of withdrawal) after the motion to dismiss was denied. (Defs.' Resp. at 19 n.6.) But that is irrelevant. If AK Steel felt the need to hire out-of-town specialists "in the first instance," *Hadix*, 65 F.3d at 535, it was similarly reasonable for Mr. Schumacher to hire Class counsel.

Finally, it should be noted that if the Court finds Mr. Schumacher was reasonable in hiring Class counsel, their home jurisdiction rates have not been challenged by AK Steel—that is, AK Steel has waived any argument that Class counsel's rates are unreasonable in their home jurisdictions or in the national market[13] and so they should be approved by this Court.

### 2. Class counsel's rates are reasonable for Ohio, too.

In its initial fee petition, Class counsel provided several pieces of evidence showing that their rates were reasonable for ERISA class action practitioners in Ohio. Included were:

1. An Ohio state court, for a case exclusively litigated in Ohio, finding Class counsel's rates reasonable. (Dkt. 184-14, *Sogg v. Goodman*, No. 04-CVG-08-8028, Ct. of Common Pleas, Franklin County, Ohio Sept. 5, 2012);

2. Cincinnati ERISA lawyers charging inflation adjusted rates between $497 and $544/hour for ERISA work. (Dkt. 184-15);

---

[13] Class counsel established that ERISA is a national practice and that their rates were reasonable within this national practice in their initial motion. (Plfs. Br. at 29-30.) This evidence and these affidavits distinguish this fee petition from the one in *West*. In that case, the Court did not consider national rates because the plaintiffs there filed their affidavits too late. *West*, 657 F. Supp. 2d 914, 932 (S.D. Ohio 2009).

3.      Ohio attorneys charging inflation adjusted rates between $620 and $770 per hour
        for class action work. (Dkt. 184-17); and

4.      Other courts in this district approving inflation adjusted rates of $570 per hour in
        ERISA cases and noting that the rate is "similar to rate awards in comparable
        cases." *Bailey v. AK Steel Corp.*, No. 06-468, 2008 WL 553764, at *3 (S.D. Ohio
        Feb. 28, 2008).

AK Steel has not argued that any of these affidavits or decisions are false or flawed. And

it has not proffered a single affidavit in rebuttal—not even from their own lawyers, four of whom

"specializ[e] in ERISA litigation." (Defs.' Resp. at 20 n.8.) Instead of offering the most up to

date, relevant information—an affidavit from the Frost Todd and Brown lawyers or Covington &

Burling lawyers as to what they charged to defend this litigation—AK Steel offers two studies

that are either outdated or not helpful.

First, AK Steel refers to the 30-year old Rubin Committee report.  That report should not

be relied upon. Even adjusting for changes in cost-of-living, the 1983 Rubin Committee report

does not take into account the systemic changes in the practice of law, greatly increasing

efficiency, that have affected rates. With increased efficiency come increased rates. *See National

Rifle Ass'n v. Village of Oak Park*, 871 F. Supp. 2d 781, 786 (N.D. Ill. 2012); *Albion Pacific

Property Resources, LLC v. Seligman*, 329 F. Supp. 2d 1163, 1171 (N.D. Cal. 2004). In 1983,

the electronic databases of Westlaw and Lexis were in their infancy. Virtually all lawyers did

their research by going to law libraries and pulling books from the stacks. Compared to today, it

was an exceptionally inefficient process – a lawyer might be able to accomplish in one hour

today what would have taken ten in 1983. In addition, in 1983 desktop computers were virtually

unheard of in the legal profession. Briefs were written out longhand by attorneys and typed up by

assistants. Today, most lawyers directly write their briefs on computers, again increasing

efficiency. This systemic change in the practice of law has increased rates well above the rate of inflation.

Furthermore, the hourly rates listed in the report are *average* rates for *all* attorneys in Cincinnati, without delineating between state and federal practices or even the field of practice. (Ex. B, Excepts – Rubin Report at 18.) That is, that average included rates for those practicing in traffic court, personal bankruptcy, and even those appointed by a court to represent the indigent. But the Court here is required to determine the "prevailing market rate" based on those with "comparable skill and experience." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). And as recognized by Judge Frye of the Ohio Court of Common Pleas, class action litigation "demands more complicated legal work because more money is at stake and yields higher hourly rates." (Dkt. 184-14, *Sogg v. Goodman*, No. 04-CVG-08-8028, Ct. of Common Pleas, Franklin County, Ohio Sept. 5, 2012.) Furthermore, ERISA and class action litigation are a rarefied fields demanding, as seen by what Cincinnati's own lawyers charge, higher rates. (Dkt. 184-15 (Cincinnati ERISA lawyers charging inflation adjusted rates between $497 and $544/hour); Dkt. 184-17 (Ohio attorneys charging inflation adjusted rates between $620 and $770 per hour).)

