UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| William J. Schumacher, on behalf of himself and all persons similarly situated, | : | Case No. 1:09-cv-794 |
| | : | |
|        Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| AK Steel Corp. Ret. Acc. Pension Plan, et al, | : | |
| | : | |
|        Defendants. | : | |

**ORDER**

Before the Court is Plaintiffs' motion for an award of attorney's fees.  (Doc. 184)
Defendants have responded to the motion (Doc. 190), and Plaintiffs have filed their
reply brief.  (Doc. 199)

The facts of this case are well known to the parties and the Court, and they will
be discussed as needed in conjunction with the issues raised in the fee motions.

**DISCUSSION**

Plaintiffs' motion asks the Court to award fees of $1,326,000, an amount which is
equivalent to 30% of the $4.42 million judgment entered in this case.  Plaintiffs argue
that AK Steel should pay the majority of the requested fee, pursuant to ERISA's fee-
shifting provision.  Any remaining amount not paid by AK Steel should be paid by the
class members from the judgment fund, in order to award Class Counsel a reasonable
fee for their time and effort on behalf of the class.  AK Steel has no interest in any award
that may be paid by the class but contends that no fees (or greatly reduced fees at best)
should be awarded against it under ERISA.

I.    ERISA Fee Award

The Court has discretion to award fees to the prevailing party under ERISA, 29 U.S.C. §1132(g)(1).  In exercising that discretion, the Court should consider the following factors: "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions."  Moon v. Unum Provident Corp., 461 F.3d 639, 642 (6th Cir. 2006), citing Secretary of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985). No single factor is determinative and each must be considered in arriving at a decision. Id.  The only factor **not** in dispute here is AK Steel's ability to satisfy an award.

Plaintiffs contend that AK Steel was "culpable" because it drafted the releases.  If AK Steel truly intended to include Plaintiffs' whipsaw pension claims within the scope of the releases (which has been AK Steel's position since the releases were first brought to the attention of this Court), then AK Steel should have written the releases to clearly and unambiguously state that intent.  Plaintiffs stress that AK Steel failed to inform any of them about the West litigation while it was negotiating the severance benefits and obtaining Plaintiffs' consent to the releases, thereby violating its fiduciary duties to the class members.

With regard to deterrence, Plaintiffs accuse AK Steel of attempting "to slip one by the Class members" by failing to disclose West, and to clearly inform them that the release would bar Plaintiffs' whipsaw claims.  They argue that an award of fees would

act as a deterrent to such conduct by others.  This litigation obviously benefitted the entire class, as the eligible class members will now recover additional lump-sum pension benefits just as the West plaintiffs did.  Plaintiffs also contend that the Sixth Circuit's decision in this case helped to clarify issues surrounding the valid release of ERISA claims and the appropriate formula for awarding pre-judgment interest.  As for the last factor, it is clear that the merits of Plaintiffs' arguments carried the day, resulting in the substantial judgment entered in this case.

AK Steel disagrees with all of these arguments, and asserts that its acknowledged ability to satisfy an award is not itself a sufficient basis for a fee award.  It argues that the first factor requires a high level of culpability or some showing of bad faith.  It is not enough that AK Steel's arguments were unsuccessful, or that it was found liable to Plaintiffs.  It cites Marchant v. Faurecia Exhaust Sys., 411 Supp.2d 834 (S.D. Ohio 2005), where the district court denied a plaintiff's request for fees under Section 502(g).  In that case, the plaintiff sought reinstatement of her disability benefits which had been discontinued when medical evidence strongly suggested that she was able to work.  During the litigation, the district court asked the defendant to review new medical information and documents that plaintiff had not previously disclosed.  After that review, defendant reinstated plaintiff's benefits.  The district court found that defendant was not "culpable" because it had properly exercised its right to defend a claim when the medical evidence known to defendant strongly supported the discontinuance of benefits.  But here, there is no dispute that AK Steel drafted the releases and obtained Plaintiffs' agreement to them as part of the severance package.  Nothing that these Plaintiffs did or failed to do caused this situation, unlike the plaintiff in Marchant who had

-3-

not disclosed the helpful medical information that may have avoided the cessation of her benefits (and her subsequent lawsuit).

AK Steel argues that a high level of culpability or some bad faith must be shown before finding that a fee award would act as a deterrent.  And it suggests  that there is no conduct at issue here to deter.  The Sixth Circuit found that the releases did not include these ERISA claims because they had not accrued at the time the Plaintiffs signed those releases.  Employers already have every incentive to draft clear and unambiguous releases covering any accrued claims that the employer intends to be covered by a release.  Moreover, AK Steel contends that the fee award in West fully satisfied any deterrence goals regarding the proper calculation of lump-sum pension benefits; in that sense, these Plaintiffs are simply sharing in the results achieved in West.  AK Steel cites Foltice v. Guardsman Prods., Inc., 98 F.3d 933, 937 (6th Cir. 1996), where the Sixth Circuit noted that "fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing ...".   It denies any bad faith or intent to harm, describing its conduct as mere  "inartful drafting."  It also cites Armistead v. Vernitron Corp., 944 F.2d 1287, 1304 (6th Cir. 1991), where the court observed that where there is "little evidence of culpability or bad faith, ... there is no reason to seek deterrence beyond that which comes with holding fiduciaries liable for their breaches of fiduciary duty."

Regarding the fourth factor, AK Steel contends that Schumacher did not seek to vindicate the rights of all Plan participants (as did the West plaintiffs), but only the relatively small group of 92 employees who entered into severance agreements and signed the releases.  It disputes any suggestion that this case involved complex ERISA

issues, as the only real issue was whether the releases barred Plaintiffs' whipsaw claims.  Finally, AK Steel argues that its positions in this case were not devoid of merit and that it defended the case in good faith.  It cites Gard v. Blankenburg, 33 Fed. Appx. 722 (6th Cir. 2002), where the court affirmed the denial of attorney's fees in an ERISA case after the defendants were found liable on only one of plaintiffs' claims.  The district court observed that the defendant's arguments were neither meritless nor amounted to "mere harassment" of plaintiffs, and were "no more devoid of merit than that of any other losing litigant."  Id. at 733 (internal citation omitted).  The Sixth Circuit found that the district court did not abuse its discretion in denying fees.

After balancing all of the relevant factors, the Court finds that a fee award under Section 502(g) is appropriate.  AK Steel solicited these releases and did not inform Plaintiffs about West or their potential whipsaw claims.  Indeed, AK Steel's representative Ms. Evans testified that she knew nothing about West while she was involved in negotiating the severance agreements and releases.  After this Court found AK Steel liable to the West plaintiffs, AK Steel argued that the releases barred the claims of these Plaintiffs.  If the releases had unambiguously stated that intent, this lawsuit could have been avoided.