Indeed, the Rubin Committee specifically warned that:

> *Certain types of litigation, such as antitrust and stockholders derivative suits, have a recognized national bar.* If local rates significantly below the national average are used, experienced firms from outside the vicinity may be reluctant to join the litigation and the class may be denied top-flight representation. *Where the local rate differs significantly from the outside firm's normal billing rate, the court should use the firm's normal hourly fee.* (Ex. B, at 9-10 (emphasis added).)

ERISA litigation also has a national bar. *See Tussey v. ABB, Inc.*, No. 06–04305, 2012 WL 5386033 at *3 (W.D. Mo. Nov. 2, 2012); *Torgeson v. Unum Life Ins. Co. of America*, No. 05-3052, 2007 WL 433540 at *6 (N.D. Iowa Feb. 5, 2007); *Dobson v. Hartford Fin. Services*

*Group, Inc.*, No. 99-2256, 2002 WL 31094894 at *3 (D. Conn. Aug. 2, 2002); *Mogck v. Unum*

*Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1191 (S.D. Cal. 2003); Dkt. 184-13, Affidavits –

Theado at ¶ 14, Zagrans at ¶¶ 15 & 20, Signorille at ¶ 14, Schlichter at ¶¶ 11-12, Payne at ¶ 13,

Kravitz at ¶ 8, Debofsky at ¶ 5, Cantarella at ¶ 7; Dkt. 184-9, Saunders Affidavit at ¶ 6. So, if the

Court is to use the Rubin Committee report, it should apply Class counsel's "normal billing

rates," which AK Steel has not contested outside of Ohio.

    Nor is the 2010 Economics of Law Practice in Ohio Survey helpful. (Defs.' Resp. at 21-

22.) One of the architects of the OSBA survey attested that it "is not and never has been intended

to suggest average salaries, billing rates, etc." (Ex. C, Yalamanchili Decl. ¶ 4.) The author of the

survey similarly attested that "the hourly rates reported likely significantly *understate* the actual

rates of the active private-practitioner attorney population." (Ex. D, Stiffman Decl. ¶ 15

(emphasis in original).) And courts in this district have rejected the rates listed in the survey as

unhelpful in assessing hourly rates for attorneys. *See Lee v. Javitch, Block & Rathbone, LLP*, 568

F .Supp. 2d 870, 876 (S.D. Ohio 2008) (rejecting OSBA survey because "the mean or median

rates for the group of attorneys who responded to OSBA's survey do not adequately take account

of the experience and expertise" of the attorneys); *Doe v. Ohio*, No. 91-464, 2010 WL 2854106

at * 4 (S.D. Ohio July 19, 2010) (same).

    Further, the portion of that survey that purports to cover ERISA attorneys lumps those

who apparently practice ERISA in with "public benefits" and "elder law" attorneys. (Dkt. 191-3

at 24.) This makes little sense. Neither public benefits (aka Social Security disability) nor elder

law (estate planning, Medicare eligibility, and guardianship) have anything to do with ERISA.

Nor do those fields deal with the significant complicated scheme that is ERISA. *See, e.g.,*

*Wachtel v. Health Net, Inc.*, 482 F.3d 225, 237 (3rd Cir. 2007) ("ERISA is an enormously

complicated statute"); *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 439 (6th Cir. 2009)
("ERISA plans are often complicated things"). The Supreme Court's own docket reflects the
complexity of ERISA: in the past 10 years, the Supreme Court has taken 16 ERISA cases while
deciding a total of two cases for other four areas of law *combined*. (Ex. A, Hurst Aff. at ¶¶ 12-
13.)