The Court also has little difficulty concluding that AK Steel was "culpable" for purposes of Section 502(g).  Culpability is not the equivalent of bad faith.  Culpability is an objective standard that connotes blame, while bad faith involves some degree of reckless or intentional conduct.  An award would likely have some deterrent effect on employers negotiating releases of employees' claims, and does not duplicate the deterrent effect of the fee award in West, which dealt with the proper calculation of

-5-

vested pension benefits in a cash balance plan.  Mr. Schumacher sought to secure a common benefit for his fellow employees who had signed releases, all of whom were briefly members of the <u>West</u> class, and were subsequently excluded from that class solely due to the releases.  Finally, as Plaintiffs note, the relative merits of the parties' positions fully supports an award of fees to Plaintiffs, who prevailed in essentially every way.

Plaintiffs seek a fee award of $1,318,488 against AK Steel under Section 502(g). This figure consists of counsel's submitted lodestar of $878,992 plus a 50% multiplier.

II.    <u>Lodestar Fee</u>

The Court must calculate the lodestar, which is the total of the reasonable hours expended on the case times reasonable hourly rates for Plaintiffs' attorneys.  The Supreme Court recently stated that the "lodestar method yields a fee that is presumptively sufficient" to award a "reasonable" fee under federal fee-shifting statutes, and that the presumption is a "strong one."  <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 552 (2010)(internal citations omitted).  Class Counsel have submitted detailed time records reflecting hours billed to the case by attorneys from Susman, Heffner and Hurst ("SHH"); local counsel Freking and Betz; and by Jeffrey Engerman and Allen Engerman, both of whom were counsel in <u>West</u>.

**A.    Hours Reasonably Spent on the Case.**

"The [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983).  In determining the reasonableness of hours spent, the Court should not engage

-6-

in a post hoc critique of strategic decisions that Class Counsel may have made in good faith during the course of the case.  See, e.g., Goos v. National Ass'n of Realtors, 68 F.3d 1380, 1386 (D.C. Cir. 1995), noting that "litigation is not an exact science," and the determinative issue is whether the task was reasonable in view of the ultimate goal of the case.

Class Counsel argues that all of the time billed and submitted with the fee petition is reasonable.  In his affidavit, Mr. Hurst avers that all counsel approached the case from the start with the goal of efficient handling of essential tasks.  There were three substantive motions in the case - defendants' motion to dismiss, the motion for class certification, and plaintiffs' motion for summary judgment on liability.  All three were extensively briefed, and Class Counsel characterizes each of them as raising novel and complex issues of law.  AK Steel vigorously litigated each motion and each issue in this case.  AK Steel's appeal from the final judgment and Plaintiffs' cross-appeal on pre-judgment interest were extensively briefed and argued before the Sixth Circuit.  Class Counsel compares its calculated lodestar to those in West, and in another ERISA case where this Court awarded attorney's fees under Section 502(g).[1]  The motion argues that counsel in this case expended equal or greater effort than did counsel in those cases, yet they seek far less in their lodestar calculation.

AK Steel responds that counsels' billing records include excessive and unreasonable time entries that should be excluded.  It notes that at least 10 attorneys, five paralegals, and numerous "law clerks" submitted time in the fee petition, staffing

---

[1] Dalesandro v. International Paper, Case No. 1:01-cv-109 (S.D. Ohio).

which on its face suggests excessive billing. AK Steel objects to all time submitted by Allen Engerman, Jeffrey Engerman, and Freking and Betz, arguing that these individuals made no apparent substantive contributions to the case. With regard to the SHH bills, AK Steel seeks reductions for excessive conferencing by Mr. Susman (Mr. Hurst's partner), and for Mr. Heffner's time devoted to legal research. AK Steel raises no objections to the time requested by Plaintiffs' primary counsel, Mr. Hurst, his associates Mr. Hara and Ms. Lamancusa, and two paralegals from Mr. Hurst's firm, Ms. Pavlat and Mr. Murtagh.

With respect to Mr. Susman, Class Counsel responds that his input into case strategy and the law was invaluable given his long years of experience and success in class action litigation. The time Susman billed for conferences with Mr. Hurst was not billed by Hurst (with a few minor exceptions), and thus there was no "excessive" conference time included in the petition. With regard to Mr. Heffner's legal research (45.5 hours or approximately 29% of his total hours of 157.75), counsel notes that the bulk of his research time was devoted to the issue of pre-judgment interest, the result of which was a reversal of this Court's initial order and a substantial increase in the amount ultimately awarded by this Court.

The Court has reviewed the time entries submitted by each of the SHH timekeepers, and rejects AK Steel's requests for reductions. Conferences among attorneys working on a case is inevitable and often beneficial to the client. Mr. Susman's conference hours - approximately 47 hours over the four-year period of this litigation - are not so clearly excessive that reductions are warranted. And the time records support the fact that most often, Mr. Hurst did not bill for conference time with

-8-

Mr. Susman when that time is included in his entries.  Regarding Mr. Heffner, it is often the case that more experienced lawyers are more proficient and efficient in researching questions that have no clear-cut answers, such as the question of an appropriate rate of prejudgment interest under the specific facts of this case.  The Court finds that hours submitted by both Mr. Susman and Mr. Heffner are reasonable, and they are approved in full.

Allen Engerman is a highly experienced attorney with a distinguished career and extensive background in pension and ERISA litigation.  As this Court noted in West, he represented plaintiffs in several of the early whipsaw cases, and is "in the very upper echelons of experienced litigators."  (West, Doc. 310, Order Granting Attorney Fees, August 31, 2009 at p. 35.)   Class Counsel contends that Mr. Engerman's experience and his background in West were invaluable in litigating this case.  Mr. Theado, lead counsel for the West plaintiffs, states in his affidavit: "At base, this is a 'whip-saw' case, and perforce some expertise in the arcane machinations of the cash-balance whip-saw case law was required to resolve this case successfully."  (Doc. 184, Ex. M, ¶16)   With all due regard for Mr. Engerman's experience and expertise, the Court disagrees that this case was "at base" a dispute about whipsaw benefits.  While Plaintiffs' complaint clearly sought recovery of those benefits, their complaint was essentially lifted from the Sixth Circuit's opinion in West.  The real dispute here was the scope of the RIF releases, as the complaint's proposed class definition clearly recognized.  That issue was at the center of the class certification order and the judgment on liability, not the legality or mechanics of the whipsaw calculation.

In addition, the Court notes that the submitted billing records show that it was Mr.

-9-

Theado who first contacted the Plaintiffs' lawyers about this case.  He spoke to Ms.