Even the survey's strange amalgamation of fields is of little benefit because only sixteen
individuals responded in the public benefits/elder law/ERISA category. (Dkt. 191-3 at 24.) The
survey likely grouped these disparate fields together because "no value [for a practice area] is
represented if fewer than five responses were reported."  (*Id*. at 3.)[14] Worse, the survey does not
disclose the distribution of the sixteen responses over these three fields. For example, there could
have been one response from an ERISA practitioner, with the remaining fifteen coming from
elder law or public benefits attorneys. "A survey of the wrong 'universe' will be of little
probative value in litigation [and] the proponent of the survey bears the burden of proving that
the universe is proper." *Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383
F.3d 110, 113 (3rd Cir. 2004) (internal quotations and citations omitted). Considering that even
the survey warns that "readers should use particular caution in interpreting data when only a
small number of responses are available" (Dkt. 191-3 at 3), along with the adoption of an
improper universe, the Court should not consider it.

---

[14] Out of 30,036 surveys sent, only 1,230 attorneys responded. (Dkt. 191-3 at 2.) However, only
824 provided hourly billing rates, resulting in a response rate of 2.7%. (*Id*. at 24.) For reasons
unknown, the survey was not sent to approximately 7,300, or 20%, of the Ohio attorneys living
in-state. (Ex. E, Elizaga Ltr.) Not only does the apparently random exclusion of 20% of the bar
from the survey further call into question the applicability of the result, it also lowers the hourly
billing response rate to 2.2%.

### D.  The Court should award a multiplier of 1.5.

In their opening brief, Class counsel requested a fee award equal to 30%, $1,326,000. In doing so, Class counsel clearly stated that they were requesting that they be paid primarily through a fee shift to AK Steel, with the remaining amount to be paid by the Class from the common fund. Class counsel requested a 50% enhancement of its lodestar be assessed against AK Steel in order to minimize the impact on the Class. Despite AK Steel's arguments to the contrary, the enhancement is both permissible and warranted in this case.

AK Steel does not contest that Class counsel has an excellent reputation and that a customary fee is 25% to 33% of recovery, thus meeting two of the *Johnson* factors. However, it does contest the novelty of the legal questions, the superior result, and the undesirability of the case[15] by claiming that this case was "fairly pedestrian." (Defs.' Resp. at 1 & 24-25.) This Court should disregard these arguments in light of AK Steel's over half-dozen arguments to the Sixth Circuit seeking rehearing *en banc* contending "[a]ll of this Circuit's law stands to the contrary" to Plaintiffs' case and the decision "sets a dangerous precedent" "involve[ing] important public policy concerns." (Defs.' Pet. for Reconsideration or Rehearing *En Banc* at 2, 4 & 14.) There is a fine line between rhetorical flourish and doublespeak. AK Steel has crossed that line. As such, Class counsel has met five of the *Johnson* factors.

AK Steel argues that the *Johnson* factors for an enhancement are no longer viable in the wake of the Supreme Court's decision in *Perdue*. (Defs.' Resp. at 23.) This is wholly unsupported for three reasons. *First*, the decision in *Perdue* does not bar an enhancement. It only requires that "the judge provide a reasonably specific explanation for all aspects of a fee

---

[15] Again, AK Steel is remarkably silent about its request to this Court for its attorneys' fees to be paid if Plaintiffs lost.  (Dkt. 36 at 9.) Thus, the case was undesirable not only because Class counsel's time and expenses at risk in taking this matter, but also because there was the very real possibility they might have to pay AK Steel if they lost. (Plfs. Br. at 22.)

determination, including any award of an enhancement." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010). *Second*, three years after the decision in *Perdue*, the Sixth Circuit still continues to apply the *Johnson* factors. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013); *Bell v. Prefix, Inc.*, No. 11–1508, 2013 WL 323005, at *2 (6th Cir. Jan. 29, 2013). *Third*, contrary to AK Steel's suggestion, the Chief Judge did not "express doubt" about the viability of the *Johnson* factors in *Hunter v. Hamilton Cty. Bd. of Elections*, No. 10-820, 2013 WL 5467751 (S.D. Ohio Sept. 30, 2013). (Defs.' Resp. at 23.) Rather, the Chief Judge expressly recognized that the Sixth Circuit's decision in *Bell* "leaves open the option of applying the *Johnson* factors as a means of making adjustments to the lodestar." *Id*. at 25 n.12.