Barron at Freking and Betz in May 2009, and Ms. Barron met with Mr. Schumacher at

that time.  It was not until August that Mr. Theado contacted Allen Engerman about this

case, and shortly thereafter Jeffrey Engerman and then SHH got involved.  While the

Court recognizes that early input from Mr. Engerman into the history of West and the

exclusion of these Plaintiffs was no doubt very helpful, the bulk of Mr. Engerman's

subsequent time entries do not generally document substantive efforts.  The majority of

his entries are described as reviewing emails on various topics, many of them from

Jeffrey Engerman.  Other entries are for "conferences" with Jeffrey Engerman and

Matthew Hurst.  Mr. Hurst acknowledges that he often conferred with his own senior

partner, Mr. Susman, about the case, and the Court is making no reductions for Mr.

Susman's time.  Mr. Engerman's billing records reflect a total of 107.25 hours from

August 2009 through October 2013, and the bulk of this time after the complaint was

filed in this case in October 2009 consist of reviewing emails, pleadings, and

miscellaneous documents, and conferencing with Jeffrey Engerman.  It is difficult for the

Court to conclude that all of this time contributed in a meaningful way to the prosecution

of the case, and much of it is duplicative of time spent by Mr. Hurst and others.  The

Court will reduce Allen Engerman's total reported time of 107.25 hours by 35%, to

account for excessive conference time with Jeffrey Engerman, and for tasks that did not

substantively contribute to the ultimate result in this case.

Jeffrey Engerman was also one of plaintiffs' counsel in West, whose earliest

recorded time in that case was January 2006.  AK Steel notes that this Court

questioned Jeffrey Engerman's contributions in West, because it was unclear what

added value or expertise he brought. The Court's concern in <u>West</u> was prompted by the fact that Jeffrey Engerman requested time was logged **after** this Court had granted partial judgment on liability to the plaintiffs, and because there were so many other experienced attorneys who had worked on the case from its inception. Mr. Engerman's contribution to the ultimate result in <u>West</u> was thus uncertain. The Court has similar concerns here, as it is not clear what particular expertise Jeffrey Engerman brought to this case that Messrs. Hurst, Heffner, Susman and Allen Engerman lacked. The Court has reviewed his time entries, and many of the descriptions reflect conferences with Allen Engerman (and other attorneys), as well as reviewing almost every draft document or court notice about this case. The Court believes that a substantial reduction in Jeffrey Engerman's time is warranted. The Court will reduce Jeffrey Engerman's total reported time of 185.00 hours by 50%, to account for excessive conference time, duplicative tasks, and time spent on tasks better performed by lower cost professionals (e.g., preparing waivers of summons forms and reviewing routine CM/ECF filing notices).

The Freking and Betz firm submitted time records reflecting 49.7 hours logged by three attorneys, three paralegals, various law clerks, and Ms. Waldron (whose job title is not stated). AK Steel objects to all of this time, arguing that the contributions of Freking and Betz personnel are not substantiated and that it is excessive in view of the time spent by primary counsel. AK Steel does not dispute the necessity of local counsel, however, and the Local Rules of this Court require every civil litigant to have a trial attorney who is a permanent member of this Court's bar. According to the firm's time records, Ms. Barron (who was first involved in this case through Mr. Theado) logged a

total of 25 hours over four years for various tasks.  Mr. Freking logged a total of two

hours, almost all of that for reviewing issues with Ms. Barron.  (Another F&B partner,

Ms. Myers, billed 0.10 hours for one conference with a paralegal concerning service

waivers; this time is disallowed.) The Court has reviewed all of the entries and finds that

a 15% reduction is appropriate to Ms. Barron's time, to avoid excessive conference time

with other lawyers.  Otherwise, F&B's attorney time is rather modest, given the time

span of the litigation.

Freking & Betz paralegals billed a total of 7.5 hours, while SHH paralegals billed

a total of 111 hours.  The Court has reviewed F&B's paralegal time and finds that it

does not duplicate the time spent by SHH personnel, and it is reasonable.  The balance

of F&B's requested time (9 hours for various law clerks performing legal research or

drafting memos and emails, and 6.1 hours for Ms. Waldon) is denied.

AK Steel has not objected to Class Counsels' requested time for preparing the

fee petition.  The Sixth Circuit has held that such time generally should not exceed 3%

of hours logged in the case.  Coulter v. State of Tenn., 805 F.2d 146, 151 (6th Cir.

1986).  The Court is satisfied that the hours requested are substantially below that 3%

threshold.

**B.    Hourly Billing Rates**

AK Steel objects to Plaintiffs' requested hourly rates, contending they are inflated

for this case and for this district.  The Sixth Circuit has noted that a "reasonable" rate is

usually the prevailing market rate, or the rate that lawyers of comparable skill and

experience can reasonably expect to command in the venue.  Geier v. Sundquist, 372

F.3d 784, 791 (6th Cir. 2004).  As this Court observed in West, the determination of a

-12-

reasonable rate is made more difficult by the wide variations in lawyers' experience, skill and reputation, and an attorney's customary client billing rate is one reliable indicia of that attorney's prevailing market rate. See also Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995): "... normal billing rates usually provide an efficient and fair short cut for determining the market rate." (internal citation omitted).

In addition, this Court (and others in this district) have often referred to the 1983 Rubin Committee rates and applied a 4% annual COLA to measure the reasonableness of requested hourly rates.[2] AK Steel also urges the Court to rely on the Ohio State Bar Association's rate survey, which was cited in Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 618, n. 6 (6th Cir. 2007). This Court has previously noted that the OSBA survey can be a helpful reference. But the mean or median rates for the approximately 832 attorneys who responded to OSBA's 2010 hourly billing rate survey (see Doc. 191, Exhibit C at p. 23) may not adequately account for the experience and expertise of Plaintiffs' lawyers in this case. The OSBA survey reported a 4% return rate from all OSBA members; while this may be acceptable for such mass-mailing questionnaires, the Court is reluctant to draw firm conclusions from those reported results. The Court will refer to its typical sources of determining reasonable rates: the Court's own appraisal of the skill and competence exhibited by Plaintiffs' attorneys, the relevant

---

[2] That committee arrived at the following categories and hourly rates for 1983: Paralegals - $37.91/hour; Law Clerks - $23.96/hour; Young Associates (2 years of experience or less) - $61.77/hour; Intermediate Associates (2 to 4 years of experience) - $71.62/hour; Senior Associates (4 to 5 years of experience) - $82.81/hour; Young Partners (6 to 10 years of experience) - $96.39/hour; Intermediate Partners (11 to 20 years of experience) - $113.43/hour; and Senior Partners (21 or more years of experience) - $128.34/hour.

market, the area of law involved in this case, and the Rubin Guidelines.