As stated in their opening brief, the Court should consider an enhancement also based on the disparity between a percentage award and a fee-shift in order to avoid creating incentives that work to the disadvantage of the clients. The requested enhancement of 50%, or 1.5 times the lodestar, is well below enhancements previously awarded by this Court. For example, this Court has previously awarded a multiplier of 2.8 in *Dalesandro*, an ERISA case.[16] *Dalesandro v. Int'l Paper Co.*, No. 01-109, Dkt. 111 at 10–12 (S.D. Ohio Nov. 16, 2005). As detailed in their opening brief, Class counsel here not only conducted far more litigation and achieved a better result than *Dalesandro*, they also did it more efficiently. (Plfs.' Br. at 12-13.) Class counsel's request for a 50% enhancement is completely reasonable compensation for a hard-won, outstanding result that was achieved with superior efficiency.

---

[16] AK Steel responds by asserting that Class counsel is engaging in "incredible distortions" of this Court's decision in *Dalesandro*. (Defs.' Resp. at 24.) It is clear that opposing counsel failed to read *both* fee opinions in that case cited by Class counsel. In the initial fee petition, sought under a fee-shift, this Court awarded $323,000 after discounting the requested award of $900,000. *Dalesandro*, Dkt. 96 at 57. The second fee opinion, when the case settled shortly after the filing of a notice of appeal, this Court awarded 25%, $917,500, a 2.8 multiplier over the initial award. *Dalesandro*, Dkt. 111 at 10–12. This is not an "incredible distortion[];" it is what happened.

**Conclusion**

Class counsel has requested that they be awarded a fee equal to 30% of the recovery, or $1.326 million. They have asked that this Court, based on their lodestar and a 1.5 multiplier, assess $1,318,488 of this amount, plus costs of $24,559.87, against AK Steel. Class counsel seeks the remaining $7,512, equal to one-tenth of one percent of the recovery, to be awarded from the common fund. If the Court elects to reduce the lodestar or not award a multiplier, Class counsel has requested that an award from the common fund make up the difference. For example, if the Court declines to award a multiplier, Class counsel is requesting that the remaining $447,000, equal to 10% of the recovery, be awarded from the fund. Even if this happens, as a direct result of Class counsel's successful efforts to increase the amount of prejudgment interest, the Class will still receive far and away more under this scenario than they would have obtained under the original judgment.

This request goes beyond being legally well-supported and good public policy – it is *fair*. It is fair to award fees against AK Steel because its conduct as a fiduciary has fallen woefully short. It is fair to the Class members to have the majority of the attorneys' fee award paid by AK Steel because their rights were completely vindicated by this Court and the Sixth Circuit. It is fair to compensate Class counsel for the enormous risk of not only their time but, as explicitly requested by AK Steel, having to pay defendants' fees as well.

Respectfully submitted,

/s/ Matthew T. Hurst

Carrie A. Barron  
Randolph H. Freking  
Freking & Betz, LLC  
525 Vine Street, Suite 600  
Cincinnati, Ohio 45202  
Phone: (513) 721-1975  
Email: CBarron@frekingandbetz.com

Arthur T. Susman (admitted *pro hac*)  
Matthew T. Hurst (admitted *pro hac*)  
Susman Heffner & Hurst LLP  
Two First National Plaza, Suite 600  
Chicago, Illinois 60603  
Phone: (312) 346-3466  
Email: mhurst@shhllp.com

28

Allen C. Engerman (admitted *pro hac*)    Jeffrey C. Engerman (admitted *pro hac*)
Law Offices of Allen C. Engerman, P.A.    Law Offices of Jeffrey C. Engerman, PC
4800 North Federal Highway, Suite 100-D    11901 Santa Monica Boulevard, Suite 700
Boca Raton, Florida 33431    Los Angeles, California 90025
Phone: (561) 392-2222    Phone: (310) 207-7777
Facsimile: (561) 393-0646    Facsimile: (310) 207-7779
Email: acelaw@engerman.com    Email: JEngerman@EngermanLaw.com

*Class counsel*

Dated:  November 22, 2013

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on November 22, 2013, he caused true copies of the foregoing **CLASS COUNSEL'S REPLY IN SUPPORT OF THEIR MOTION FOR AN AWARD OF ATTORNEYS' FEES** to be served upon the following individuals electronically via the Court's ECF/CM system:

George E. Yund                     Robert D. Wick
Matthew O. Wagner                  Theodore P. Metzler
Frost Brown Todd LLC               Covington & Burling LLP
3300 Great American Tower          1201 Pennsylvania Avenue
301 East Fourth Street             Washington, DC 20004
Cincinnati, OH 45202               (202) 662-6291
(513) 651-6800


*/s/ Matthew T. Hurst*
One of the Plaintiff's Attorneys