Mr. Schumacher's declaration (Doc. 184, Ex. A) states that when he retained SHH and the other attorneys of record, he was informed of and agreed to SHH's hourly rates. Those 2009 rates were: Matthew Heffner and Matthew Hurst (Partner), $470; Arthur Susman (Partner), $740; Glenn Hara (Associate), $370; Gina Lamancusa (Associate), $325; and Sandra Pavlat (Paralegal), $195. Their current hourly rates set forth in Mr. Hurst's affidavit (Doc. 184, Ex. B) are Heffner and Hurst, $550; Susman, $750; Hara, $400; Lamancusa, $325; Pavlat ($200); and Mr. Murtagh (paralegal), $180. Mr. Hurst avers that these rates are prevailing market rates in the Chicago area and also nationally for ERISA class action litigation attorneys.

Hourly rates requested for the Freking and Betz firm range from $455 for Mr. Freking, $345 for Ms. Myers and Ms. Barron, to $125 for paralegals. Jeffrey Engerman's affidavit states that his usual hourly rate for ERISA and complex class action work is $450, which he has not increased since 2009. Allen Engerman's affidavit states that his usual hourly rate is $750, which has not changed since 2011.

AK Steel urges this Court to use the COLA-adjusted Rubin Committee rates as the "absolute ceiling" in this case, arguing that Ohio market rates are very likely lower than those adjusted rates. This Court has not mechanically applied the Rubin rates in prior cases, and does not agree that they should serve as a "cap" on hourly rates here. This Court approved a very experienced local ERISA attorney's requested $350 rate in 2007, even though the Rubin Guidelines rate would have been lower. See Neiheisel v. AK Steel, Case No. 1:06-cv-030, Order of January 17, 2008. In another recent case from this district, a $450 hourly rate was cited with approval in the court's lodestar

-14-

crosscheck analysis of a negotiated fee award in an ERISA class action.  See <u>Bailey v. AK Steel Corp.</u>, Case No. 1:06-cv-468 (Doc. 112, Order Granting Attorneys' Fees), a case challenging a threatened reduction to retiree health benefits, which was settled by creation of a $600 million trust fund.  Plaintiffs' lawyers were experienced ERISA specialists who practice in the national market.   Other recent fee awards from this district include <u>Barnes v. City of Cincinnati</u>, 401 F.3d 729 (6th Cir. 2005), where a preeminent local civil rights attorney, Mr. Gerhardstein, was awarded $350/hour for time spanning August 2003 to November 2005, a rate approved by the Sixth Circuit.  The court recently approved a $400 per hour rate for Mr. Gerhardstein in a civil rights case, and noted awards in recent qui tam cases in this district of $500 hour to local senior attorneys.[3]  In <u>Jorling v. Habilitation Services</u>, 2005 U.S. Dist. LEXIS 44005 (S.D. Ohio, July 14, 2005), the court granted $385/hour to Mr. Freking (and $250 to his associate) after they obtained a $1.8 million verdict for their client in an ADEA case.  And the Sixth Circuit recently affirmed hourly rates in a case from the Northern District of Ohio that ranged from $250 to $450 per hour; <u>Van Horn v. Nationwide Prop. and Cas. Ins. Co.</u>, 436 Fed. Appx. 496, 499 (6th Cir. 2011).  Finally, in <u>West</u>, this Court awarded $497 per hour to Allen Engerman and Robert Gary, senior partners, and $451 to Ms. Naegele and Mr. Theado.

Class Counsel argue that they have a national practice, and that their home jurisdictions' market rates are higher than those in this district.  ERISA actions must be filed where the ERISA plan is located, but that requirement should not control the

---

[3] <u>Hunter v. Ham. Co. Board of Elections</u>, Case No. 1:10-cv-820-SJD, Sept. 30, 2013 Order granting fees (Doc. 227).

Court's assessment of the reasonableness of the requested hourly rates. Class

Counsel further notes that AK Steel's lawyers have regular hourly rates at least as high

or perhaps higher than their requested rates.

The Sixth Circuit has noted a general rule concerning an out-of-town lawyer's

rates:

> [W]hen a counselor has voluntarily agreed to represent a
> plaintiff in an out-of-town lawsuit, thereby necessitating
> litigation by that lawyer primarily in the alien locale of the
> court in which the case is pending, the court should deem
> the relevant community for fee purposes to constitute the
> legal community within that court's territorial jurisdiction; thus
> the prevailing market rate is that rate which lawyers of
> comparable skill and experience can reasonably expect to
> command within the venue of the court of record, rather than
> foreign counsel's typical charge for work performed within a
> geographical area wherein he maintains his office and/or
> normally practices, at least where the lawyer's reasonable
> home rate exceeds the reasonable local charge.

Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 350 (6th Cir. 2000) (internal

citations and quotations omitted). The Sixth Circuit found an exception to that general

rule applied in Adcock, because the defendant had forced the plaintiff to retain an

out–of-district lawyer to take a deposition from a defense witness in another state. But

the court also acknowledged that an experienced out-of-town lawyer or one who is

knowledgeable about a client or a particular area of law may handle a matter more

efficiently. See also, Graceland Fruit, Inc. v. KIC Chems., 320 Fed. Appx. 323, 329-330

(6th Cir. 2008), approving out-of-town counsel's rates based on a long-standing

attorney-client relationship, and because local counsel would have had to get "up to

speed" on the facts, increasing the fees.

This Court found it reasonable for parties to retain out-of-town counsel in a patent

infringement action, but awarded fees at average hourly rates in counsel's home district ($381, reduced from a requested rate of $425).[4]    Mr. Schumacher states that he asked Mr. Theado in 2005 about representing him, but Theado would not take his case.  While Schumacher does not specifically describe other attempts he made to find a local lawyer to represent him, the Court can only assume (based on the time logs) that Mr. Theado was instrumental in eventually helping him find lawyers who were willing to take this case.  Ultimately, SHH was willing to represent him and the class while some local lawyers apparently were not.  A plaintiff need not demonstrate that he was turned down by every lawyer in Cincinnati or in Ohio before agreeing to representation by out-of-town lawyers.  Moreover, Class Counsel clearly  achieved excellent results for the class, which should also be factored into the determination of a reasonable hourly rate.

Allen Engerman: As noted in West, Allen Engerman's normal hourly rate in the 2001-2006 time period was $600.  This Court concluded that $425 was a reasonable rate for 2005, and awarded a 4% per annum increase over that rate to calculate his 2009 rate ($497).  The Court adheres to that analysis in this case, and concludes that a reasonable fee for Allen Engerman's time (which spans 2009-2013) is $538, the rate for 2011 applying a 4% COLA.

Jeffrey Engerman: This Court noted in West that Jeffrey Engerman was considered a "young partner" in 2009 for purposes of the Rubin Guidelines, and found that a reasonable hourly rate for him was $263 (based upon his acknowledged 2005 billing rate together with a 4% per annum COLA).  Using the same formula for

---

[4] Swap-a-Lease v. Sublease Exchange.com, Case No. 1:07-cv-45, April 27, 2009 Order granting attorneys' fees.

calculating J. Engerman's fee (his 2009 approved rate plus a 4% COLA to 2011) yields an hourly rate of $285.

Freking and Betz: The hourly rates sought for Freking and Betz attorneys and staff are $455 for Mr. Freking (senior partner); $345 for Ms. Barron (intermediate partner); and $125 for paralegals. The adjusted Rubin Committee rates for 2011 for senior partners is $384, for intermediate partners is $339, and for paralegals is $113.58. However, as noted above, courts in this district have awarded rates above the Rubin rates for highly experienced and qualified lawyers. The Court concludes that an appropriate rate for Mr. Freking, who is highly experienced (and whose time is minimal) is $450. Ms. Barron's requested rate of $345 is in line with the Rubin rates and is reasonable. Paralegal rates of $115 are approved.

Susman, Heffner and Hurst: SHH cites several recent cases in which the firm appeared as class counsel and where courts have approved their requested rates, which are higher than typical for this district. These cases include Miller v. Dyadic Int'l Inc., S.D. Florida Case No. 07-80948 (fee order attached as Ex. K to Doc. 184); In re Xerox Corp. ERISA Litig., No. 02-1138, District of Connecticut (fee orders attached as Ex. L to Doc. 184); and Young v. Verizon, 783 F.Supp.2d 1031, 1037 (N.D. Ill. 2011), which approved 2010 billing rates of $750 for Mr. Susman, $500 for Mr. Heffner and Mr. Hurst, $390 for Mr. Hara, $350 for Ms. Lamancusa, and $200 for Ms. Pavlat. While these are out-of-state decisions, Class Counsel argues that the decisions support the reasonableness of their rates in view of the national scope of their practice. They also cite a recent decision from the Franklin County, Ohio common pleas court, where the trial judge found SHH's billing rates reasonable even though they were "toward the high-

end of the Columbus market."  The court concluded that few local lawyers had the

experience and expertise the case demanded and that SHH brought to the litigation.

(Doc. 184, Ex. N, <u>Sogg v. Goodman</u>, Franklin County C.P. Case No. 04-CVG-08-8028,

Sept. 5, 2012 Order awarding fees of 33.3% of a settlement fund, and performing a

lodestar crosscheck at SHH's billed rates.)   Counsel also cites the hourly rates sought

by Frost Brown Todd in 2010 in a local bankruptcy case (Doc. 184, Ex. P), ranging from

$290 for junior partner to $500 for a senior partner.  AK Steel initially retained out-of-

town counsel to represent it in this case, and undoubtedly would have sought fees at

their rates if AK Steel had prevailed.  Finally, Counsel submits affidavits from a group of

experienced lawyers attesting to the national character of an ERISA class action

practice, and supporting the reasonableness of SHH's requested hourly rates.  (Doc.

184, Ex. M, affidavits from Theado, Zagrans, Signorille, Schlichter, Payne, Kracitz,

Deborfsky, and Cantarella.)

This Court has observed the quality of advocacy and the work performed in this

case, largely by SHH and Mr. Hurst.  Plaintiffs were well represented by vigorous

advocates who exercised billing judgment.  SHH's requested rates are high for this

district, but Class Counsel should be compensated at rates that reflect their skill and

their success.  Balancing all of these issues, the Court concludes that the following are

reasonable hourly rates for this case:

| | |
|---|---|
| Matthew Hurst | $425 |
| Matthew Heffner | $425 |
| Arthur Susman | $538 |
| Glenn Hara | $325 |

Gina Lamancusa     $300

Sandra Pavlat      $140

Thomas Murtagh     $120

In summary, the Court calculates the lodestar, reasonable hours times approved hourly rates, as follows:

|  | Hours | Rates | TOTAL |
|---|---|---|---|
| **SHH:** | | | |
| Arthur Susman: | 80.50 | $538 | $ 43,309.00 |
| Matthew Heffner: | 157.75 | $425 | 67,043.75 |
| Matthew Hurst | 856.75 | $425 | 364,118.75 |
| Glenn Hara | 63.00 | $325 | 20,475.00 |
| Gina Lamancusa | 119.00 | $300 | 35,700.00 |
| Sandra Pavlat | 77.50 | $140 | 10,850.00 |
| Thomas Murtagh | 33.50 | $120 | 4,020.00 |
| Allen Engerman: | 69.70 | $538 | 37,498.60 |
| Jeffrey Engerman: | 92.50 | $285 | 26,362.50 |
| **Freking & Betz** | | | |
| Randy Freking | 2.00 | $450 | 900.00 |
| Carrie Barron | 21.25 | $345 | 7,331.25 |
| Paralegals | 7.50 | $115 | 862.50 |
| **TOTAL LODESTAR FEES** | | | **$618,471.35** |

III.   Lodestar Multiplier

As noted at the outset, Plaintiffs' motion seeks a total fee award equivalent to 30% of the judgment in this case.  As their calculated lodestar is less than that, they ask this Court to apply a lodestar multiplier of 1.5.

In <u>Perdue v. Kenny A</u>., 559 U.S. 542, 546 (2010), the Supreme Court held that a party seeking an award of enhanced fees under federal fee-shifting statutes has the burden of demonstrating that the lodestar calculation fails to adequately take into account all relevant factors.  The party also has the burden of "proving with specificity that an enhanced fee is justified."  Plaintiffs' fee petition discusses the factors articulated in <u>Johnson v. Ga. Highway Express, Inc</u>., 488 F.2d 714 (5th Cir. 1974) for determining reasonable attorney's fees.  The Sixth Circuit has held that these factors apply both to the initial determination of a fee award and when considering the propriety of an enhancement.  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Paschal v. Flagstar Bank</u>, 297 F.3d 431, 435 (6th Cir. 2002)(internal citations omitted).[5] The Supreme Court stressed in <u>Perdue</u> that a multiplier or enhancement award may be appropriate in "rare and exceptional cases."  Such cases are by definition **both** "rare"

---

[5] Contingency risk alone cannot justify an enhanced fee.  <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992).

and "exceptional" in some way that is not properly accounted for in the lodestar analysis.

Even before the Supreme Court's recent decision in Perdue, this Court rarely granted requests for lodestar multipliers. Such a request was denied in Dalesandro (and the plaintiffs did not initially seek a multiplier in West). The few cases in which multipliers have been awarded illustrate the type of "rare and exceptional" case that the Court concludes would merit such an award. For example, Geier v. Sundquist, 372 F.3d 784 (6th Cir. 2004), was a decades-long lawsuit that challenged state-imposed segregation in Tennessee public higher educational institutions. The Sixth Circuit stated that the legal principles that plaintiffs advanced "were pathbreaking and of great social import" and resulted in broad injunctive relief fostering desegregation. In Brotherton v. Cleveland, 141 F.Supp.2d 907, 913 (S.D. Ohio 2001), a 150% multiplier was granted to a solo practitioner who accepted a very unpopular case that many other attorneys had declined, bringing an action against a county coroner for removing plaintiff's deceased husband's corneas. The case created new law on the subject. And in Barnes v. City of Cincinnati, 401 F.3d 729 (6th Cir. 2005), the Sixth Circuit affirmed a 1.75% multiplier awarded in a case that very few lawyers would ever agree to accept - a transsexual's employment discrimination claim against the local police department.

This Court awarded a modest multiplier (10% of the lodestar) in an FDCPA case that challenged a debt collector's non-wage garnishment of exempt funds; see Lee v. Javitch, Block & Rathbone, 568 F.Supp.2d 870 (S.D. Ohio 2008). This Court noted that consumer protection statutes such as the FDCPA are intended to protect consumers. And many of them have restricted limits on available statutory damages. If lawyers are

-22-

unwilling to take these cases, the statutes will not serve their intended functions. The record established that plaintiffs' lawyers were the only attorneys in southern Ohio who would accept contingent fee cases to prosecute FDCPA claims, even much more routine claims than the one alleged by the plaintiff in that case.[6]

Here, Plaintiffs undoubtedly faced an uphill battle (as Mr. Theado's 2005 letter to Mr. Schumacher outlined), and the case was not an easy one. But difficulty and complexity of legal and factual issues are accounted for in the lodestar calculation. And those factors, even combined with the fact that Plaintiffs ultimately prevailed, and that they were well represented by experienced counsel, are not the hallmarks of a "rare and exceptional" case that justifies a multiplier. If they were, multipliers would become more routine. The Court therefore denies the Plaintiffs' motion to the extent it seeks an award against AK Steel of enhanced fees above the Court's calculated lodestar.

IV.  Common Fund Award

Plaintiffs' motion urges this Court to calculate a reasonable fee under the common fund doctrine, arguing that this approach will ensure a fee award that fully accounts for all the factors that are pertinent to Counsel's representation. The motion presents many legal and policy arguments to support a 30% common fund award, stressing the disincentives that can arise when common fund awards are denied in cases successfully litigated to judgment. Plaintiffs recognize this Court's decisions denying a common fund award in West, but argue that this case is different, and that the arguments presented in their pleadings respond to the Court's concerns expressed in

---

[6] The Sixth Circuit vacated the judgment in favor of plaintiff on other grounds; see Lee v. Javitch, Block & Rathbone, 601 F.3d 654 (6th Cir. 2010).

-23-

<u>West</u>.

After addressing many similar arguments raised here, this Court denied a

common fund award in <u>West</u>:

> The Court is aware of the perceived disadvantages
> articulated by counsel of an unenhanced lodestar award.
> The approved lodestar fee is approximately 2.7% of the total
> judgment deposited with the Court. It is entirely possible that
> an earlier settlement of the case would have resulted in a
> higher fee award. (For instance, in <u>Clevenger</u>, the Court
> awarded 29% of a $35 million settlement fund, or $10.15
> million, an amount to which none of the 25,500 class
> members objected.)
>
> However, many courts including this one have found that the
> lodestar provides a more careful check on fees. It affords
> greater accountability, and avoids requiring class counsel to
> argue for a share of their clients' recovery. See, e.g., <u>Cook
> v. Niedert</u>, 142 F.3d 1004 (7th Cir. 1998), affirming the
> district court's use of the lodestar (plus a multiplier) in a
> settled ERISA class action. This Court has denied the bulk
> of Defendants' objections to the lodestar calculation, and has
> granted hourly fees that are generous for this district. The
> Court finds that the lodestar calculated above is fair and
> reasonable compensation for counsels' endeavors in this
> case, which clearly resulted in an excellent result. ... "

(<u>West</u>, Order Granting Attorney's Fees, Doc. 310 at pp. 46-47)

Plaintiffs sought reconsideration of this decision, which this Court denied. (See Doc.

330, Dec. 16, 2009 Order denying motion to alter or amend.) In that order, this Court

noted that there is no "blanket rule" that prohibits a common fund award in a case that is

successfully litigated to judgment. The Court has broad discretion to determine in every

case what a reasonable fee may be, dependent in each case upon the facts and

circumstances before the Court.

One important difference here from the situation presented in <u>West</u> is that the

named plaintiff, William Schumacher, states that he entered into a written fee

agreement pursuant to which counsel took his case as a putative class action on a

contingent fee basis, and that he agreed to a contingent fee of between 25% and 33%

of any recovery.  He also states that Mr. Hurst has explained to him that Class Counsel

collectively are seeking a total fee of approximately $1.32 million, that Class Counsel is

asking that AK Steel pay "most of this amount," and the remainder to be paid by the

Class from the judgment.  Mr. Schumacher supports counsel's fee request and would

like to see as much as possible, if not all, paid by Defendants.  (Doc. 184, Ex. A, at ¶¶4,

5, 7, 8.) The Court has reviewed in camera the written fee agreement executed by Mr.

Schumacher, and has confirmed the accuracy of Mr. Schumacher's description of his

agreement.

        The notice sent to the class members in this case specifically addressed the

question of attorney's fees.  Section I describes the general nature of the case, and

states that  the judgment of $4,444,968.74 has been deposited in a fund.  It further

states that "Class Counsel undertook representation of Plaintiffs in this matter on

contingency and advanced all costs of litigation.  They have asked that the Court permit

their attorneys' fees and costs to be paid from the fund, paid by defendants, or a

combination of the two."  (Doc. 212, Ex. A at Section I.)  Section V of the notice is titled

"Class Counsel's Fee Request."  It states:

> Class counsel undertook this case on a contingency basis
> and have not been paid for their time and effort. To date,
> Class counsel have paid all costs and expenses of litigation.
> Class counsel have expended over 1,700 uncompensated
> hours of professional time in this matter, and have paid costs
> of approximately $24,000.  This uncompensated time and
> costs amounts to approximately $879,000.  Class counsel

have asked the Court for an award of fees in the amount of $1,326,000 (which represents 30% of the judgment obtained for the Class) and for a reimbursement of costs.  Class counsel have requested that Defendants pay $1,318,500 of this amount, and that the Class pay $7,500 from the judgment in its favor.  In the alternative, Class counsel have asked that Defendants pay for the enhanced or actual value of Class counsel's uncompensated time and expenses, and that the remainder of the $1,326,000 requested fee be paid by the Class out of the judgment fund. The Court, in its discretion, may award Class counsel fees from either source in an amount it determines to be fair and reasonable.

Class members will not be asked to pay fees or expenses out-of-pocket.  All fees and costs will be paid out of the recoveries in the lawsuit prior to distribution.

Class counsel has also moved the Court to award lead plaintiff William Schumacher $4,240 to compensate him for his time, effort, expenses, and initiative in bringing and prosecuting this action.  This would be paid out of the amounts recovered for the Class.

If you wish to review the fee petition filed by Class counsel, you may obtain a copy free of charge by contacting Matthew Hurst, whose contact information is listed below.

The Notice further informed all class members that the deadline by which to file objections to the fee petition is January 10, 2014, and explained how a class member may object.  Class Counsel's January 13, 2014 status report (Doc. 214) states that no objections by any class members were filed before that deadline, and the Court has not received any objections.  Counsel also submitted an affidavit from class member Deborah Delano.  Ms. Delano avers that, like Mr. Schumacher, she contacted Mr. Theado (West plaintiffs' lead counsel) in October 2005 when she was informed about her exclusion from the West class, and that Mr. Theado declined to represent her at that time.  She contacted Mr. Theado again in May 2009, and he again declined to represent

her.  Ms. Delano also contacted her personal attorney, who referred her to another firm
in Pittsburgh, Pennsylvania where she resides.  None of these attorneys would take her
case.  She states that she could not afford to pay an attorney to prosecute her claim,
and that she supports Class Counsel's fee request.  (Doc. 213, Ex. 1)

As stated previously, there is no rule prohibiting an award of fees under a fee-
shifting statute, and an award of fees under a contingent fee contract.  This was
expressly recognized in Venegas v. Mitchell, 495 U.S. 82 (1990), where plaintiff
recovered a judgment under 42 U.S.C. §1983 and an award of fees under 42 U.S.C.
§1988 against the defendant.  The plaintiff had agreed with his lawyer at the inception of
the case to pay a 40% contingent fee, subject to a dollar-for-dollar offset for any
statutory fees that he might be awarded.  After those fees were determined, plaintiff
opposed paying his attorney the agreed contingency and Plaintiff's attorney sought
relief from the court, arguing that statutory fees were not a "cap" on his agreed-upon
contingent fee.  The Supreme Court agreed, concluding that "... Section 1988 controls
what the losing defendant must pay, not what the prevailing plaintiff must pay his
lawyer.  What a plaintiff may be bound to pay and what an attorney is free to collect
under a fee agreement are not necessarily measured by the 'reasonable attorney's fee'
that a defendant must pay pursuant to a court order."  Id. at 90.

See also, United States ex rel. Taxpayers Against Fraud v. GE, 41 F.3d 1032
(6th Cir. 1994), a qui tam case in which the relator executed a contingent fee contract
with his lawyers, agreeing to pay them 25% of whatever he ultimately collected **in
addition to** any statutory fees that the Court might award to him.  The relator did not

object to enforcing this agreement.  In discussing the district court's fee award, the Sixth Circuit noted that the court is required to police contingent fee agreements to ensure that the total award is not "excessive," because excessive fees are prohibited by the attorney's ethical obligations.  But the court confirmed that there is nothing in the qui tam statute (31 U.S.C. §3730) prohibiting an award of both types of fees, and that a district court "has broad equity power to supervise the collection of attorney's fees under contingency fee contracts."  Id. at 1047 (quoting Krause v. Rhodes, 640 F.2d 214, 218 (6th Cir. 1981)).

These principles fully apply to fees awarded in a class action.  Fed R. Civ. Proc. 23(h) states that attorney's fees may be awarded by the court if they are 'authorized by law or by the parties' agreement."  The court must ensure that the interests of the class as a whole are served, and that Class Counsel is awarded a fee that is reasonable and adequate under all the circumstances of the case.  As with the determination of a statutory fee award, a reasonable contingent fee should reflect the market rate for the lawyer's services - what a knowledgeable class member would have negotiated and agreed to pay at the outset of the case.

The Court notes that in some class action settlements, typically involving very large classes with very little monetary recovery for individual class members, some courts have placed little or no weight on contingent fee agreements between lead lawyers and named plaintiffs.  The Seventh Circuit has observed that in some such situations, the named plaintiffs "are usually cat's paws of the class lawyers."  In re Trans Union Corp. Privacy Litigation, 629 F.3d 741, 744 (7th Cir. 2011), citing In re Cavanaugh, 306 F.3d 726, 737-738 (9th Cir. 2002), and Goldberger v. Integrated

Resources, Inc., 209 F.3d 43, 53 (2d Cir. 2000).  This Court is satisfied that this concern

does not arise here.  Mr. Schumacher is not an unsophisticated "cat's paw" of Class

Counsel; to the contrary, he affirmatively sought out a lawyer to represent him and the

putative class.  The fee agreement entered into between Schumacher and Class

Counsel is, in the Court's view, the best evidence of what any of the class members

would reasonably have agreed to at the outset of this case in order to secure

representation.

　　　　In addition, this Court's experience confirms that contingent fees between 25 and

33% of a plaintiff's recovery are the norm, and fees within that range have often been

approved by courts within the Sixth Circuit.  In Clevenger, for example, this Court

approved a 29% fee recovery from the settlement fund.  In Dalesandro, the parties

settled the case following this Court's entry of final judgment (and its denial of a fee

multiplier and a common fund award to plaintiffs' lawyers); the approved settlement

provided for fees of 25% of the settlement fund.  Lead counsel had agreed at the outset

to a one-third contingency fee and reduced that to 25%, further confirming the

reasonableness of the fee.   Class Counsel's request here is also less than the

maximum rate provided for in their written fee agreement.

　　　　The factors set forth in Ohio Rule of Professional Conduct 1.5 also support the

reasonableness of a 30% contingent fee in this case.  The factors to be considered in

determining a "reasonable" fee under that Rule are: (1) the time and labor required, the

novelty and difficulty of the questions involved, and the skill requisite to perform the

legal service properly;  (2) the likelihood, if apparent to the client, that the acceptance of

the particular employment will preclude other employment by the lawyer; (3) the fee

-29-

customarily charged in the locality for similar legal services;  (4) the amount involved

and the results obtained; (5) the time limitations imposed by the client or by the

circumstances; (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the

services; and (8) whether the fee is fixed or contingent.  Class Counsel invested

significant time and effort in this case, which presented a difficult set of issues, and the

risks of failure at the outset were quite significant.  The contingent fee is within the

range typically charged in this district.  Class Counsel recovered a judgment in addition

to a significant prejudgment interest award, and obtained excellent results.  The Court

has already noted the experience and abilities of Class Counsel in this case.

        For all of these reasons, the Court approves Class Counsel's request for a total

fee award of $1,326,000, which is slightly less than 30% of the judgment fund.  The

statutory fees that are being awarded to the class and paid by AK Steel, $618,471.35,

will offset the total fee award dollar for dollar, resulting in a net award to be paid from

the judgment fund of $707,528.70.

V.    Costs and Expenses

        The fee petition seeks reimbursement from AK Steel for case expenses of

$24,559.87.  SHH seeks expenses of $23,419.09 (described in the list attached to Mr.

Hurst's declaration and SHH's time logs).  These include deposition transcripts and

court reporter fees, document costs, PACER and Westlaw costs, the costs of a private

investigator, and telephone and travel expenses.  Freking & Betz seeks recovery of the

original district court filing fee ($350), and a UPS charge of $16.  Jeffrey Engerman lists

costs for certificates of good standing, pro hac vice admission fees for himself and for

Allen Engerman, PACER charges ($43.38), and copy charges ($329.40).

AK Steel objects to all of these costs except the complaint's filing fee and SHH's court reporter fees.  It cites Hall v. Ohio Educ. Ass'n, 984 F.Supp. 1144 (S.D. Ohio 1997), where the district court denied a successful ERISA plaintiff recovery for costs not authorized by 28 U.S.C. §1920, or that were not shown to be reasonable and necessary to the case.

Taxable costs awarded to a prevailing party are listed in 28 U.S.C. §1920.  The Court may also award non-taxable costs as part of a reasonable attorney's fee under ERISA's fee-shifting statute, if such expenses are reasonable and necessary, and are typically billed to clients under prevailing practice in the jurisdiction.  See Northcross v. Board of Educ., 611 F.2d 624, 639-640 (6th Cir. 1979); Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1036 (8th Cir. 2008).  This Court previously ordered AK Steel to pay the costs of the judgment fund administrator under that rationale (see Doc. 188).

Taxable costs:  The Court finds that the costs of the two depositions that were taken in this case are taxable against AK Steel.  The transcripts were used in the class certification and summary judgment pleadings.  The January 2012 filing fee ($450) represents the Sixth Circuit filing fee for Plaintiffs' cross-appeal, which the Sixth Circuit awarded to Plaintiffs in its mandate (see Doc. 160).  Telephone and fax charges ($15.21) are modest, reasonable, and will be taxed.  AK Steel does not object to the district court filing fee and court reporter fees, which are also taxed.

Section 1920(4) permits taxing the costs of copying documents "necessarily obtained for use in the case."  SHH seeks payment for copies of the AK Steel Plan's Form 5500s ($31.35), which the Court finds is reasonable, as the information obtained

from those forms was used during briefing in this case.  SHH's in-house photocopying

expense is $411.15, and Mr. Engerman's is $329.40, but the petition does not explain

how many copies this reflects nor the per-page cost.  The Court therefore cannot

determine if this amount is reasonable or necessary, and it will not be taxed.

Nontaxable costs: The cost for the Sixth Circuit's recording of oral argument

($30.00) is denied, as it would appear to be a cost incurred for counsel's convenience

rather than one that is necessary to the case.

SHH seeks reimbursement of $1,080 for the private investigator costs.  Plaintiffs

sought this Court's advance approval for this expense (see Doc. 98, permitting counsel

to engage STO Investigations in order to attempt to locate 25 class members).  The

amount charged is below the estimate originally provided by STO.  The Court finds that

it is the type of reasonable and necessary expense that would be charged to a fee-

paying client, and is approved.

SHH seeks $16,224.81 for Westlaw charges.  The fee petition does not explain

the basis for the charge, the cost basis for the firm's Westlaw contract, or whether

computerized research costs are routinely billed to their clients.  An expense for

"documents" on April 24, 2013 ($46.35) is not explained.  Charges for PACER (by SHH

and Jeffrey Engerman) are not explained, identified by date, or justified by any specific

relation to the litigation.  "Expert" fees of $815.83 are also sought without explanation.

SHH seeks reimbursement of travel expenses on five occasions, but no explanation of

the type of travel, who was traveling, or the particular expenses incurred is provided.

These unexplained and unsubstantiated costs will not be awarded against AK Steel.

Mr. Engerman's request for pro hac vice fees is denied; these are not within the scope

of "docket fees" and the Court finds these to be an expense of counsel and not of the client.

In sum, the Court awards the following costs against AK Steel: depositions ($263.80); court reporter fees ($564.65); documents ($31.35); Sixth Circuit filing fee ($455); postage ($214.13); private investigator ($1,080); telephone ($15.21); and the district court filing fee ($350), a total of $2,974.14. The balance of the requested costs are denied.

VI.    Incentive Award to Mr. Schumacher

Plaintiffs' motion requests the Court to award Mr. Schumacher $4,200 as an incentive award, to be paid from the judgment fund. This Court has previously denied incentive awards in cases that do not result in a settlement fund, including West and in the Court's initial order in Dalesandro. (As noted previously, Dalesandro settled after final judgment, and the Court approved an incentive award to the two lead plaintiffs that was included in the settlement agreement.) In West, this Court relied on Hadix v. Johnson, 322 F.3d 895, 898 (6th Cir. 2003), where the plaintiff was denied an incentive award in a case that was resolved by a consent decree. The Sixth Circuit noted that it had not explicitly addressed whether an incentive award is ever appropriate, but cited several district court decisions approving such awards from a settlement fund. The court held that "[u]nsurprisingly, we are unable to find any case where a claim for an incentive award that is not authorized in a settlement agreement has been granted in the absence of a common fund."

Some courts have approved incentive awards in cases litigated to judgment; see, e.g., Tussey v. ABB, Inc., 2012 U.S. Dist. LEXIS 157428 (W.D. Missouri, Nov. 2, 2012),

-33-

awarding $25,000 to three named plaintiffs to be paid from a judgment of over $35 million entered against defendants in an ERISA action. In In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 273 (S.D. Ohio 1997)(Spiegel, J.), the district court noted that incentive awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives." While this Court does not doubt Mr. Schumacher's contributions to this case and credits his willingness to act as class representative, answer discovery and sit for a deposition, this case did not involve any special risk to him in assuming the role of class representative. While Plaintiffs note that Mr. Schumacher may have been saddled with paying for Defendants' attorney's fees if he was unsuccessful, the economic risk of winning or losing a case is not in the Court's view sufficient to support an incentive award, lest such awards become routinely expected by successful lead plaintiffs.

For these reasons, the Court will not award an incentive payment to Mr. Schumacher.

**CONCLUSION**

For all of the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for an award of attorney's fees and costs (Doc. 184). Plaintiffs are awarded $618,471.35 in statutory attorney's fees to be paid by Defendants. The class shall pay attorney's fees in addition to the statutory fees of $707,528.70 from the judgment fund. Class Counsel is therefore awarded a total of $1,326,000 in attorney's

fees.  Costs are awarded against the Defendants of $2,974.14.

      SO ORDERED.

DATED: February 4, 2014             s/Sandra S. Beckwith
                                       Sandra S. Beckwith
                                       Senior United States District Judge